Index No. 09 CV 00338 (SHS)(AJP)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

GLENN STORMAN,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
JOSEPHINE MARSELLA and DENNIS BOYLES

Defendant,

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

JOHN C. KLOTZ (JK4172)
Attorney for the Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600
johnklotz@johnklotz.com

# TABLE OF CONTENTS

A.   Statement of Case ..................................................................... 1
   (1)   The case at bar ....................................................... 1
   (2)   Concurrent Article 78 proceeding................................ 3
   (3)   Appendix of Exhibits and Appendix of Exhibits appended to this Memorandum ............................................................. 3
B.   Argument.................................................................................. 3

POINT ONE................................................................................... 4
Because Of Plaintiff's Important Liberty Interests At Stake, Plaintiff Was Entitled To The Due Process Of Law Which Included A Hearing, Confrontation With His Accuser And A Determination Upon The Merits Supported By At Least A Preponderance Of The Evidence. ....................................................................................... 4
   Stigma Plus ............................................................................ 4
     The existence of a post deprivation remedy........................... 5

POINT TWO.................................................................................. 7
The Weight Of Authority Is That Section 1983 Damages Are Not Recoverable In An Article 78 Proceeding And May Be Pursued In A Collateral Action In Federal Court......7

POINT THREE............................................................................... 8
By Whatever Standard Is Applied, There Is No Evidence That Plaintiff Was Guilty Of An Act Corporal Punishment,........................................................... 8

POINT FOUR ................................................................................ 9
The actions of the Defendant Chancellor inflicted a "stigma plus" deprivation of liberty on Plaintiff .................................................................................... 9
   A.   The provisions of the UFT contract........................................ 9
     (1)   The stigma ............................................................. 10
     (2)   Publication.............................................................. 10
     (3)   The immediate impact.............................................. 12

POINT FIVE................................................................................ 14
As alleged, Plaintiff's cause of action pursuant to Section 1983 did not arise until the action of the Chancellor sustaining his unsatisfactory rating on the ground of a substantiated incident of corporal punishment. It is not barred by the statue of limitations. ................................................................................................... 14

POINT SIX.................................................................................. 14
The Complaint Fairly Alleges Actionable Retaliation By Defendants Boyles And Marsella ...................................................................................... 14

POINT SEVEN.................................................................................................16
In The Event That Court Finds That The Complaint Fails To State A Cause Of Action,
Leave Ought To Be Granted To File An Amended Complaint. .....................................16

CONCLUSION.................................................................................................17
The Unsatisfactory Rating Has Damaged The Plaintiff Permanently And Was The Result
Of A Procedure That Denied The Plaintiff Due Process . The Complaint States Valid
Causes Of Action. In The Alternative, The Court Ought Grant Leave To File An
Amended Complaint..........................................................................................17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
                                          :

GLENN STORMAN                            :    Index No. 09 CV 00338
                                          :          (SHS)(AJP)
                                          :
                               Plaintiff,   :
                                          :
                      -against-           :
                                          :

JOEL I. KLEIN, in his capacity as Chancellor of the New  :
York City Department of Education; NEW YORK CITY    :
DEPARTMENT OF EDUCATION; JOSEPHINE          :
MARSELLA; and DENNIS BOYLES,             :
                                          :
                             Defendants.   :
                                          :
------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

**A.**    **Statement of Case**

*(1)*    *The case at bar*

    Plaintiff is a tenured guidance counselor employed by the defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYC DOE"). Defendant JOEL KLEIN (the Chancellor") is Chancellor of the defendant NYC DOE. In 2004, plaintiff was wrongly accused of corporal punishment and, although all of the participants acknowledged that he was not guilty of acts constituting corporal punishment, he was nonetheless found guilty of a substantiated incident of corporal punishment. That resulted in his receiving an unsatisfactory "U" rating. After an appeal of that rating was denied by the Chancellor, he commenced an Article 78 proceeding in N.Y. State Supreme court and an action pursuant to 42 USC § 1983 in this Court. (Complaint, ¶ 1.[1]

---

[1] The Complaint in his action will be cited as "Complaint." Exhibits to the Complaint will be cited as "Cmp. Ex.")

1

The result of that rating cost him his contractual retention rights to "per session" assignments including assignment as a Summer School Teacher and as a Home Instructor pursuant to the Defendant's Home Instruction Program.[2] (Cmp. ¶ 21)

The State Supreme Court, Hon. Justice Marcy Friedman entered an order setting aside the determination of the Chancellor and remanded the matter back to NYC DOE for specific findings of fact justifying the finding of substantiated corporal punishment. See decision of Justice Friedman, Cmp. Ex. A.

The United States District Court, the Hon. Sidney Stein, U.S.D.J. on consent of the parties dismissed the Civil Rights Action without prejudice as moot and tolled the running of the statute of limitations pending the determination of the remand. See Cmp. Ex. B, proceedings before Judge Stein.

However, on remand, the Chancellor, merely reissued the same determination without making any of the factual findings required by Justice Friedman. See Cmp. Ex. C, Chancellor's decision on remand.

Concurrently, defendants JOSEPHINE MARSELLA (MARSELLA") a supervising principal, and DENNIS BOYLES ("BOYLES"), both of whose professionalism was called into question by the first determination, instigated bogus charges against the plaintiff and that resulted in a second "U" rating. (Complaint, ¶¶ 70-97).[3]. The Second Count of this Complaint states a claim for retaliation in further violation of plaintiff's constitutional rights (Complaint, ¶¶ 105-119).

As a result of the defendants actions, plaintiff has already suffered more than $100,000 in damages and reasonably anticipates many hundreds of thousands of dollars more. (Complaint, ¶¶103-194, 114-115)

---

[2] The Complaint does use the contractual words of art - "per session" but that is the part of the UFT contract that governs those assignments.

[3] An appeal by plaintiff of the rating to the Chancellor has been filed but has yet to be heard.

*(2)     Concurrent Article 78 proceeding*

Annexed to the DOE's moving papers is a copy (sans exhibits) of plaintiff's Article 78 proceeding in the NYS Supreme Court for a review of the Chancellor's second determination. That petition was answered by the defendant DOE and was orally argued before Hon. Justice Shirley W. Konreich on Thursday, March 12, 2009. It is now *sub judice.*[4]

*(3)     Appendix of Exhibits and Appendix of Exhibits appended to this Memorandum*

Appended to this Memorandum are extracts of relevant portions of the contract between the United Teachers Union ("UFT") and the DOE. The contract is referred to in the petition and the plaintiff's rights arise form the provisions of the contract.

In addition, an Appendix of the Exhibits attached to the NYS proceeding that were omitted from the copy of the petitioner submitted by defendants as their Exhibit B is submitted herewith.

All of these documents clearly come within the ambit of those that can be considered by the Court without conversion of the motion to dismiss to a motion for summary judgment.

**B.     <u>Argument</u>**

The actions of the defendant DOE have stigmatized plaintiff as an unfit teacher who was guilty of a substantiated incident of corporal punishment. The Chancellor in his review of the rating had the power to expunge said rating and restore plaintiff to his status quo including awarding of lost income. Instead he substantiated the "U" rating on the basis of a totally unfounded, and in fact unsubstantiated, incident of corporal punishment.

The defendants Boyles and Marsella whose competency has been called into question by their actions in this affair have contrived to retaliate against the plaintiff by instigating yet another "U" rating. An accumulation of three such ratings could lead to plaintiff's dismissal and will endanger plaintiff's pension rights altogether.

---

[4] Plaintiff anticipates a decision from the Justice Konreich in the fairly near future and will supply the same to the Court when it is available.

The actions of the defendants that have created a "stigma plus" for the plaintiff provides a sound basis for this action pursuant to 42 U.S.C. § 1983 ("Section 1983")

**POINT ONE
BECAUSE OF PLAINTIFF'S IMPORTANT
LIBERTY INTERESTS AT STAKE, PLAINTIFF
WAS ENTITLED TO THE DUE PROCESS OF LAW
WHICH INCLUDED A HEARING,
CONFRONTATION WITH HIS ACCUSER AND A
DETERMINATION UPON THE MERITS
SUPPORTED BY AT LEAST A PREPONDERANCE
OF THE EVIDENCE.**

There are four standards of evidentiary review of administrative:

(1) Abuse of discretion where no hearing is required NY CPLR 7803(3) *Scherbyn v. Wayne-Finger Lakes BOCES,* 77 N.Y.2d 753 (1991);

(2) Where a hearing is required, substantial evidence is necessary to support the challenged determination. NY CPLR 7803(4) *Pell v. Board of Education,* 34 N.Y.2d 222 (1974);

(3) A preponderance of the evidence where an action results in a "Stigma plus" denial of a liberty interest (*Valmonte v Bane*, 18 F. 3d 992, 1000-1001 [2d Cir. 1994])

(4) Clear and convincing evidence where the liberty interest threatened is of the highest importance (*Santosky v. Kramer*, 455 U.S. 745, 766, 71 L. Ed. 2d 599, 102 S. Ct. 1388 [1982] permanent loss of parental rights)

## Stigma Plus

Where a state imposes on an employee a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities, then, because deprivation not only of present government employment, but also of future opportunity for government employment, is no small injury, the state is required by procedural due process to accord to the teacher notice and an opportunity to refute the charges before state officials. *Valmonte v Bane*, 18 F. 3d 992, 1000-1001 (2d Cir. 1994). The issue in

this case is whether the bundle of injuries to Plaintiff caused by his "U" rating are such as to constitute a denial to him of his protected liberty interests without due process or law which would include requiring findings of fact supported by a "preponderance of the evidence." Plaintiff's status has victim of a "stigma plus will be discussed in more detail in POINT FOUR.

*The existence of a post deprivation remedy*

Defendant contends that the existence of a "post deprivation" remedy" defeats plaintiffs claim to a denial of due process. However, where the denial of due process is in the context of an established state process – as it is in this case – then the existence of a post deprivation remedy is not relevant and does not defeat a due process claim. *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)(collecting cases), cert. denied, 521 U.S. 1140, 118 S. Ct. 15, 138 L. Ed. 2d 1048 (1997).

In *Hellenic,* The Court of Appeals stated:

> "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. *See Hudson v. Palmer, 468 U.S. 517, 532, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984)*; *Parratt v. Taylor, 451 U.S. 527, 541, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).* In the latter case, the *Due Process Clause of the Fourteenth Amendment* is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post deprivation remedy. *Hudson v. Palmer, 468 U.S. at 531, 533.* When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post deprivation procedures will not, ipso facto, satisfy due process. *Id. at 532*; *Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982).*" *Hellenic American Neighborhood Action Comm. v. City of New York,* supra, 101 F.3d at 880

Where, the claim is based on the "random, unauthorized act" of state employees and there is a viable post-deprivation remedy, the proper result is to dismiss the Section 1983 claim, but the federal courts are available where the actions were not random, unauthorized acts:

"[I]f there *is* a constitutional violation, federal courts are available to hear *§ 1983* suits despite the availability of adequate state procedures. *Monroe v. Pape, 365 U.S. at 183*. *Parratt*, *Hudson* and their progeny, however, emphasize that there *is no* constitutional violation (and no available *§ 1983* action) when there is an adequate state post deprivation procedure to remedy **a random, arbitrary deprivation of property or liberty.** *Zinermon v. Burch, 494 U.S. at 132*; *Parratt v. Taylor, 451 U.S. at 541*; *Hudson v. Palmer, 468 U.S. at 531, 533*" (Emphasis added) *Hellenic American Neighborhood Action Comm. v. City of New York,* supra, 101 F.3d at 882

In *Reyes v. Erickson*, 238 F.Supp.2d 632, 636 (S.D.N.Y. 2003) the court applied the reasoning of the *Hellenic* case to dismiss a Section 1983 claim which the Court found to meet the "random and unauthorized" logic of *Hellenic*. It also noted the discussion of *Hellenic in John Gil Constr., Inc. v. Riverso*, 72 F. Supp.2d 242, 251 n.13 (S.D.N.Y. 1999).

The issue to be decided then is whether this case is more like *Reyes* or more like *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). In essence, this distinction among acts pursuant to a state sanctioned process and "random, unauthorized acts" is a variant of the state action element of a Section 1983 claim. Where, as it in this case, the deprivation is the result of a state process, it is state action. However, where, as is **not** the case here, where it is a random, unauthorized act and the state provides a remedy, the random unauthorized act is not state action.

**POINT TWO**
**THE WEIGHT OF AUTHORITY IS THAT SECTION**
**1983 DAMAGES ARE NOT RECOVERABLE IN AN**
**ARTICLE 78 PROCEEDING AND MAY BE**
**PURSUED IN A COLLATERAL ACTION IN**
**FEDERAL COURT.**

The Complaint alleges damages as follows:

99, By reason of the premises aforesaid, Defendant NYC DOE and the Chancellor, acting under color of law have deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983.

100. By reason of the premises aforesaid, Plaintiff has been damaged in his property by reason of lost income and reasonably anticipated retirement benefits in the some of $1,000,000.

101. Defendant's actions has caused Plaintiff severe emotional distress and anxiety, caused him to lose sleep and suffer pain and anguish because of the threat to his continued employment and the destruction of his career and reputation.

102. The actions of the defendant damaged Plaintiff's otherwise harmonious relationship with his wife, creating domestic friction, further causing and enhancing his emotional distress.

103. By reason of his emotional distress and damage to his marital relationship, plaintiff has been damaged in sum to be determined but not less than $1,000,000.

104. By reason of the premises aforesaid the Plaintiff is entitled to judgment in the sum of $2,000,000 together with the costs and disbursements of this action including reasonable attorney fees pursuant to 42 U.S.C. §1988.

Both N.Y. State courts and federal courts, presented with issues arising in federal actions brought subsequently to, or concurrently with, an Article 78 proceeding involving the same operative facts, have recognized the limited scope of damages recoverable in an Article 78 proceeding, as contrasted with an action pursuant to Section 1983.

In *Schwab v. Bowen*, 41 N.Y.2d 907, 394 N.Y.S.2d 616, 363 N.E.2d 341 (1977), the New York State Court of Appeals held that "Damages may not be awarded in this proceeding because damages, if any, would not be incidental to primary relief ( *CPLR 7806*). This determination is without prejudice, of course, to any other action petitioners

may be advised to take." In *Finklestein v. Capuano*, 792 F.2d 275, 278-82 (2d Cir. 1986)[5]
the Second Circuit Court of Appeals determined that damages for civil rights violations
are not recoverable in Article 78 proceedings, In *Resource N.E. Of Long Island, Inc. v.
Town Of Babylon*, 28 F. Supp. 2d 786, 792 (E.D.N.Y. 1998), the District Court held that
Article 78 is not adequate remedy for Section 1983 claims because it does not offer the
full range of relief of Section 1983, See also *Reape v. Adduci*, 151 A.D.2d 290, 293, 542
N.Y.S.2d 562, 564 (1st Dep't 1989) where the First Department of the N.Y.S. Appellate
Division held that civil rights actions for damages are not incidental to Article 78 reviews
of administrative determinations.

**POINT THREE**
**BY WHATEVER STANDARD IS APPLIED, THERE**
**IS NO EVIDENCE THAT PLAINTIFF WAS GUILTY**
**OF AN ACT CORPORAL PUNISHMENT,**

According to Chancellor's Regulation A-420:

> ***"Regulations of the Commissioner §100.2(I)(3)(i) define corporal
> punishment as any act of physical force upon a pupil *for the purpose of
> punishing* that pupil. Such term shall not mean the use of reasonable
> physical force for any of the following purposes:
>
> "1. to protect oneself from physical injury;
>
> "2. to protect another pupil or teacher or any other person from physical
> injury (e.g. breaking up a physical altercation without using excessive
> force);
>
> "3. to protect the property of the school or of others; or
>
> "4. to restrain or remove a pupil whose behavior is interfering with the
> orderly exercise and performance of school district functions, powers or
> duties, if that pupil has refused to comply with a request to refrain from
> further disruptive acts, provided that alternative procedures and methods
> not involving the use of physical force cannot be reasonably employed to
> achieve the purposes set forth in 1 through 3 above." (Emphasis supplied)

The issue, therefore, is whether, Mr. Storman committed an act of physical force on

Student A **for the purpose of punishing him**. It is an offense of intent. There are no

---

[5] For some reason, not apparent to counsel, this case is cited as *Davidson v. Capuano* in
*Resource N.E. Of Long Island, Inc. v. Town Of Babylon* . supra.

facts in this record to indicate that Mr. Storman exerted "physical force" upon Student A for the purpose of punishment – or any other purpose at all. Plaintiff submits that whatever test is applied, the result is the same, the determination must be set aside and the "U" rating based upon a substantiated incident of corporal punishment expunged from Plaintiff's record.

In the case at bar, both the investigating officer and the supervising principal conceded that the facts did not amount to corporal punishment. (Complaint Exhibit I, TR 38-40). Given those admissions and the total absence from this record of any evidence that Mr. Storman inflicted physical force on Student A for the purpose of punishing him, the "U" rating is patently in error.

Yet, the Chancellor, after the hearing in which these admissions were made, sustained the rating on the grounds of a "substantiated incident of corporal punishment".

## POINT FOUR
### The actions of the Defendant Chancellor inflicted a "stigma plus" deprivation of liberty on Plaintiff

**A.     <u>The provisions of the UFT contract.</u>**

The provisions of the UFT Contract are properly before the Court. See *International Audiotext Network v. A.T. & T.*, 62 F.3d 69, 72 (2d Cir. 1995) where the court stated:

> "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment. *Id.* at 47-48." *International Audiotext Network v. A.T. & T.*, SUPRA, 62 F.3d a6 72

Plaintiff has set forth in paragraphs "19' to "22" of the Complaint, his liberty interest and the damage to that interest by the Chancellor's determination. "U" rating is precisely

the type of stigma that will follow him and foreclose employment opportunities for him. In terms of his liberty rights, the Complaint specifically alleges:

> "19. For over 28 years Plaintiff has been employed by the New York City Board of Education and for the last 19 years he has been employed as a guidance counselor. During this time, Plaintiff has enjoyed an excellent reputation having earned the high regard of parents, students, his teaching colleagues and supervisors.

> "20. Plaintiff's tenure rights are vested in him by reason of the provisions of the New York Sate Education Law, the contract between Defendant and the his union, the United Federation of Teachers ("UFT") and rules, regulations and procedures promulgated by the defendant pursuant to its governmental power.

> "21. Among the rights and privileges afforded Plaintiff by the UFT Contract are "retention rights" which allows him to obtain and retain extra-assignments including assignment as a summer school teacher and as a Home Instructor pursuant to the Defendant's Home Instruction Program.

> "22. Plaintiff's vested rights of retention and his ability to pursue professional opportunities afforded him by his experience and previously unblemished reputation are all integral parts of his liberty that is protected by the United States Constitution."

Appended to this Memorandum are extracts from the UFT Contract including the provisions for retention rights. (App. p. 2-3). Those rights include a specific right to appeal from an unsatisfactory rating to protect those rights. The issue is whether, the these allegations of the complaint, sufficiently allege a "stigma plus" deprivation of plaintiff's liberty.

*(1)     The stigma*

There can be no doubt, or serious argument, that imposition of a "U" (Unsatisfactory) rating upon plaintiff and its affirmance by the Chancellor on the grounds of a substantiated incident of corporal punishment is a stigma that will prevent plaintiff from getting any teaching job should he seek employment in his chosen career.

*(2)     Publication*

It is not necessary that the stigma be widely circulated. In *Brandt v. Board of Cooperative Educational Services*, 820 F.2d 41 (2nd Cir. 1987), the Court of Appeals

found the creation of a permanent file containing the allegations which could be accessed was sufficient publication. The court said:

> "In this case, we consider the effect on Brandt's future job opportunities since that is the harm he contends will result **45** from dissemination of the reasons for his discharge. If Brandt is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his future job opportunities. See *Velger v. Cawley,* 525 F.2d 334, 336-37 (2d Cir.1975), rev'd on other grounds sub nom. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Brandt need not wait until he actually loses some job opportunities because the presence of the charges in his personnel file coupled with a likelihood of harmful disclosure already place him "between the devil and the deep blue sea." *Velger v. Cawley,* 525 F.2d at 336. In applying for jobs, if Brandt authorizes the release of his personnel file, the potential employer would find out about the allegations of sexual misconduct and probably not hire him. If he refuses to grant authorization, that, too, would hurt his chances for employment. Id. Thus, Brandt, unlike the employee in *Bishop,* would not be "as free as before to seek another" job.
>
> Courts of appeals for other circuits have similarly concluded that the public disclosure requirement has been satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers. See *Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1113 n. 24 (D.C.Cir.1985); *Burris v. Willis Indep. School Dist., Inc.,* 713 F.2d 1087, 1092 (5th Cir.1983); *Hogue v. Clinton,* 791 F.2d 1318, 1322 n. 7 (8th Cir.), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 95 L.Ed.2d 704 (1986); *Bailey v. Kirk,* 777 F.2d 567, 580 n. 18 (10th Cir.1985); see also *Larry v. Lawler,* 605 F.2d 954, 958 (7th Cir.1978). We hold, therefore, that it was error for the district court to grant summary judgment to appellees, and to deny Brandt the chance to substantiate his claim that future employers are likely to gain access to his personnel file and refuse to hire him." *Brandt v. Board of Cooperative Educational Services*, *Brandt v. Board of Cooperative Educational Services*, supra, 840 F,2d at 44-45

There is an added factor in this case that was not present in the *Brandt* case. That is the provision for reporting violations to the State Department of Education. See Complaint, ¶¶ 24 & 63)

Given the authority of the *Brandt* case which denied summary judgment in a similar situation, it is submitted that the Complaint adequately alleges publication.

*(3)      The immediate impact*

The defendants cite a plethora of District Court cases for the proposition that the loss of "overtime pay" does not amount to a "stigma plus." Only one of them, involve even tangentially the issue of "per session assignments." *Grunberg v. Board of Education*, 2006 U.S. Dist. Lexis 22424 *23-4 (E.D.N.Y. Mar. 30, 2006) cited on page 9 of Defendants' Memorandum.

Plaintiff submits that the "per session" employment of plaintiff was not simply overtime. It was independent work assignments that he was compensated for on a different basis. Typically, overtime work is the same work as regular time work but compensated for at a higher level of pay. That is not the case with per session work. More importantly, per session employment as its own "bill of rights" including its own right to appeal in case of a "U" rating. See Appendix A, annexed to this Memorandum.

In *Valmonte,* supra, the Court of Appeals noted that it was not necessary to wait until a plaintiff was actually refused work, for an action to inure.

> "The appellees contend that Valmonte's claim is not ripe, because Valmonte has not actually been deprived of employment or suffered any other injury. They argue that Valmonte has not made a showing that she has even looked for a job in the field **\*999** of child care, and that she has only alleged that she had been a "paraprofessional in the school system" in the past.
>
> "As Valmonte responds, however, it is not necessary that she wait until she is actually injured to file this suit. Valmonte does not need to "await the consummation of threatened injury to obtain preventative relief." *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 664, 67 L.Ed. 1117 (1923); *see Berger v. Heckler,* 771 F.2d 1556, 1563 (2d Cir.1985) (plaintiff need not wait until "consummation" of threatened injury in order to sustain suit). Her claim is ripe if the perceived threat due to the putatively illegal conduct of the appellees is sufficiently real and immediate to constitute an existing controversy. *See Blum v. Yaretsky,* 457 U.S. 991, 1000, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982)". *Valmonte v Bane*, supra, 18 F. 3d at 998-999

The Supreme Court in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), set forth the criteria for measuring when the deprivation of a right or status under state law because a constitutionally protected right or status:

It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status. In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), for example, the State by issuing drivers' licenses recognized in its citizens a right to operate a vehicle on the highways of the State. The Court held that the State could not withdraw this right without giving petitioner due process. In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the State afforded parolees the right to remain at liberty as long as the conditions of their parole were not violated. Before the State could alter the status of a parolee because of alleged violations of these conditions, we held that the Fourteenth Amendment's guarantee of due process of law required certain procedural safeguards.

In each of these cases, as a result of the state action complained of, *a right or status previously recognized by state law was distinctly altered or extinguished*. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions…." (Emphasis supplied) *Paul v. Davis,* supra, 424 U.S. at 710-711

The important language of the *Paul* decision is that the inquiry is whether the right or status is "distinctly altered or extinguished." In the instant case the right of retention of plaintiff's per session work is firmly established and it is submitted that it's revocation by the affirmed "U" rating is denial of a right or status under the language in Paul.

**POINT FIVE**
**As alleged, Plaintiff's cause of action pursuant to**
**Section 1983 did not arise until the action of the**
**Chancellor sustaining his unsatisfactory rating on the**
**ground of a substantiated incident of corporal**
**punishment. It is not barred by the statue of limitations.**

The issue of the statute of limitations is entwined with the issue of the administrative hearing provided the plaintiff. Because the Chancellor had the obligation to make the plaintiff whole had he found in his favor, than the statute of limitations can not begin to run until his refusal to do so completed the action of the DOE.

In *Segal v. City of New York*, , 459 F.3d 207 (2d Cir. 2006), the plaintiff failed to pursue post-deprivation remedy. Had he pursued the remedy and then timely appealed any adverse determination, he would not have been barred.

In this case,  given the powers of the Chancellor both through the UFT Contract and the regulations, any resort to federal court must follow the post-deprivation hearing and the issue is the constitutional standard to be applied to that hearing.

**POINT SIX**
**THE COMPLAINT FAIRLY ALLEGES**
**ACTIONABLE RETALIATION BY DEFENDANTS**
**BOYLES AND MARSELLA**

The First Amendment of the United States Constitution provides:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The principal cases relied upon by the defendants in seeking dismissal of retaliation set forth in the Second Count of the Complaint are *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1957 (2006) and *Ruotolo v. City of New York*, 514 F.3d 184, 188-90 (2nd Cir. 2008). *Garcetti* is a pure speech case in that it held that speech by a public employee in his governmental capacity is not protected speech by the First Amendment. The decision did not concern the redress of grievances. The retaliation was for speech by a public employee that was not protected by the First Amendment.

14

*Routolo* is more problematical because it appears to pour the First Amendment right to petition for grievances into the public interest limitation of right to free speech.

However, there is one important distinction that ought to be addressed. In this case, the first action in this court alleged a "stigma plus" denial of plaintiff's constitutionally protected liberty interests. That does not seem to be the allegation or fact of *Ruotolo*. If in fact the constitutional rights to liberty are implicated in the first action filed, then it would be truly extraordinary to hold there is no constitutional "right to petition for redress of grievances" for a citizen seeking vindication of his Constitutional rights.

In *Cate v. Oldham*, 707 F.2D 1176, 1190 (11th Cir. 1983), the Seventh Circuit Court of Appeals found a strong public interest in protecting the right to petition for grievances pursuant to the First Amendment.

> The strong public interest in protecting First Amendment values combined with the interest in giving the state an opportunity to rule on this issue outweighs any countervailing interest in an uninterrupted malicious prosecution proceeding: hence the public interest favors injunctive relief. 1190

In *Milhouse v. Carlson*, 652 F.2D 371, 373 (3rd Cir. 1981), the Third Circuit Court of Appeals said:

> "We read appellant's complaint as alleging that he was subjected to a conspiratorially planned series of disciplinary **[**8]** actions as retaliation for initiating a civil rights suit against prison officials. Such allegations, if proven at trial, would establish an infringement of Milhouse's first amendment right of access to the courts."

In *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), the Sixth Circuit Court of Appeals analyzed the right to petition for grievances in a prison context and found that an retaliation against an individual seeking redress could be the basis of retaliation claim..

Plaintiff submits that the fact that he has alleged a "stigma plus" deprivation of his liberty in both his original Article 78 proceeding and his original complaint in federal court, distinguish his case from *Routolo*. However, even if his distinction is disregarded, he has the right to advance it for argument to the Second Circuit Court of Appeals and because it has not yet been clearly resolved by the Supreme Court, to the Supreme Court.

**POINT SEVEN**
**IN THE EVENT THAT COURT FINDS THAT THE**
**COMPLAINT FAILS TO STATE A CAUSE OF**
**ACTION, LEAVE OUGHT TO BE GRANTED TO**
**FILE AN AMENDED COMPLAINT.**

In the event that the Court should find for any reason that the Complaint fails to state a cause of action, leave is requested to file a second amended complaint.

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When a complaint is dismissed, leave to amend should be freely granted. In *Foman v. Davis,* 371 U.S. 178; 83 S. Ct. 227; 9 L. Ed. 2d 222 (1962) the Supreme Court held:

> "Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the moving, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* supra, 371 U.S. at 182

**CONCLUSION**

**THE UNSATISFACTORY RATING HAS DAMAGED THE PLAINTIFF PERMANENTLY AND WAS THE RESULT OF A PROCEDURE THAT DENIED THE PLAINTIFF DUE PROCESS . THE COMPLAINT STATES VALID CAUSES OF ACTION. IN THE ALTERNATIVE, THE COURT OUGHT GRANT LEAVE TO FILE AN AMENDED COMPLAINT.**

Dated: New York, New York
      March 13, 2009

*s/John C. Klotz*
_____
JOHN C. KLOTZ (JK 4162)
Attorney for the Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118-4810
(212) 630-2600

17

## AGREEMENT

### between

## THE BOARD OF EDUCATION

### of the

### City School District

### of the

### City of New York

### and

## UNITED FEDERATION OF TEACHERS

### Local 2, American Federation
### of Teachers, AFL-CIO

### covering

## TEACHERS

### June 1, 2003 – October 12, 2007

 3-6

## 2. Retention

Prior service shall govern in the retention of per session teachers employed on a regular basis in per session activities as follows:

a. Teachers with at least two years of continuous satisfactory service in a particular activity shall have priority for retention in the same activity for the following school year. Teachers with retention rights in an activity will not lose those rights if their service is interrupted for a period of not more than one year because of sick leave without pay or involuntary change of day school session, or sabbatical leave. Such teachers must return to service in the same activity at the first reorganization of the activity following the interruption of their service for the reasons stated above.

b. Teachers who have been granted priority for retention in one per session activity shall not be granted such priority for any other per session activity.

c. Teachers will be permitted to serve in more than one per session activity only if no other qualified applicants are available. The Union shall be given a list of per session positions which are held by teachers who have no retention rights in those positions and who are serving in more than one per session activity. Per session activities of 25 hours or less and certain other activities as mutually agreed between the Board and the Union are not counted when determining the number of per session activities served in.

d. No teacher who had retention rights in a per session activity on September 1, 1969, shall be displaced by reason of the Chancellor's determining that thereafter the position need not be held by a teacher. During the period he/she remains employed in that per session position, the incumbent having retention rights as of September 1, 1969, shall be paid at the teacher compensation rate prescribed in this Agreement.

e. If a per session position occupied by a teacher is terminated and is subse-

quently restored within the period of six months, the restored position shall be offered to its last teacher incumbent before any other person is employed to fill it.

f. A teacher with retention rights who is promoted to teacher in charge shall not lose his/her retention rights as a teacher in the activity in the event that he/she receives an unsatisfactory rating as teacher in charge.

g. So long as they continue to exercise their retention rights, no per session teachers who had retention rights in an adult education activity on September 8, 1987 shall be displaced by reason of the provisions of Article Fourteen (Rates of Pay and Working Conditions of Adult Education Teachers) of this Agreement unless a layoff or reduction in hours of a primary adult education employee would result. The rights of a per session teacher who acquires retention rights in an adult education activity after September 9, 1987 shall be subordinate to the rights of primary adult education teachers as set forth in Article Fourteen, A, E (Hours), F (Excessing) and G (Layoff and Recall). In addition, the Board agrees to follow a policy of attrition with respect to those per session teachers who had retention rights in an adult education activity on September 8, 1978 so long as they continue to exercise their retention rights in the adult education activity.

**3. Appeals from Unsatisfactory Ratings**

Per session teachers who receive unsatisfactory ratings shall be entitled to the review procedures before the Chancellor as prescribed in Section 5.3.4 of the by-laws of the Board of Education.

**ARTICLE 21D, p. 115-116**

### D. Discontinuance of Probationary Service and Appeals of Unsatisfactory Ratings

1. Regular substitutes and teachers on probation, except as provided in sub-paragraph 2 below, shall be entitled to the review procedures before the Chancellor as prescribed in Section 4.3.2 of the by-laws of the Board of Education.

P. 116

By-law 4.3.2 procedures for the review of a recommendation by a superintendent for discontinuance of probationary service of a teacher shall be modified to provide for the following:

a. The 4.3.2 committee shall be a tripartite committee of professional educators, one selected by the teacher, one by the Board and a third selected by the other two from a list agreed upon by the Board and the Union.

b. The committee will make an advisory recommendation to the community school board or the Chancellor for central programs within 20 days after the hearing.

c. The costs of the teacher's representative shall be paid by the teacher. The costs of the Board's representative shall be paid by the Board. The costs of the mutually selected member of the committee shall be shared by the Board and the teacher.

2. Teachers on probation who have completed at least three years of service on regular appointment in the school shall be entitled, with respect to the discontinuance of their probationary service, to the same review procedures as are established for tenured teachers under Section 3020-a of the Education Law.

3. Teachers who receive doubtful or unsatisfactory ratings may appeal under Section 4.3.1 of the by-laws of the Board of Education.

**ARTICLE 21D, p. 115-116**

**ARTICLE 21H p. 122**

**H. False Accusations**

Knowingly false accusations of misconduct against employees will not be tolerated.

If an accusation of sexual misconduct or physical abuse against an employee is found by the Board or Special Commissioner of Investigation to have been knowingly false when made, the Board will take the following actions to restore the falsely accused employee's reputation: removing all references to the charges from the employee's personnel file(s) and adding evidence of the unfounded nature of the charge to departmental files that may have to be maintained to satisfy other legal requirements, if any; and restoring any back pay owed with interest and, at the employee's request, confirming to any regulatory agency the finding that the employee was falsely accused. In addition, where the knowingly false accusation was made by a student of the employee, absent compelling and extraordinary circumstances the student will be permanently reassigned from the employee's class.

**ARTICLE 21H p. 122**