Index No. **09 CV 00338**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

GLENN STORMAN,

Plaintiff,

-against-

JOEL I. KLEIN, in his capacity as Chancellor of the New York City Department of Education; NEW YORK CITY DEPARTMENT OF EDUCATION; JOSEPHINE MARSELLA; and DENNIS BOYLES

Defendants,

**PLAINTIFF'S OBJECTION TO
REPORT AND RECOMMENDATIONS**

JOHN C. KLOTZ (JK4172)
Attorney for the Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600
johnklotz@johnklotz.com

**TABLE OF CONTENTS**

A.  INTRODUCTION..................................................................................................1
   1.  Statement of the case .......................................................................................1
     (a)  Summary of the case......................................................................1
B.  Plaintiff's Objections.............................................................................................2
C.  DISCUSSION .......................................................................................................3
   1.  The Report fails to grant leave for Mr. Storman to amend his complaint to cure any perceived deficiencies. ...................................................................................3
   2.  The Report incorrectly holds, at this stage of the proceedings, that any adverse impact suffered by plaintiff prior to August 15,2005 started the statute of limitations running and this barred thus barred Count One. ..........................................................4
     (a)  The gravamen of the Count One is the action of defendant Klein.................4
     (b)  The Report.................................................................................6
     (c)  Applicable law ............................................................................6
   Stigma Plus ........................................................................................................6
   Judicial policy should not force resort to the federal courts as a first resort ..............8
   3.  The Second Count clearly alleged that the retaliation was motivated Mr. Storman's exercise of his right to petition for the redress of grievances, not simply the exercise of free speech..............................................................................................9
   There  is no statute of  limitations bar to the retaliation claim.................................11

A.     **INTRODUCTION**

1. **Statement of the case**

Plaintiff GLENN STORMAN submits this Objection to the Report and Recommendation (hereinafter "the Report") filed on April 20, 2009 by the Hon. Andrew J. Peck, USMJ. A copy of the Report is annexed hereto as Appendix A of this Objection. Annexed as Appendix B is Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss (hereinafter "Plaintiff's Memorandum"); Appendix C is the Amended Complaint originally filed in this court and dismissed without prejudice..

**(a)** *Summary of the case*

Defendant JOEL KLEIN (the Chancellor") is Chancellor of defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYC DOE"). Plaintiff is a tenured guidance counselor employed by the defendant NYC DOE. In 2004, he was wrongly accused of corporal punishment and, although all of the participants acknowledged that he was not guilty of acts constituting corporal punishment, he was nonetheless found guilty of a substantiated incident of corporal punishment. That resulted in his receiving an unsatisfactory "U" rating. After an appeal was denied by the Chancellor, he commenced an Article 78 proceeding in N.Y. State Supreme court and an action pursuant to 42 USC § 1983 in this Court, challenging the actions of the Chancellor.

The State Supreme Court, Hon. Justice Marcy Friedman entered an order setting aside the determination of the Chancellor and remanded the matter back to NYC DOE for specific findings of fact justifying the finding of substantiated corporal punishment. See Exhibit A, decision of Justice Friedman. The United States District Court, the Hon. Sidney Stein, USDJ on consent of the parties dismissed the Civil Rights Action without prejudice as moot and tolled the running of the statute of limitations pending the determination of the remand.

However, on remand, the Chancellor, merely reissued the same determination without making any of the factual findings required by Justice Friedman.

Concurrently, defendants JOSEPHINE MARSELLA (MARSELLA") a supervising principal, and DENNIS BOYLES ("BOYLES"), both of whose

1

professionalism was called into question by the first determination, instigated bogus charges against the plaintiff and found him guilty of additional misconduct.

The Count Two of the Complaint, in which the facts of that second misconduct charge are set forth, states a claim for retaliation in further violation of plaintiff's constitutional rights.

The defendants moved to dismiss the complaint pursuant to Rule 12(b)(1) and 12(b)(6). This Court referred the motion to Judge Peck, In his Report, Judge Peck denied the motion to dismiss as to Count One and granted it as to Count Two..

**B.    Plaintiff's Objections**

Plaintiff objects to the Report on the following grounds:

**(1)** The Report does not grant leave to the plaintiff to file an amended complaint as to any issue to cure any perceived deficiencies.

**(2)** The Report indicates that if the plaintiff suffered any adverse impacts from the initial finding of substantiated corporal punishment prior to August 15, 2005, the action would be barred by the statute of limitations. As matter of fact plaintiff did, but he has always maintained that it was the actions of the Chancellor in denying him due process in his administrative appeal that are the gravamen of his complaint and those denials occurred in August 2006 and March 2008. If the Report's finding is either the law, or the law of this case, Count One must be dismissed.

In addition, because the denial of due process was in "stigma plus," which includes as an element publication, not merely damage. The determination of a date of "publication" is therefore appropriate.

**(3)** The Count Two states a claim for retaliation for plaintiff exercising his constitutional right to seek redress of grievances. The Report analyzes the Count as a free speech claim. However, plaintiff submits that because his litigation involved the denials to him of due process, and because the retaliation is clearly for his seeking constitutional redress, defendants should not be immunized for their retaliatory actions occasioned by plaintiff's seeking constitutional redress.

2

**C.     DISCUSSION**

1. <u>**The Report fails to grant leave for Mr. Storman to amend his complaint to cure any perceived deficiencies.**</u>

While it might seem logical to discuss leave to amend as the last point of this Objection, because it was not granted, and the results of the Report are thus fatal to the plaintiff's case, it should be a paramount consideration when weighing both the Report and the plaintiff's objections.

Point Seven the Plaintiff's Memorandum (App. B-19), asserted that "In The Event That Court Finds That The Complaint Fails To State A Cause Of Action, Leave Ought To Be Granted To File An Amended Complaint."

In *Foman v. Davis,* 371 U.S. 178; 83 S. Ct. 227; 9 L. Ed. 2d 222 (1962) the Supreme Court held:

> "Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the moving, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* supra, 371 U.S. at 182

There is nothing in this case indicating any of the objections to amendment enumerated by the Supreme Court except if one were to read into the Report that it would be futile to allow amendment. Thus, at this stage of the litigation, where we are dealing with a FRCP Rule 12 motion, the issue is whether the law, as applied to the facts, is so set in stone as to render amendment futile? Or in the alternative, could further clarification of the facts, cure any deficiency?

3

## 2. The Report incorrectly holds, at this stage of the proceedings, that any adverse impact suffered by plaintiff prior to August 15,2005 started the statute of limitations running and thus barred thus barred Count One.

**(a)** *The gravamen of the Count One is the action of defendant Klein*

The extracts of the UFT contract annexed to the Plaintiff's Memorandum, establish that (a) plaintiff had retention rights to his per session work and (b) that he had a right to appeal to the Chancellor an "unsatisfactory" rating.

In the Summer of 2005, he was told he could nt teach summer school but he was not formally advised in writing of the rating in a timely manner.

The contract specifically set for the powers of the Board in the event it was determined that false charges of sexual misconduct or physical abuse had been made against an employee:

> "**H. False Accusations**
>
> Knowingly false accusations of misconduct against employees will not be tolerated.
>
> If an accusation of sexual misconduct or physical abuse against an employee is found by the Board or Special Commissioner of Investigation to have been  knowingly false when made, the Board will take the following actions to restore the falsely accused employee's reputation: removing all references to the charges from the employee's personnel file(s) and adding evidence of the unfounded , nature of tile charge to departmental files that may have to be maintained to satisfy other legal requirements, if any; and restoring any back pay owed with interest and, at the employee's request, confirming to any regulatory agency the finding that the employee was falsely accused. **In** addition, where the knowingly false accusation was made by a student of the employee, absent compelling and extraordinary circumstances the student will be permanently reassigned from the employee's class.

The complaint alleges that Mr. Storman appealed his unsatisfactory rating through the procedures established by the UFT contract and the regulations of the Chancellor.

It further alleges:

4

"51. A hearing was held on his appeal on May 23, 2006. At that hearing both the investigating officer and the Supervising Principal admitted that Mr. Storman's conduct did not constitute corporal punishment.

"52. In addition, Mr. Storman's union representative argued that the "U" rating based on the investigatory report was improper because at no time was Mr. Storman afforded the opportunity of confronting his accuser.

"53. A determination issued on August 14, 2006 denying Plaintiff's Appeal and sustaining his "U" rating on "as a consequence of a substantiated incident of corporal punishment." (See Exhibit H)

"54. The determination that there was a "substantiated incidence of corporal punishment" is devoid of any legal or factual basis, and was based upon a procedure that denied Plaintiff fundamental constitutional rights including the right of confrontation and proof of wrongdoing by substantial evidence.

"55. Thereafter, it was determined that the record was devoid facts supporting the finding of "substantiated corporal punishment and the matter was remanded to the NYC DOE for specific findings of fact, capable of review. (Remand, Ex. A).

"56. On remand, a second hearing was held and the Chancellor again issued a determination of substantiated corporal punishment with reciting any facts to support that determination (Second Determination, Ex. C)"

The Complaint places the actions of the Chancellor in their constitutional context:

"65. The determination of the Defendant that the Plaintiff was guilty of a substantiated incident of corporal punishment is arbitrary and capricious.

"66. The Fourteenth Amendment of the United States Constitution requires that in cases in which important liberty rights are implicated, that any deprivation of those liberty rights can only occur after notice and hearing and any adverse determination must be supported by a preponderance of the evidence.

"67. The determination of the Defendant that the Plaintiff was guilty of a substantiated incident of corporal punishment is arbitrary and capricious.

"68. Said determination is not supported by either a preponderance of the evidence or substantial evidence and is, in fact, devoid of any supporting evidence.

It is absolutely clear, Count One is addressed to the actions of the NYC Department of Education ("DOE") and Chancellor Klein:

5

> "99. By reason of the premises aforesaid, Defendant NYC DOE and the Chancellor, acting under color of law have deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983."

If there is any ambiguity or question about this, then leave to amend would have been appropriate.

**(b)** *The Report*

The Report focuses in the first denial of a benefit to Mr. Storman, which in fact occurred in the summer of 2005. However, it is submitted that given the contractual right of Mr. Storman to appeal his unsatisfactory rating, and the power of the Chancellor to grant him complete redress in the appeal, that the actions of Chancellor in making his finding gave rise to cause of action pursuant to Section 1983.

**(c)** *Applicable law*

There are four standards of evidentiary review of administrative:

(1) Abuse of discretion where no hearing is required NY CPLR 7803(3) *Scherbyn v. Wayne-Finger Lakes BOCES,* 77 N.Y.2d 753 (1991);

(2) Where a hearing is required, substantial evidence is necessary to support the challenged determination. NY CPLR 7803(4) *Pell v. Board of Education,* 34 N.Y.2d 222 (1974);

(3) A preponderance of the evidence where an action results in a "Stigma plus" denial of a liberty interest (*Valmonte v Bane*, 18 F. 3d 992, 1000-1001 [2d Cir. 1994])

(4) Clear and convincing evidence where the liberty interest threatened is of the highest importance (*Santosky v. Kramer*, 455 U.S. 745, 766, 71 L. Ed. 2d 599, 102 S. Ct. 1388 [1982] permanent loss of parental rights)

**(d)** *Stigma Plus*

The Report recognizes that plaintiff has made a sufficient prima facie showing in the complaint of "stigma plus" to litigate. However, because he starts the statute running from the first adverse action this action would be barred.

6

There is a dichotomy between aberrant actions for which are not state actions and actions according top established procedures.

Where the denial of due process is in the context of an established state process then the existence of a post deprivation remedy is not relevant and does not defeat a due process claim. *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)(collecting cases), cert. denied, 521 U.S. 1140, 118 S. Ct. 15, 138 L. Ed. 2d 1048 (1997).

In *Hellenic,* The Court of Appeals stated:

> "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. *See Hudson v. Palmer, 468 U.S. 517, 532, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984)*; *Parratt v. Taylor, 451 U.S. 527, 541, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981)*, *overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986)*. In the latter case, the *Due Process Clause of the Fourteenth Amendment* is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post deprivation remedy. *Hudson v. Palmer, 468 U.S. at 531, 533.* When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post deprivation procedures will not, ipso facto, satisfy due process. *Id. at 532*; *Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982).*" *Hellenic American Neighborhood Action Comm. v. City of New York,* supra, 101 F.3d at 880

In this case, the structured state process includes the appeal to the Chancellor. The state process is not complete until he acts.

Where, the claim is based on the "random, unauthorized act" of state employees and there is a viable post-deprivation remedy, the proper result is to dismiss the Section 1983 claim, but the federal courts are available where the actions were not random, unauthorized acts:

> "[I]f there *is* a constitutional violation, federal courts are available to hear *§ 1983* suits despite the availability of adequate state procedures. *Monroe v. Pape, 365 U.S. at 183*. *Parratt*, *Hudson* and their progeny, however, emphasize that there *is no* constitutional violation (and no available *§ 1983* action) when there is an adequate state post

7

> deprivation procedure to remedy **a random, arbitrary deprivation of property or liberty.** *Zinermon v. Burch*, 494 U.S. at 132; *Parratt v. Taylor*, 451 U.S. at 541; *Hudson v. Palmer*, 468 U.S. at 531, 533"
> (Emphasis added) *Hellenic American Neighborhood Action Comm. v. City of New York,* supra, 101 F.3d at 882

In *Reyes v. Erickson*, 238 F.Supp.2d 632, 636 (S.D.N.Y. 2003) this Court applied the reasoning of the *Hellenic* case to dismiss a Section 1983 claim which the Court found to meet the "random and unauthorized" logic of *Hellenic*. It also noted the discussion of *Hellenic in John Gil Constr., Inc. v. Riverso*, 72 F. Supp.2d 242, 251 n.13 (S.D.N.Y. 1999).

It is submitted that until the internal, contractually obligated, appeal is completed, the state action is not completed and the statute ought not run.

It is submitted that in this case there are actually two remedies: the internal remedy of appeal that Mr. Storman pursued and the remedy of an Article 78 from the determination of the chancellor.

The actions of Boyles and Marcella are more akin to a random act, then a studied one. Or in the alternative, the deprivation of liberty occasioned by the unsatisfactory rating was not completed until the internal appeal was completed by the Chancellor's ruling. The UFT contract and the Chancellor's rules make it clear that state action in this case is not complete until the Chancellor acts. It is his arbitrary and capricious acts that are addressed in Count One. The Chancellor did not become a player, until he acted.

### *Judicial policy should not force resort to the federal courts as a first resort*

There is an interest of judicial policy that ought to be considered. The Report's logic might well foster institution of federal litigation before the sate entity has been given a fair chance to address the issue. The federal court then becomes a court of first resort in administrative matters.

Viewing the actions of Boyles and Marsella in the context of their obvious illegality and giving the DOE its opportunity to take corrective action, should be encouraged, not penalized. The UFT contract and the Rules of Chancellor set out procedures that are designed to protect the teachers from arbitrary, aberrant actions of

8

administrators. It was the affirmance of that action by the Chancellor's that fixed the action as state action.

3. **<u>Count Two clearly alleged that the retaliation was motivated Mr. Storman's exercise of his right to petition for the redress of grievances, not simply the exercise of free speech.</u>**

The First Amendment of the United States Constitution provides:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

By its own terms, the Amendment creates several distinct rights: (1) banning the establishment of religion; (2) protecting the free exercise of religion; ( 3) free speech; (4) freedom of the press; (5) free speech; (5) freedom to peaceable assemble and (6) the freedom to petition the Government for the redress of grievances.

The Second Count alleges retaliatory actions by defendants Boyles and Marsella and then states:

> 107. In filing his complaint in federal court and in seeking administrative relief from his first "U" rating, plaintiff was exercising his right of free speech and <u>to petition the government for redress of grievances, each a protected right under the provisions of the First Amendment of the United States Constitution</u>. (Emphasis added)

The Plaintiff's Memorandum made it quite clear that the Mr. Storman believes that he was being retaliated for his filing of an action seeking relief from the unconstitutional actions of the DOE.

The most recent case by the Second Circuit is *Ruotolo v. City of New York*, 514 F.3d 184 (2nd Cir. 2008), an affirmance of a decision by this Court. There is little need for an extensive exposition of the facts of *Ruotola* in these Objections. In *Ruotola*, the claimed "petition for the redress of grievances" was based upon a denial to him of his First Amendment right of free speech. But that action was dismissed because he had no right to free speech in the performance of his duties as a police officer.

The key is that in Ruotola's case, their was no validity to his petition for the redress of grievances because his grievance lacked constitutional standing.

9

That is in sharp contrast to the instant case. The Report has found that the complaint in this action (and perforce the complaint in the first action before this Court) sufficiently pleaded a valid constitutional claim. Unlike *Ruotola*, the petition for the redress of grievances by Mr. Storman passes constitutional muster.

Other Circuits have distinguished between the rights of free speech and to petition for grievances.

In *Cate v. Oldham*, 707 F.2D 1176, 1190 (11th Cir. 1983), the Seventh Circuit Court of Appeals found a strong public interest in protecting the right to petition for grievances pursuant to the First Amendment.

> The strong public interest in protecting First Amendment values combined with the interest in giving the state an opportunity to rule on this issue outweighs any countervailing interest in an uninterrupted malicious prosecution proceeding: hence the public interest favors injunctive relief.
> 1190

In *Milhouse v. Carlson*, 652 F.2D 371, 373 (3rd Cir. 1981), the Third Circuit Court of Appeals said:

> "We read appellant's complaint as alleging that he was subjected to a conspiratorially planned series of disciplinary actions as retaliation for initiating a civil rights suit against prison officials. Such allegations, if proven at trial, would establish an infringement of Milhouse's first amendment right of access to the courts."

In *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), the Sixth Circuit Court of Appeals analyzed the right to petition for grievances in a prison context and found that an retaliation against an individual seeking redress could be the basis of retaliation claim..

Plaintiff submits that the fact that he has alleged a "stigma plus" deprivation of his liberty in his original complaint in federal court, distinguishes his case from *Routolo*.

*Connick v. Myers*, 461 U.S. 138 (1983), imposes the "public concern" requirement on a public employee's protected free speech activities but it is only speech in the course of employment that is not protected.

10

In fact, distinctions between the overall context of the First Amendment claim (whether the plaintiff is a public employee or not) and the nature of the underlying protected activity (whether the activity comprises petitioning or free speech) are significant.

In *Cate v. Oldham*, 707 F.2D 1176, 1190 (11th Cir. 1983), the Seventh Circuit Court of Appeals found a strong public interest in protecting the right to petition for grievances pursuant to the First Amendment.

> The strong public interest in protecting First Amendment values combined with the interest in giving the state an opportunity to rule on this issue outweighs any countervailing interest in an uninterrupted malicious prosecution proceeding: hence the public interest favors injunctive relief.

In *Milhouse v. Carlson*, 652 F.2D 371, 373 (3rd Cir. 1981), the Third Circuit Court of Appeals said:

> "We read appellant's complaint as alleging that he was subjected to a conspiratorially planned series of disciplinary actions as retaliation for initiating a civil rights suit against prison officials. Such allegations, if proven at trial, would establish an infringement of Milhouse's first amendment right of access to the courts."

The allegations of the "stigma plus" are virtually identical in both the original complaint and this one. (See Appendix C). Plaintiff submits that the fact that the Report has found sufficient allegation of a "stigma plus" deprivation of his liberty in the current complaint means per force that that first complaint also so stated a valid constitutional claim and distinguish his case from *Routolo*.

### *There is no statute of limitations bar to the retaliation claim*

It should be noted that even if Count One were to be found to be barred by the statute of limitations, no such bar would apply to the retaliation claims which arise until the second "U" rating was imposed on June 6, 2008 (See Complaint, Ex. K).

Therefore, even if Count One is dismissed, litigation of Count Two should proceed.

11

### D. CONCLUSION

Neither COUNT ONE or COUNT TWO should be dismissed. If further clarification is necessary, leave to file an amended complaint should be granted.

Dated: New York, New York
April 30, 2009

*s/John C. Klotz*
_____
JOHN C. KLOTZ (JK4172)
Attorney for the Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600

12