UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GLENN STORMAN,                                          :

          Plaintiff,                          :

         -against-                               :

JOEL KLEIN, in his capacity as Chancellor of the        :
New York City Department of Education; NEW
YORK CITY DEPARTMENT OF EDUCATION;                      :
JOSEPHINE MARSELLA; and DENNIS BOYLES,

                               :

          Defendants.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

09 Civ. 0338 (SHS) (AJP)

**REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Sidney H. Stein, United States District Judge:**

        Plaintiff Glenn Storman, a guidance counselor employed by the New York City

Department of Education ("DOE"), brings this § 1983 action against the DOE, DOE Chancellor Joel

Klein, Principal Josephine Marsella, and DOE Investigator Dennis Boyles.  (Dkt. No. 1: Compl.)

The complaint alleges that the DOE and Chancellor Klein deprived Storman "of protected liberty

interests and [property] rights without due process of law" (Compl. ¶¶ 8, 99) and that the DOE,

Marsella and Boyles retaliated against Storman for "filing [a] complaint in federal court and in

seeking administrative relief" in violation of Storman's First Amendment rights (Compl. ¶¶ 6, 107-

10).

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                          **A-1**

Presently before the Court is defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) & 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 6: Defs. Notice of Motion), on the grounds that: (1) Storman's "claim that he was deprived of liberty without due process of law is barred by the statute of limitations" (Dkt. No. 7: Defs. Br. at 6-7); (2) Storman does not possess a liberty interest in his "good reputation" (Defs. Br. at 7-8); (3) Storman "was not deprived of a property right" (Defs. Br. at 8-9); (4) Storman was provided with "an adequate post-deprivation remedy that satisfies the requirements of due process" (Defs. Br. at 10-11); and (5) Storman did not engage in any activity protected by the First Amendment (Defs. Br. at 11-12).

For the reasons set forth below, defendants' motion to dismiss (Dkt. No. 6) should be <u>GRANTED</u> in part and <u>DENIED</u> in part.

<u>**FACTS**</u>

The facts alleged in Storman's complaint are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble "Storman alleges."

**<u>Plaintiff Storman</u>**

"For over 28 years [Storman] has been employed by [defendant] New York City [Department] of Education and for the last 19 years he has been employed as a guidance counselor," during which time Storman "has enjoyed an excellent reputation having earned the high regard of parents, students, his teaching colleagues and supervisors." (Dkt. No. 1: Compl. ¶ 19.) Storman is a tenured employee under New York law, the DOE contract with the United Federation of Teachers ("UFT"), and DOE rules and regulations. (Compl. ¶¶ 1, 20.) "Among the rights and privileges afforded [Storman] by the UFT Contract are 'retention rights' which allows [Storman] to obtain and

retain extra-assignments including assignment as a Summer School Teacher and as a Home Instructor pursuant to the [DOE]'s Home Instruction Program."  (Compl. ¶ 21.)

**The October 26, 2004 Incident**

On October 26, 2004, Storman "entered a classroom to obtain information concerning a student's attendance (Student X)" with "a rolled-up piece of paper concerning" Student X's attendance "[i]n his hand."  (Dkt. No. 1: Compl. ¶ 25; <u>see</u> Dkt. No. 14: Storman Opp. Ex. I: 5/23/06 Hearing Tr. at 43-44.)  "As he entered the classroom, [Storman] became aware" that "[a]nother student ('Student A') was kneeling on a chair, cursing out a female substitute teacher and disrupting the class."  (Compl. ¶ 26; <u>see</u> 5/23/06 Hearing Tr. at 42-44; Storman Opp. Ex. H: 3/6/08 Hearing at 24-26.) Storman approached Student A, gestured "with the hand in which he had the piece of paper," and told him to "'[z]ip it.'" (Compl. ¶ 26; 5/23/06 Hearing Tr. at 45-48, 56; 3/6/08 Hearing Tr. at 26-27.)  Student A "sat down and ceased his disruptive behavior."  (Compl. ¶ 27.)  Storman "did not touch Student A" and "[n]o one in the room observed" Storman touch Student A; Storman also maintains that "if the paper in his hand touched Student A, it was entirely accidental and unintentional. . . . [and] was slight and caused absolutely no harm or damage or injury of any kind." (Compl. ¶ 28;  5/23/06 Hearing Tr. at 33.)  Principal Marsella claimed that Storman completed an "occurrence report" in which Storman stated "'I may have touched the child's mouth with the paper and walked away.'"  (3/6/08 Hearing Tr. at 36-37.)

"A few days" after this incident, Principal Marsella contacted Student A's father regarding Student A's truancy; the father claimed that "Student A had been sexually assaulted by [Storman] because he had inserted a piece of paper in Student A's mouth for the purpose of obtaining

**APPENDIX A: Report and Recommendation**                                    **A-3**

sexual pleasure."  (Compl. ¶ 30; see also 5/23/06 Hearing Tr. at 16, 20, 22-23.)  Storman describes

this "charge of inappropriate touching for sexual gratification" as "preposterous."  (Compl. ¶ 31.)

On November 16, 2004, the student's father repeated the charge to Principal Marsella, and

"vigorously lobbied [Storman]'s supervisors to take strong action against [Storman] and implicitly

threatened legal action."  (Compl. ¶¶ 32-33.)

**The OSI Investigation**

Principal Marsella contacted the Chancellor's Office of Special Investigations ("OSI").

which initiated an "investigation into the allegations of corporal punishment against" Storman.[1]

---

[1]     DOE regulations provide that:

**1.     INTRODUCTION**

Corporal punishment is prohibited.  Disruptive behavior by a student must never be
punished by use of physical force.  Such behavior usually reflects underlying
problems that require guidance intervention.  School personnel should take steps to
identify the problem(s) and, working closely with parents, help the student receive
maximum benefit from the educational program offered at the school.  Matters
concerning student behavior should be addressed in accordance with Chancellor's
Regulation A-443 and the Discipline Code.

**2.     DEFINITIONS**

Regulations of the Commissioner §100.2(I)(3)(i) define corporal punishment as any
act of physical force upon a pupil for the purpose of punishing that pupil.  Such term
shall not mean the use of reasonable physical force for any of the following purposes:

1.      to protect oneself from physical injury;

2.      to protect another pupil or teacher or any other person from physical injury
        (e.g. breaking up a physical altercation without using excessive force);

(continued...)

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                    **A-4**

(Compl. ¶ 34 & Ex. E: 2/9/05 OSI Investigation Report.)   OSI Investigator Dennis Boyles interviewed Storman, Principal Marsella and nine students, including Student A; Student A stated that he did not believe Storman's actions "were sexual in nature" and that Storman "did not hurt him," but that "he was embarrassed at the time of the incident" when Storman "approached him and brushed a piece of paper on his lips and told him to be quiet."  (Compl. ¶ 35 & Ex. E: 2/9/05 OSI Investigation Report at 2-3; see also Dkt. No. 14: Storman Opp. Ex. I: 5/23/06 Hearing Tr. at 16-17, 28-29, 31-33; Storman Opp. Ex. H: 3/6/08 Hearing Tr. at 13-15.)   Storman maintains that any "embarrassment . . . was caused by [Storman] telling Student A to stop his disruptive behavior rather than any alleged, accidental physical conduct," and notes that the investigating officer "did not interview the substitute teacher who was in the classroom at the time of the incident and the object of Student A's profane tirade."  (Compl. ¶¶ 37-38; see 3/6/08 Hearing Tr. at 12-13.)   Storman was

---

1/        (...continued)

       3.       to protect the property of the school or of others; or

       4.       to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above.

(Dkt. No. 1: Compl. ¶ 23 & Ex. D: Corporal Punishment Regulation at 1.)   Further, DOE bylaws provide that:

No corporal punishment shall be inflicted in any of the public schools, nor punishment of any kind tending to cause excessive fear or physical or mental distress. Violation of this bylaw shall constitute grounds for dismissal.

(Compl. Ex. D: Corporal Punishment Regulation at 2.)

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**        **A-5**

never "afforded any opportunity during the investigatory process to confront Student A and question

him in regards to his accusations." (Compl. ¶ 43; see 3/6/08 Hearing Tr. at 8-9.)

> The February 9, 2005 Investigation Report claims that Storman stated:
>
> He [Storman] approached Student A and he was holding a rolled up piece of paper
> in his hand. [Storman] might have brushed the piece of paper against Student A's
> lips and told him to be quiet. Mr. Storman denied that his actions were sexual in any
> way. Mr. Storman further stated that in retrospect he should not have touched
> Student A with the piece of paper.

(Compl. ¶ 41 & Ex. E: 2/9/05 OSI Investigation Report at 3; see also 5/23/06 Hearing Tr. at 17, 34;

3/6/08 Hearing Tr. at 15.) Storman denies admitting that "he . . . touched Student A's mouth with

a piece of paper in an effort to quiet him," or that he stated that he "might have brushed the piece of

paper against Student A's lips." (Compl. ¶¶ 39, 42; 5/23/06 Hearing Tr. at 34-35, 48; see also 3/6/08

Hearing Tr. at 20-22.) Arthur Solomon, Storman's UFT representative present during the

investigation interview, stated that the report paraphrasing Storman's comment that he "regrett[ed]

touching Student A . . . was taken out of context," and that Storman stated "that he may have moved

towards [Student A], and if he touched [Student A] with the paper in his hand, it was accidental."

(Compl. ¶ 47; see also 5/23/06 Hearing Tr. at 48-50; 3/6/08 Hearing Tr. at 28.)

> Investigator Boyles determined that "[t]he allegation that Mr. Glen Storman placed

a rolled up piece of paper into the mouth of Student A in a sexual manner is unsubstantiated," but

"that Mr. Storman should not have made physical contact with Student A when he was reprimanding

him." (Compl. ¶¶ 34, 44 & Ex. E: 2/9/05 OSI Investigation Report at 4; see also 5/23/06 Hearing

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                    **A-6**

Tr. at 17, 35-36, 38; 3/6/08 Hearing Tr. at 16.)[2/]  Investigator Boyles recommended that Principal Marsella take "whatever disciplinary action she deems appropriate." (Compl. Ex. E: 2/9/05 OSI Investigation Report at 4; 5/23/06 Hearing Tr. at 39.) Principal Marsella determined that the Investigation Report concluded the "allegations of corporal punishment" were "substantiated." (Compl. ¶ 45 & Ex. E: 2/9/05 OSI Investigation Report at 1; 5/23/06 Hearing Tr. at 12, 15; 3/6/08 Hearing Tr. at 6-7, 9-10.)

        On March 8, 2005, Principal Marsella met with Storman and his union representative, Judy Gerowitz, to discuss the investigation results; Principal Marsella claimed that at the meeting, Storman "stated that [he wasn't] sure whether [he] touched the child's mouth with the paper," but "that if [he] did, it was accidental, not intentional." (Compl. Ex. F: 3/11/05 Marsella Letter at 1; see also 5/23/06 Hearing Tr. at 48.)  Based on the OSI Investigation Report and the March 8, 2005 meeting, Principal Marsella concluded that Storman "engaged in corporal punishment in violation of Chancellor's regulation A-420 and . . . exhibited conduct unbecoming a professional educator when [Storman] brushed a rolled up piece of paper against a student's lips to reprimand him." (Compl. ¶ 48 & Ex. F: 3/11/05 Marsella Letter at 1.)  Principal Marsella advised Storman that "this

---

[2/]      Despite the more nuanced conclusions in the report, Deputy Director Thomas Hyland's cover memorandum to the OSI Investigation Report states:  "The Chancellor's Office of Special Investigations has completed its investigation into the allegations of corporal punishment against Mr. Glen[n] S[t]orman, . . .  Based on information and facts gained during the investigation, it has been determined that this matter is: SUBSTANTIATED."  (Compl. Ex. E: 2/9/05 Hyland Memo.)  A box next to the word "substantiated" is checked, while a box next to the word "unsubstantiated" is  unchecked.  (Id.)

**APPENDIX A: Report and Recommendation**        **A-7**

conduct may lead to further disciplinary action including an unsatisfactory rating and charges that could lead to the termination of [his] employment."  (Compl. Ex. F: 3/11/05 Marsella Letter at 2.)

**Storman's Unsatisfactory Rating and Appeal**

In June 2005, Storman received an "[u]nsatisfactory" rating on an "Annual Professional Performance Review" due to "[s]ubstantiated [c]orporal [p]unishment at P.S. 212." (Dkt. No. 1: Compl. ¶ 49 & Ex. G: Storman 2004-05 Annual Professional Performance Review.) "In violation of DOE policy, the Review was not provided [to Storman] in a timely manner," i.e., he was not given it until September 7, 2005.  (Compl. ¶ 50 & Ex. G; see also Dkt. No. 14: Storman Opp. Ex. I: 5/23/06 Hearing Tr. at 5-8.)

On May 23, 2006, Storman appealed the unsatisfactory rating at a hearing before the DOE's Office of Review and Appeals.  (Compl. ¶ 51; see 5/23/06 Hearing Tr.)[3/]

---

[3/]    "Teachers who receive doubtful or unsatisfactory ratings may appeal under Section 4.3.1 of the by-laws of the Board of Education."  2003-2007 NYC BOE-UFT CONTRACT ART. 21 D. 3, http://www.uft.org/member/contracts/teachers_contract/article21/index.html.

Section 4.3.1 of the by-laws provides:

4.3.1 Appeals re Ratings

Any person in the employ of the City School District who appears before the Chancellor, or a committee designated by the Chancellor, the size and composition of which the Chancellor is to determine, in respect to an appeal from a rating of an other than a satisfactory rating or an NR rating shall be afforded the opportunity for review in the manner set forth herein and in procedures established by the Chancellor.

A committee designated by the Chancellor shall summon the appellant as soon as practicable, but in any event not later than one year from the date of the receipt of the (continued...)

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                    **A-8**

<sup>3/</sup>  (...continued)
    rating by the appellant

    The findings and recommendations of the committee shall be submitted to the <u>Chancellor</u> for a final decision.

  . . . .

  4.3.3 Committee Reviews

    Any person who appears before a committee for the purpose of appealing a rating . . . shall receive written notice of the time and place of the review, addressed either to the place of employment or to the last known post office address, at least one week before the date specified for said review. The notice shall inform the person that he or she is entitled to appear in person, to be accompanied and advised by an employee of the City School District or a representative of the union recognized by the Panel for Educational Policy as the collective bargaining representative for the employee, to be confronted by witnesses, if any, to call witnesses, to examine exhibits and to introduce any relevant evidence.

    If a witness who was summoned or requested to appear is unavailable or unwilling to appear despite the best efforts of the committee, this shall not prevent a review from continuing but shall be one of the factors considered by the committee.

    The advisor need not be an attorney. The attendance of such advisor and witnesses, if employees of the City School District, shall not be deemed absence from official duty, but such persons shall not absent themselves from school duty except pursuant to such rules as the chancellor shall prescribe.

    No employee of the City School District shall serve as an advisor or panel member in more than two (2) matters in a school year nor request or accept directly or indirectly any remuneration or other consideration for service as adviser or witness.

    A sound recording shall be kept of the proceedings and the person who is appearing before the committee for the purpose of appealing a rating . . . shall be entitled to receive a duplicate of the sound recording of the review, at cost, upon written request. In the event that the sound recording equipment is not available or breaks down during the review, minutes shall be taken of the proceedings and such minutes shall

               (continued...)

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**      **A-9**

At the hearing, Investigator Boyles testified that Storman engaged in "inappropriate touching," based on Storman's written statement and Investigator Boyles' "conversation" with Storman where Storman "said he might have touched the kid when he was motioning for him to be quiet because he had a piece of paper in his hand." (5/23/06 Hearing Tr. at 17, 34.)  At the hearing, Storman claimed that he "had no knowledge as to whether or not that paper touched or didn't touch the kid," but that "if it did happen" it was "accidental." (5/23/06 Hearing Tr. at 48.)  Investigator Boyles testified that he did not "feel that [Storman's actions] rose to the level o[f] corporal punishment," but "felt that it rose to the level of inappropriate physical contact." (5/23/06 Hearing Tr. at 39; Compl. ¶¶ 51, 70.)

Principal Marsella testified that she gave Storman an unsatisfactory rating because the OSI investigator's conclusions "substantiated . . . corporal punishment," because Storman completed a "statement form" where he wrote that he "'may have touched the child's mouth with the paper and walked away,'" and because Storman stated during a meeting with Principal Marsella and a union representative that "he did touch the student with the piece of paper." (5/23/06 Hearing Tr. at 12-15.)  Principal Marsella admitted, however, that Storman's actions "may not rise to the level of corporal punishment," but that Storman nonetheless deserved an unsatisfactory rating because he

---

3/        (...continued)
be available to the person summoned at cost and upon reasonable written notice.

Nothing herein shall preclude witnesses from appearing at review proceedings by teleconference or other means.

(Dkt. No. 8: Chiu Aff.  Ex. G: DOE By-laws of the Panel for Educ. Policy.)

**APPENDIX A: Report and Recommendation**                                    **A-10**

brushed a piece of paper against the child's lips and embarrassed the child. (5/23/06 Hearing Tr. at 40-41; Compl. ¶¶ 51, 70.)

Storman's union representative "argued that the 'U' rating based on the investigatory report was improper because at no time was Mr. Storman afforded the opportunity of confronting his accuser." (Compl. ¶ 52; see 5/23/06 Hearing Tr. at 51-53.)

On July 27, 2006, Chancellor's Committee Chairperson Ira Goldberg recommended "[t]hat the appeal be denied and the rating of 'Unsatisfactory' be sustained." (Chiu Aff. Ex. D: Chancellor's Committee Report at 1.) Goldberg verified that Principal Marsella based Storman's unsatisfactory rating on a "substantiated incident of corporal punishment," although "[t]he report from O.S.I. . . . substantiated an inappropriate incident" by Storman. (Id. at 1, 3, emphasis added.) Chairperson Goldberg concluded that "[t]his documentation presented, both oral and written, is convincing and warrants a rating of 'Unsatisfactory.'" (Id. at 3.)

On August 14, 2006, Chancellor Klein, through his designee Deputy Chancellor Andrés Alonso, denied Storman's appeal "from the rating of 'Unsatisfactory' for the period ending June 2005 . . . as a consequence of a substantiated incident of corporal punishment." (Compl. ¶ 53 & Ex. H: 8/14/06 Alonso Letter.)

**New York State Court Proceedings**

Storman commenced an Article 78 proceeding in Supreme Court, New York County, challenging the DOE's decision to "rat[e] his performance 'unsatisfactory.'" (Dkt. No. 1: Compl. Ex. A: 10/26/07 N.Y. Supreme Ct. Order at 1.) On October 26, 2007, Justice Marcy Friedman ruled that "the court [was] unable to determine whether the Chancellor's determination was arbitrary and

capricious or had a rational basis" because "the August 14, 2006 determination . . . . does not set forth any facts in support of this conclusion" of an incident of corporal punishment and "appear[ed] to be inconsistent with the July 27, 2006 committee report to the Chancellor . . . . [which] noted that [Storman]'s principal had rated [Storman] unsatisfactory based on a substantiated incident of corporal punishment" even though "the finding made by the committee was not of a substantiated incident of corporal punishment but of <u>an 'inappropriate incident.</u>'" (Compl. Ex. A: 10/26/07 N.Y. Supreme Ct. Order at 3, emphasis added.)[4/] Justice Friedman noted that the "DOE's own investigator testified that he did not believe that the incident 'rose to the level of corporal punishment,' but constituted 'inappropriate physical contact.'" (<u>Id</u>.) Justice Friedman, therefore, remanded Storman's petition to the DOE for "necessary . . . findings of fact" and to "address whether the [unsatisfactory] rating was proportionate to the offense . . . [g]iven the committee's failure to find that the incident rose to the level of corporal punishment." (Compl. ¶ 55 & Ex. A: 10/26/07 N.Y. Supreme Ct. Order at 4.)

On April 10, 2008, the First Department dismissed the DOE's appeal of Justice Friedman's remand order "without prejudice to further administrative proceedings and [Storman] seeking appellate review of [DOE]'s final order." (Dkt. No. 14: Storman Opp. Ex. E: 4/10/08 1st Dep't Order.)

---

[4/]      Justice Friedman's October 26, 2007 Order was filed November 13, 2007. (<u>See</u> Compl. Ex. A: 10/26/07 N.Y. Supreme Ct. Order at 4.)

13

**Storman's First Federal Lawsuit**

        On June 19, 2007, Storman brought a § 1983 action in the Southern District of New York against the DOE "to redress the denial to [Storman] by [the DOE] of protected liberty interests and rights without due process of law" from the DOE's finding that Storman had engaged in "an incidence of corporal punishment." (Dkt. No. 8: Chiu Aff. ¶ 5 & Ex. C: 07 Civ. 5797, Compl. ¶¶ 1, 45.) On January 17, 2008, Storman agreed to withdraw his complaint without prejudice because of the "possibility that the unsatisfactory rating that was previously rendered against Mr. Storm[a]n will be vacated" following Justice Friedman's remand. (Dkt. No. 1: Compl. Ex. B: 1/17/08 Conf. Tr. at 2-3.)

**DOE's Post-Article 78 Remand Hearing**

        On March 6, 2008, DOE's Office of Review and Appeals held a second hearing with respect to Storman's unsatisfactory rating. (See Dkt. No. 14: Storman Opp. Ex. H: 3/6/08 Hearing Tr.)

        At the hearing, Principal Marsella testified that she gave Storman a "U rating" because she had received paperwork from OSI concluding that an incident of "corporal punishment" had been substantiated. (3/6/08 Hearing Tr. at 6-7, 9-10.) OSI Investigator Boyle, however, previously had concluded that Storman might have made physical contact with the student when he was reprimanding him, but felt that Storman's actions did not constitute corporal punishment. (Storman Opp. Ex. I: 5/23/06 Hearing Tr. at 16-17, 34.) At the March 6, 2008 hearing, Investigator Boyle explained that Deputy Director Thomas Hyland's "boilerplate letter" accompanying the report

**APPENDIX A: Report and Recommendation**         **A-13**

made it appear that corporal punishment had been substantiated, and that Hyland's letter would "[n]ormally" refer to "corporal punishment/inappropriate conduct."  (3/6/08 Hearing Tr. at 16-18.)

UFT Representative Solomon, who had accompanied Storman during his interview with Investigator Boyles, testified that Storman had told Investigator Boyles that "[a]t no time did he ever come in contact with the child in question."  (3/6/08 Hearing Tr. at 20-22.)

On March 6, 2008, Chancellor's Committee Chairperson Michael Tramonte recommended that "the appeal be denied and the rating of 'Unsatisfactory' be sustained."  (Dkt. No. 8: Chiu Aff. Ex. E: 3/6/08 Appeal Review at 1.)  Chairperson Tramonte concluded that  "[t]he Principals who supervised [Storman] based their [unsatisfactory] rating . . . on the results of an investigated charge of corporal punishment" even though Investigator Boyles testified that Storman "made inappropriate contact with the student," which did not constitute corporal punishment. (3/6/08 Appeal Review at 2.)  Nevertheless, "both Principals received and read [OSI's] report before making the decision to rate [Storman] 'Unsatisfactory,'" and justified the rating on Storman's failure "to notify any member of the Administration about the problem in the Substitute's classroom" and because Storman works as a "school Guidance Counselor, entrusted with the psychological well being of his students, [and] should have employed more positive and constructive strategies to address the situation."  (3/6/08 Appeal Review at 2-3.)

On June 10, 2008, Chancellor Klein, through his designee Deputy Chancellor Marcia V. Lyles, denied Storman's appeal for a second time, repeating that Storman's "[u]nsatisfactory" rating was "sustained as a consequence of [a] substantiated allegation of corporal punishment." (Dkt. No. 1: Compl. ¶ 56 & Ex. C: 6/10/08 Lyles Letter.)

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                         **A-14**

## Storman's Second Unsatisfactory Rating

"On November 19, 2007, Ms. Josephine Comeau, a paraprofessional teacher's assistant brought Student Y to [Storman]'s office because the student could not stop crying." (Dkt. No. 1: Compl. ¶ 73.) Storman tried to calm Student Y, who "stated that she was crying because of an incident involving Student X" which had occurred nearly a year before. (Compl. ¶¶ 73-74.) Storman called Student Y's grandmother "as a matter of information" and told the grandmother that no one needed to come to the school because Storman "was resolving the matter." (Compl. ¶ 74.) Nonetheless, Student Y's aunt and uncle arrived at school to speak with Storman, who told them that Student Y "needed help in coping with her fears," and that "he had grown-up in 'the projects' and had to learn to pick his battles." (Compl. ¶¶ 75-76.) The aunt and uncle "took umbrage" at Storman's comments, thinking he had demeaned them, although Storman "believes their umbrage was feigned" because Storman did not know where Student Y or her family resided. (Compl. ¶¶ 77-78.)

The aunt and uncle "conferred with [Principal Marsella] who then suggested that they file a complaint against [Storman] and instructed them how to do it." (Compl. ¶ 79.) Principal Marsella contacted OSI Investigator Boyles on November 19, 2007 and "reported an allegation of verbal abuse against" Storman because "a 9 year old female 3rd grader[] alleged that . . . Storman yelled at her after he discovered her crying over an incident that occurred during the 2006-2007 school year," and the student's aunt claimed that Storman "made an inappropriate remark . . . stereotyping [the aunt and uncle] as 'project people.'" (Compl. Ex. I: 3/287/08 OSI Investigation Report at 2, 3.)

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                    **A-15**

On January 23, 2008, when Investigator Boyles was "well aware that the early charge against [Storman] had been remanded for further findings by Justice[] Friedman's November 2007[] order," Investigator Boyles conducted interviews at the school. (Compl. ¶ 80; see 3/27/08 OSI Investigation Report at 2.) On March 27, 2008, Investigator Boyles completed his investigation and issued a report which substantiated "allegations of corporal punishment/employee misconduct against" Storman. (Compl. Ex. I: 3/27/08 OSI Director McLaren Memorandum at 1; see also 3/27/08 Investigation Report at 5.)

Storman claims that Investigator Boyles "willfully and intentionally" reported the following false information: "1. A search of the OSI database disclosed that Mr. Storman has had three prior CPU cases: Case # 04-7998 was substantiated for sexual misconduct; Case # 01-3103 was unsubstantiated; Case # 07-5422 was substantiated for making inappropriate physical contact with a student." (Compl. ¶ 81 & Ex. I: 3/27/08 OSI Investigation Report at 2.) Storman maintains that Investigator Boyles knew that case "#04-7998 for sexual misconduct" had never been substantiated, and that case #07-5422 is "false." (Compl. ¶¶ 82-83.) Storman disputes Principal Marsella's report statement that "Storman approached Student Y . . . and inquired as to why she was crying," because Storman "did not approach Student Y, but rather Student Y had been brought to [Storman] by Ms. Comeau when Student Y couldn't stop crying and Ms. Comeau requested [Storman]'s assistance." (Compl. ¶¶ 84-85 & Ex. I: 3/27/08 OSI Investigation Report at 2.) In addition, Storman protests that he was not permitted to attend Investigator Boyles' interviews with Student Y and her family, notes that Ms. Comeau "did not witness any yelling by [Storman] at the

**APPENDIX A: Report and Recommendation**                      **A-16**

child,"[5/] and claims that he did not yell at Student Y, that "available testimony and records . . . substantiate that the child had frequent episodes of uncontrolled crying about perceived offenses by others," and that neither Principal Marsella nor Investigator Boyles "consulted school professionals" who had "dealt with the child" and did not consult "existing records of [Student Y's] emotional disturbance." (Compl. ¶¶ 86-90.)

Investigator Boyles' March 27, 2008 investigation report summarized his interviews with Principal Marsella, Student Y, Student Y's aunt and uncle, Storman, and Comeau, and concluded that Storman "violated Chancellor's Regulation A421 by speaking inappropriately to Student" Y and that Storman "was unprofessional when speaking to Aunt [Y] and Uncle [Y]." (3/27/08 OSI Investigation Report at 4.)

On April 17, 2008, Principal Marsella met with Storman and UFT Chapter Chairperson Judy Gerowitz "to discuss a verbal abuse allegation against" Storman. (Compl. Ex. J: 5/7/08 Disciplinary Letter.) On May 7, 2008, Principal Marsella issued a letter to Storman concluding that "on November 19, 200[7 Storman] did yell at" Student Y, based upon the student's statement which she "found credible [having] participated [in] the OSI investigation. . . . [,] on the manner in which [Storman] presented this incident . . . on the day it occurred," and on the April 17, 2008 meeting. (Compl. ¶ 92 & Ex. J: 5/7/08 Disciplinary Letter.) Storman maintains that the May 7, 2008 letter "falsely charged him with unprofessional conduct." (Compl. ¶ 92.) In June 2008, Storman received an unsatisfactory rating on his "Annual Professional Performance Review" based

---

[5/] The March 27, 2008 OSI investigation report states: "Ms. Comeau was not present when Mr. Storman allegedly yelled at Student A." (3/27/08 OSI Investigation Report at 4.)

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                            **A-17**

on the November 19, 2007 incident and subsequent investigation. (Compl. ¶ 94 & Ex. K: 2007-08 Annual Professional Performance Review.)

Investigator Boyles and Principal Marsella "each had motivation to destroy [Storman]'s credibility and counseling career to protect themselves from the ramifications of their unprofessional and incompetent conduct in the matter of the first [June 2005] charge against" Storman. (Comp. ¶ 91.) Principal Marsella wrote the May 7, 2008 letter to retaliate "against [Storman] for . . . filing an administrative appeal and a [federal] civil rights action." (Compl. ¶ 93.) Storman notes that despite the two investigations into Storman's conduct, Principal Marsella "continue[s] to employ" Storman as a "guidance counselor and placed him in charge of seriously disturbed children including one student charged with misconduct in a sexually charged matter." (Compl. ¶ 95.)

**Storman's Second Article 78 Proceeding**

On October 8, 2008, Storman commenced a second Article 78 proceeding in Supreme Court, New York County, challenging DOE's "arbitrary and capricious" decision to deny Storman's "appeal from any unsatisfactory 'U' rating on [his] 'Performance Review' dated June 30, 2005" which "sustain[ed] said rating as a 'consequence of a substantiated incidence of corporal punishment.'" (Dkt. No. 8: Chiu Aff. Ex. B: 10/8/08 Article 78 Pet. ¶¶ 1, 3.) Storman argued that the DOE "fail[ed] to comply with the requirements of [Justice Friedman's October 27, 2006] remand [order] and . . . . fail[ed] to consider the appropriateness of the punishment (the 'U' rating) as specifically directed by the Court." (10/8/08 Article 78 Pet. ¶ 8.) Storman claims that the DOE's actions constitute a denial

of "important liberty [interests] protected by the Fifth and Fourteenth Amendments of the United States Constitution." (10/8/08 Article 78 Pet. ¶ 56.)

Storman's second Article 78 action currently is pending before Justice Shirley W. Kornreich.[6/] (Dkt. No. 7: Defs. Br. at 4.)

**The Allegations in The Complaint**

**Due Process Violations**

Storman alleges that defendants DOE and Chancellor Klein deprived him "of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983." (Dkt. No. 1: Compl. ¶ 99.) Specifically, Storman claims that the DOE's finding that he engaged in "an incidence of corporal punishment is gravely damaging . . . both financially and professionally," and that until this finding, Storman "had enjoyed an unblemished reputation as an able capable professional." (Compl. ¶¶ 22, 57-58, 64.) The finding stigmatizes Storman and "will be a hindrance to [Storman] both as an employee of the DOE and in seeking employment in any other place," because the "unsatisfactory rating and the reasons for it will be available for inspection by any future employer and within the school system should [Storman] be considered for reassignment." (Compl. ¶¶ 58, 64-65.) In addition, Storman "has lost his vested retention right to earn income from the DOE both as a Summer School teacher and Per Session Home Instructor," and has "performed no Home Schooling instruction and [has been] denied appointment as a summer school teacher in 2007

---

[6/]   Storman's second "petition was answered by the defendant DOE and . . . orally argued before Hon. . . . Shirley W. Kornreich on Thursday, March 12, 2009" and "is now <u>sub judice</u>." (Dkt. No. 13: Storman Opp. Br. at 3.)

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**            **A-19**

because of his loss of retention rights." (Compl. ¶¶ 21-22, 59-60, 62.)[7]  As a result, Storman "has lost financial benefits in the sum of $100,000 and will lose financial benefits in excess of $1,000,000 in future years, including a reduction of reasonable anticipated pension benefits." (Compl. ¶¶ 61, 100.)

_____Storman claims that the DOE violated his due process rights through an "arbitrary and capricious" finding that Storman committed a "substantiated incident of corporal punishment," that was "not supported by either a preponderance of the evidence or substantial evidence," and that was "devoid of any supporting evidence." (Compl. ¶¶ 54, 67-68.)  The DOE "denied [Storman] the right to confront Student A and [to] cross-examine him about his claims," and did not provide Storman with his 2004-05 Annual Review "in a timely manner." (Compl. ¶¶ 50, 52, 54, 69; see Dkt. No. 14: Storman Opp. Ex. H: 3/6/08 Hearing Tr. at 8-9; Storman Opp. Ex. I: 5/23/06 Hearing Tr. at 4-8.)

---

[7]     The UFT-DOE contract provides the following regarding retention of "per session" employment:

**2. Retention**
Prior service shall govern in the retention of per session teachers employed on a regular basis in per session activities as follows:

a. Teachers with at least two years of continuous satisfactory service in a particular activity shall have priority for retention in the same activity for the following school year.

(Dkt. No. 13: Storman Opp. Br. App. at 2: 2003-2007 DOE-UFT Contract Art. 15 A.2.)

**APPENDIX A: Report and Recommendation**                                    **A-20**

**Retaliation**

Storman's complaint alleges that in November 2007, defendants Principal Marsella and Investigator Boyles retaliated against Storman "for his filing of a civil right complaint and successful appeal of their initial determination by concocting a second spurious charge against" Storman in order to "chill [Storman]'s exercise of his First Amendment rights and render his [appeal and litigation] futile." (Dkt. No. 1: Compl. ¶¶ 72, 93, 108-09.) Defendants violated Storman's First Amendment "right of free speech and to petition the government for redress of grievances," and have demonstrated to other educators "what will happen to them if they exercise their First Amendment rights." (Compl. ¶¶ 107-08, 110.) As a result, Storman has "lost income and reasonably anticipated retirement benefits in the [sum] of $1,000,000," has suffered "severe emotional distress and anxiety," and suffered damage to his "marital relationship." (Compl. ¶¶ 97, 111-14.)

**Defendants' Motion to Dismiss**

Defendants have moved to dismiss Storman's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 6: Defs. Notice of Motion), on the grounds that: (1) Storman's "claim that he was deprived of liberty without due process of law is barred by the statute of limitations" (Dkt. No. 7: Defs. Br. at 6-7); (2) Storman does not possess a liberty interest in his "good reputation" (Defs. Br. at 7-8); (3) Storman "was not deprived of a property right" (Defs. Br. at 8-9); (4) Storman was provided with "an adequate post-deprivation remedy that satisfies the requirements of due process" (Defs. Br. at 10-11); and (5) Storman did not engage in any activity protected by the First Amendment (Defs. Br. at 11-12).

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                    **A-21**

## ANALYSIS

### I. THE STANDARDS GOVERNING A MOTION TO DISMISS

#### A. The Twombly-Iqbal "Plausibility" Standard

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007) (retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").[8] A court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party – here, the plaintiff. Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).[9] At the same time, "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" Achtman v. Kirby, McInerney

---

[8] Accord, e.g., Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), cert. granted, 128 S. Ct. 2931 (2008); Lindner v. Int'l Bus. Machs. Corp., 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); Joseph v. Terrence Cardinal Cooke Health Care Ctr., 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); Elektra Entm't Group, Inc. v. Barker, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); Diana Allen Life Ins. Trust v. BP P.L.C., 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

[9] Accord, e.g., Curran v. Teachers Ret. Sys. of City of N.Y., 241 Fed. Appx. 781, 782 (2d Cir. 2007); Iqbal v. Hasty, 490 F.3d at 152; Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004); Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001); In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir.), cert. denied, 534 U.S. 1071, 122 S. Ct. 678 (2001).

H:\OPIN\STORMAN

& Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).[10] A court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d at 157-58 (interpreting Twombly).[11] This does "not require heightened fact pleading of specifics," Bell Atl. Corp. v. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974,[12] but does require "factual allegations sufficient 'to raise a right to relief above the speculative level.'" Boykin v. KeyCorp, 521 F.3d at 213 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1965).[13]

---

[10]   Accord, e.g., Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co., 07 Civ. 11211, 2008 WL 2464187 at *2 (S.D.N.Y. June 18, 2008); Howard v. Mun. Credit Union, 05 Civ. 7488, 2008 WL 782760 at *6 (S.D.N.Y. Mar. 25, 2008); Wightman-Cervantes v. Am. Civil Liberties Union, 06 Civ. 4708, 2007 WL 1805483 at *1 (S.D.N.Y. June 25, 2007); Am. Nat'l Theatre & Acad. v. Am. Nat'l Theatre Inc., 05 Civ. 4535, 2006 WL 4882916 at *4 (S.D.N.Y. Sept. 27, 2006).

[11]   See also, e.g., Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) ("We agree with the Iqbal panel's conclusion that Twombly focused on the plausibility of the complainant's claim for relief, although Iqbal does not offer much guidance to plaintiffs regarding when factual 'amplification [is] needed to render [a] claim plausible.'"); Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."); In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'"); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 n.2 (declining "to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.").

[12]   Accord, e.g., Boykin v. KeyCorp, 521 F.3d at 213; In re Elevator Antitrust Litig., 502 F.3d at 50.

[13]   See also, e.g., Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir.), cert. denied, 128 S. Ct. 2964 (2008); Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 131 (2d Cir. 2007); ATSI Commc'ns, Inc. v. Shaar Fund,
(continued...)

H:\OPIN\STORMAN

The "standards for dismissal under [Rule] 12(b)(6) and 12(b)(1) are substantively identical." <u>Lerner</u> v. <u>Fleet Bank, N.A.</u>, 318 F.3d 113, 128 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1012, 124 S. Ct. 532 (2003); <u>see also</u>, <u>e.g.</u>, <u>Moore</u> v. <u>PaineWebber, Inc.</u>, 189 F.3d 165, 169 n.3 (2d Cir. 1999); <u>Bishop</u> v. <u>Porter</u>, 02 Civ. 9542, 2003 WL 21032011 at *3 (S.D.N.Y. May 8, 2003); <u>Tennant</u> v. <u>U.S. Bureau of Prisons</u>, 02 CV 00558, 2003 WL 1740605 at *1 (D. Conn. Mar. 29, 2003).[14/]

### B.    Consideration Of Documents Attached To Or Referred To In The Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." <u>Vassilatos</u> v. <u>Ceram Tech Int'l, Ltd.</u>, 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y.

---

[13/]    (...continued)
<u>Ltd.</u>, 493 F.3d at 98.

[14/]    The only substantive difference is "that the party invoking the jurisdiction of the court has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the defendant has the burden of proof."  <u>Lerner</u> v. <u>Fleet Bank, N.A.</u>, 318 F.3d at 128 (citing <u>Thompson</u> v. <u>County of Franklin</u>, 15 F.3d 245, 249 (2d Cir. 1994)); <u>see also</u>, <u>e.g.</u>, <u>Langella</u> v. <u>Bush</u>, 306 F. Supp. 2d 459, 463 (S.D.N.Y. 2004) ("On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff carries the burden of establishing that subject matter jurisdiction exists over his complaint."); <u>Bishop</u> v. <u>Porter</u>, 2003 WL 21032011 at *3.

The other difference is that on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "may refer to evidence outside the pleadings." <u>Makarova</u> v. <u>United States</u>, 201 F.3d 110, 113 (2d Cir. 2000) (citing <u>Kamen</u> v. <u>Am. Tel. & Tel. Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986)); <u>see also</u>, <u>e.g.</u>, <u>Land</u> v. <u>Dollar</u>, 330 U.S. 731, 735 n.4, 67 S. Ct. 1009, 1011 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, . . . the court may inquire by affidavits or otherwise, into the facts as they exist."); <u>Exchange Nat'l Bank</u> v. <u>Touche Ross & Co.</u>, 544 F.2d 1126, 1130-31 (2d Cir. 1976); <u>Masters</u> v. <u>Wilhelmina Model Agency, Inc.</u>, 02 Civ. 4911, 2003 WL 145556 at *1 (S.D.N.Y. Jan. 17, 2003).

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                              **A-24**

25

May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[15/]  The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  <u>E.g.</u>, <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d at 98; <u>Chambers</u> v. <u>Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); <u>Yak</u> v. <u>Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir. 2001) (citing <u>Cortec Indus., Inc.</u> v. <u>Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960, 112 S. Ct. 1561 (1992)); <u>Rothman</u> v. <u>Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . ."); <u>see also</u>, <u>e.g.</u>, <u>Paulemon</u> v. <u>Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994); <u>Brass</u> v. <u>Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993).

---

[15/]    <u>Accord</u>, <u>e.g.</u>, <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y. City Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 83 (2d Cir. 2000); <u>Fonte</u> v.  <u>Bd. of Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988).

H:\OPIN\STORMAN

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d at 134 (citations omitted).

In this case, documents that plaintiff Storman referred to in his complaint, and which were submitted by defendants in support of their motion to dismiss and by plaintiff in opposition to defendants' motion to dismiss (see Dkt. No. 8: Chiu Aff. Exs. A-G: Dkt. No. 13: Storman Opp. App.; Dkt. No. 14: Storman Opp. Exs E, H, I), may be considered on the motion to dismiss, subject to the Faulkner v. Beer proviso.

* * * *

The Court's role in deciding a motion to dismiss "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)); accord, e.g., Watson v. McGinnis, 964 F. Supp. 127, 130-31 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.). "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Saunders v. Coughlin, 1994 WL 88108 at *2 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).

**APPENDIX A: Report and Recommendation**                                 **A-26**

## II.    DEFENDANTS' MOTION TO DISMISS STORMAN'S PROCEDURAL DUE PROCESS CLAIMS SHOULD BE DENIED

Storman argues that defendants DOE and Klein violated his procedural due process rights when they found that he engaged in "an incidence of corporal punishment" and gave him an "[u]nsatisfactory" rating on his June 2005 "Annual Professional Performance Review." (<u>See</u> pages 8, 19-20 above.)  Storman claims that these actions precipitated a loss of "retention rights" and "vested income" as a per session summer school teacher and home instructor.  (<u>See</u> pages 19-20 above.)  Storman also claims that the unsatisfactory rating "will be a hindrance to [Storman] as an employee of the DOE and in seeking employment in any other place," because the "unsatisfactory rating and the reasons for it will be available for inspection by any future employer and within the school system should [Storman] be considered for reassignment." (<u>See</u> page 19 above.)

In order to formulate a claim under the Fourteenth Amendment's Due Process Clause, Storman must demonstrate that he possesses a constitutionally protected liberty or property interest, and that state action has deprived him of that interest.  <u>See</u> U.S. Const. amend. XIV, § 1; <u>see also</u>, <u>e.g.</u>, <u>Bd. of Regents</u> v. <u>Roth</u>, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").[16]  Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been

---

[16]    <u>Accord</u>, <u>e.g.</u>, <u>Arteta</u> v. <u>County of Orange</u>, 141 Fed. Appx. 3, 6 (2d Cir. 2005); <u>Rojas-Reyes</u> v. <u>I.N.S.</u>, 235 F.3d 115, 124 (2d Cir. 2000); <u>Coggins</u> v. <u>County of Nassau</u>, No. 07-CV-3624, 2009 WL 29310 at *13 (E.D.N.Y. Jan. 5, 2009); <u>Okolie</u> v. <u>Paikoff</u>, 589 F. Supp. 2d 204, 213 (E.D.N.Y. 2008); <u>Anemone</u> v. <u>Metro. Transp. Auth.</u>, 410 F. Supp. 2d 255, 268 (S.D.N.Y. 2006); <u>Cassidy</u> v. <u>Scoppetta</u>, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005).

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                    **A-27**

interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." <u>Ky. Dep't of Corr.</u> v. <u>Thompson</u>, 490 U.S. 454, 460**, 109 S. Ct. 1904, 1908 (1989) (citation omitted).[17/]

        As a threshold matter, this Court must determine whether Storman has a protected property or liberty interest in "per session" after school and summer instruction.

### A.     <u>Property Interest</u>

        "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Bd. of Regents</u> v. <u>Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972).[18/] "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have

---

[17/]     Accord, e.g., <u>Ciambriello</u> v. <u>County of Nassau</u>, 292 F.3d 307, 313 (2d Cir. 2002); <u>Valmonte</u> v. <u>Bane</u>, 18 F.3d 992, 998 (2d Cir. 1994); <u>Hernandez</u> v. <u>Coughlin</u>, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S. Ct. 117 (1994); <u>Finch</u> v. <u>N.Y. State Office of Children & Family Servs.</u>, 04 Civ. 1668, 2008 WL 5330616 at *2 (S.D.N.Y. Dec. 18, 2008); <u>Mental Hygiene Legal Serv.</u> v. <u>Spitzer</u>, 07 Civ. 2935, 2007 WL 4115936 at *4 (S.D.N.Y. Nov. 16, 2007), aff'd, No. 07-5548, 2009 WL 579445 (Mar. 4, 2009); <u>Jackson</u> v. <u>Roslyn Bd. of Educ.</u>, 438 F. Supp. 2d 49, 53 (E.D.N.Y. 2006); <u>Andree</u> v. <u>County of Nassau</u>, 311 F. Supp. 2d 325, 335 (E.D.N.Y. 2004).

[18/]     Accord, e.g., <u>Rolon</u> v. <u>Henneman</u>, 517 F.3d 140, 148 (2d Cir. 2008); <u>DSI Assocs. LLC</u> v. <u>United States</u>, 496 F.3d 175, 186 n.16 (2d Cir. 2007); <u>Velez</u> v. <u>Levy</u>, 401 F.3d 75, 85 (2d Cir. 2005); <u>Ricioppo</u> v. <u>County of Suffolk</u>, No. 04-3630, 2009 WL 577727 at *15 (E.D.N.Y. Mar. 4, 2009); <u>Cooper</u> v. <u>Metro. Transp. Auth.</u>, 04 Civ. 525, 2006 WL 1975936 at *5 (S.D.N.Y. July 14, 2006); <u>Ford Motor Credit Co.</u> v. <u>N.Y. City Police Dep't</u>, 394 F. Supp. 2d 600, 609 (S.D.N.Y. 2005), aff'd, 503 F.3d 186 (2d Cir. 2007).

H:\OPIN\STORMAN

a legitimate claim of entitlement to it."  Bd. of Regents v. Roth, 408 U.S. at 577, 92 S. Ct. at 2709; see also, e.g., Perry v. Sindermann, 408 U.S. 593, 601, 92 S. Ct. 2694, 2699 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.").[19]  "While state law creates the underlying substantive interest the plaintiff seeks to vindicate, 'federal constitutional law determines whether that interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.'"  DSI Assocs. LLC v. United States, 496 F.3d at 186 n.16 (quoting Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9, 8 S. Ct. 1554, 1560 (1978)).[20]

"When an individual claims to have a property interest related to employment, courts may look to the relevant contract of employment-either explicit or implicit-or its functional equivalent to determine whether the individual has such a property interest."  Arteta v. County of

---

[19]  Accord, e.g., Velez v. Levy, 401 F.3d at 85 ("[O]nly where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise."); Goetz v. Windsor Cent. Sch. Dist., 698 F.2d 606, 608 (2d Cir. 1983) ("In deciding whether a person possesses a property interest a court must carefully sift through abstract needs and unilateral expectations until it locates a legitimate claim of entitlement."); Elliot v. City of N.Y., 06 Civ. 296, 2008 WL 4178187 at *6 (S.D.N.Y. Sept. 8, 2008); Assoko v. City of N.Y., 539 F. Supp. 2d 728, 737 (S.D.N.Y. 2008); Howard v. Town of Bethel, 481 F. Supp. 2d 295, 305 (S.D.N.Y. 2007).

[20]  Accord, e.g., Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 757-58, 125 S. Ct. 2796, 2803-04 (2005); Smith v. Guilford Bd. of Educ., 226 Fed. Appx. 58, 62 (2d Cir. 2007); Rosendale v. Mahoney, 05 Civ. 01966, 2008 WL 2061266 at *6 (S.D.N.Y. Mar. 27, 2008), report & rec adopted, 2008 WL 2061267 at *1 (S.D.N.Y. May 12, 2008); Schirmer v. Town of Harrison, 98 Civ. 2582, 1999 WL 61843 at *2 (S.D.N.Y. Feb. 10, 1999).

**APPENDIX A: Report and Recommendation**                    **A-29**

<u>Orange</u>, 141 Fed. Appx. 3, 6 (2d Cir. 2005).[21/]  A plaintiff must establish that his contract or

functional equivalent confers the benefit as "virtually a matter of right." <u>Schwartz</u> v. <u>Thompson</u>, 497

F.2d 430, 433 (2d Cir. 1974).[22/]  Tenured government employees like Storman generally have a

constitutionally protected property interest in their employment.[23/]  However, "not every contractual

---

[21/]    <u>See also</u>, <u>e.g.</u>, <u>Bd. of Regents</u> v. <u>Roth</u>, 408 U.S. at 578, 92 S. Ct. at 2709; <u>Perry</u> v. <u>Sindermann</u>, 408 U.S. at 601-02, 92 S. Ct. at 2699-70; <u>Ciambriello</u> v. <u>County of Nassau</u>, 292 F.3d 307, 314 (2d Cir. 2002); <u>Goetz</u> v. <u>Windsor Cent. Sch. Dist.</u>, 698 F.2d at 608 ("[A] property interest in employment can be created by local ordinance or by implied contract."); <u>Grunberg</u> v. <u>Bd. of Educ. for the City Sch. Dist. of the City of N.Y.</u>, No. CV-00-4124, 2006 WL 845389 at *9 (E.D.N.Y. Mar. 30, 2006) ("In order to establish a constitutionally recognized property interest in an employment benefit, the employee's contract should be examined."); <u>Romano</u> v. <u>Harrington</u>, 664 F. Supp. 675, 681 (E.D.N.Y. 1987) ("It is well established that a property interest in employment may be created by explicit contractual provisions or by implicit understandings.").

[22/]    <u>Accord</u>, <u>e.g.</u>, <u>Berrios</u> v. <u>State Univ. of N.Y. at Stony Brook</u>, 518 F. Supp. 2d 409, 419 (E.D.N.Y. 2007); <u>Sutton</u> v. <u>Village of Valley Stream, N.Y.</u>, 96 F. Supp. 2d 189, 193 (E.D.N.Y. 2000); <u>Kane</u> v. <u>Krebser</u>, 44 F. Supp. 2d 542, 550 (S.D.N.Y.1999) (The contract, statute, or binding informal rule establishing the property interest "must make conferral of the benefit 'virtually a matter of right,' so that the process is so nearly automatic as virtually to assure conferral of the benefit.") (citation omitted); <u>see also</u>, <u>e.g.</u>, <u>Gagliardi</u> v. <u>Village of Pawling</u>, 18 F.3d 188, 192 (2d Cir. 1994) ("An entitlement to a benefit arises 'only when the discretion of the issuing agency is so narrowly circumscribed' as to virtually assure conferral of the benefit."); <u>Onwuazombe</u> v. <u>Dodrill</u>, 07 Civ. 873, 2008 WL 1758641 at *3 (S.D.N.Y. Apr. 16, 2008) ("An interest that can be terminated 'at the whim of another person' is not protected by the Due Process Clause.").

[23/]    <u>E.g</u>, <u>Harhay</u> v. <u>Town of Ellington Bd. of Educ.</u>, 323 F.3d 206, 212-13 (2d Cir. 2003) ("This Circuit . . . has held that tenured public employees have a constitutionally protected property interest in their employment."); <u>Ciambriello</u> v. <u>County of Nassau</u>, 292 F.3d at 313-14; <u>Hawkins</u> v. <u>Steingut</u>, 829 F.2d 317, 321 (2d Cir. 1987); <u>Banigo</u> v. <u>Bd. of Educ. of Roosevelt Union Free Sch. Dist.</u>, No. 06-4792, 2009 WL 577974 at *9 (E.D.N.Y. Mar. 4, 2009) ("It has been held that a public school teacher has a property interest in his or her tenure and cannot be fired without due process."); <u>Rosendale</u> v. <u>Mahoney</u>, 2008 WL 2061266 at *6 ("In the context of employment, 'there appears to be general agreement that a property interest arises (continued...)

H:\OPIN\STORMAN

benefit rises to the level of a constitutionally protected property interest." <u>Ezekwo</u> v. <u>N.Y. City Health & Hosps. Corp.</u>, 940 F.2d 775, 782 (2d Cir.), <u>cert. denied</u>, 502 U.S. 1013, 112 S. Ct. 657 (1991).[23/] Accordingly, "[p]laintiffs do not have property interests in the insubstantial aspects or discretionary benefits of their employment," <u>Kane</u> v. <u>Krebser</u>, 44 F. Supp. 2d at 549,[25/] and courts in this Circuit have found that "'disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment.'" <u>Boyd</u> v. <u>Schembri</u>, 94 Civ. 7119, 1997 WL 466539 at *3 (S.D.N.Y. Aug. 13, 1997) (quoting <u>Brown</u> v. <u>Brienen</u>, 722 F.2d 360, 365 (7th Cir. 1983) (Posner, C.J.)).[26/] In particular, "[e]very court in this circuit that has considered the issue of whether there exists a constitutionally protected property interest in overtime

---

[23/]   (...continued)
only when an individual possesses a legitimate claim of entitlement to continued job tenure.'") (citation & quotation omitted); <u>Ramberran</u> v. <u>Dellacona</u>, No. 07-CV-304, 2008 WL 905217 at *4 (E.D.N.Y. Mar. 31, 2008) (Plaintiff "has a property right in his employment as a tenured teacher.").

[24/]   Accord, e.g., <u>Arteta</u> v. <u>County of Orange</u>, 141 Fed. Appx. at 3; <u>Harhay</u> v. <u>Town of Ellington Bd. of Educ.</u>, 323 F.3d at 212; <u>Ciambriello</u> v. <u>County of Nassau</u>, 292 F.3d at 313; <u>Adler</u> v. <u>County of Nassau</u>, 113 F. Supp. 2d 423, 429 (E.D.N.Y. 2000).

[25/]   Accord, e.g., <u>Ezekwo</u> v. <u>N.Y. City Health & Hosps. Corp.</u>, 940 F.2d at 782-83; <u>Adler</u> v. <u>County of Nassau</u>, 113 F. Supp. 2d at 429; <u>Boyd</u> v. <u>Schembri</u>, 94 Civ. 7119, 1997 WL 466539 at *3 (S.D.N.Y. Aug. 13, 1997); <u>McNill</u> v. <u>N.Y. City Dep't of Corr.</u>, 950 F. Supp. 564, 572 (S.D.N.Y. 1996).

[26/]   Accord, e.g., <u>Kane</u> v. <u>Krebser</u>, 44 F. Supp. 2d at 549; <u>McNill</u> v. <u>N.Y. City Dep't of Corr.</u>, 950 F. Supp. at 573; <u>Demuro</u> v. <u>Westchester County Dep't of Corr.</u>, 85 Civ. 4708, 1986 WL 10728 at *3 (S.D.N.Y. Sept. 25, 1986).

H:\OPIN\STORMAN

pay has answered in the negative." Cassidy v. Scoppetta, 365 F. Supp. 2d 283, 287 (E.D.N.Y. 2005).[27]

Defendants argue that Storman "does not possess a constitutional property interest in working as a summer school teacher or performing per session home instruction for DOE" because Storman "is not guaranteed work as a summer school teacher or per session work" which "is assigned based on the needs of [the] DOE and then on seniority." (Dkt. No. 7: Defs. Br. at 9; see also Dkt. No. 16: Defs. Reply Br. at 5-6.) Storman argues, however, that defendants inappropriately equate "per session" employment – "independent work assignments . . . compensated for on a different basis" – with overtime work, which "is the same work as regular time work but compensated for at a higher level of pay." (Dkt. No. 13: Storman Opp. Br. at 12.) This Court must determine whether Storman's employment contract and any other implicit, binding promises created a property interest in Storman's per session work that distinguishes the instant case from non-education overtime cases.

The UFT-DOE collective bargaining agreement grants retention priority for per session employment to "[t]eachers with at least two years of continuous satisfactory service in a particular activity." (Dkt. No. 13: Storman Opp. Br. App. at 2: 2003-07 DOE-UFT Contract Art. 15

---

[27] See, e.g., Rolon v. Henneman, 517 F.3d at 148-49; Zahrey v. City of N.Y., 98 Civ. 4546, 2009 WL 54495 at *28 (S.D.N.Y. Jan. 7, 2009); Dones v. City of N.Y., 2008 WL 2742108 at *7; Grunberg v. Bd. of Educ. for the City Sch. Dist. of the City of N.Y., 2006 WL 845389 at *9 ("Without a guarantee, the potential assignment of this overtime work does not rise to the level of a constitutionally protected property interest."); Caniello v. City of N.Y., 00 Civ. 3009, 2001 WL 11061 at *1 (S.D.N.Y. Jan. 4, 2001); Boyd v. Schembri, 1997 WL 466539 at *3.

A.2.)  Although Storman does not explicitly allege that he had satisfactorily worked as a summer school and home instructor for two years prior to losing his retention rights, Storman's claim that he had previously "enjoyed an unblemished reputation" and had "vested retention rights" (see page 19 above) sufficiently establishes, for purposes of a motion to dismiss, that Storman possessed retention rights pursuant to the express terms of the DOE-UFT contract.

Whether these retention rights give Storman a constitutionally protected property interest in per session work as a summer school and home instructor, however, "is not readily ascertainable on the basis of the existing record."  Romano v. Harrington, 664 F. Supp. at 681-82 ("The factual question of whether a property interest was created . . . is not suitable for determination on a motion for summary judgment" where "collective bargaining agreement provides priority for reappointment to the [per session] position after two years of satisfactory service" and this teacher's employment contract "appears to guarantee continued employment [in per session work] absent sufficient cause for discharge, and thus may, under Roth, create a protected liberty interest.").[28]

---

[28]    See also Rosendale v. Mahoney, 2008 WL 2061266 at *10 ("As issues of fact remain as to whether Plaintiff had an ongoing contractual relationship with Defendants that prohibited Defendants from terminating Plaintiff [from his job as a substitute teacher] without notice and a hearing, I conclude . . . that fact issues remain as to whether [Superintendent] Mahoney's actions were objectively reasonable at the time Mahoney directed that Plaintiff's name be removed from the substitute list.  Accordingly, I conclude . . . that Defendant Mahoney's motion for summary judgment under Plaintiff's procedural due process claim should be denied.").  But cf. Grunberg v. Bd. of Educ. for the City Sch. Dist. of the City of N.Y., 2006 WL 845389 at *9 ("[W]hile plaintiff's contract does require that per session work be assigned by seniority, the contract does not guarantee that an employee will be assigned such work.  Without a guarantee, the potential assignment of this overtime work does not rise to the level of a constitutionally protected interest.") (citation omitted).  This Court notes that Grunberg was decided on a summary judgment motion, not a motion to dismiss.

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                      **A-33**

Tenured New York City public school employees' contractual right to retain per session work may differ from contractual rights to overtime in non-education contexts because New York City public school employees' collective bargaining agreement appears to provide a greater level of entitlement to per session work, and because those rights may become cemented after a certain number of years of continuous, satisfactory employment.  At this juncture there is insufficient information before this Court regarding the degree to and manner in which DOE employees maintain rights in per session work, to effectively analyze whether such work constitutes a legitimate property interest.  Defendants can re-address any arguments concerning Storman's property interest in per session work in a summary judgment motion after the conclusion of discovery.

B. **Liberty Interest**

Storman claims that the unsatisfactory rating, attributed to an act of "substantiated corporal punishment at P.S. 212" (see Dkt. No. 1: Compl. Ex. G: Storman 2004-05 Annual Review), constitutes a stigma that will prevent him from obtaining future employment and re-assignment opportunities because the "unsatisfactory rating and the reasons for it will be available for inspection by any future employer and within the school system."  (See page 19 above; see also Dkt. No. 13: Storman Opp. Br. at 10.)

"A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983."  Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004); see, e.g., Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155,1160-61 (1976) ("While we have in a number of our prior cases pointed out the frequently drastic effect of the

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**          **A-34**

'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.").[29] "[S]imple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation, such as dismissal from government employment," O'Neill v. City of Auburn, 23 F.3d 685, 691 n.2 (2d Cir. 1994), "or alteration of some other right or status recognized by state law." Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir.), cert. denied, 493 U.S. 816, 110 S. Ct. 66 (1989).[30] The legal standard for such liberty interest claim is commonly referred to as the "stigma plus" test. E.g., Velez v. Levy, 401 F.3d at 87; Neu v. Corcoran, 869 F.2d at 667.

First, a plaintiff must demonstrate that the government made stigmatizing statements that call into question his "'good name, reputation, honor, or integrity.'" Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980) (quoting Wisconsin v. Constantineau, 400

---

[29] Accord, e.g., Jones v. Dep't of Educ., No. 05-CV-3075, 2008 WL 3836122 at *3 (E.D.N.Y. Aug. 13, 2008); Giovanniello v. Goord, No. 04-CV-6129, 2004 WL 2315090 at *3 (W.D.N.Y. Oct. 14, 2004); Straker v. Metro. Transit Auth., 333 F. Supp. 2d 91, 97 (E.D.N.Y. 2004); see also, e.g., Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action.").

[30] Accord, e.g., Boss v. Kelly, No. 07-4104, 2009 WL 76501 at *2 (2d Cir. Jan. 13, 2009); Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005); Brevot v. N.Y. City Dep't Of Educ., 04 Civ. 7959, 2007 WL 690130 at *4 (S.D.N.Y. Mar. 6, 2007), aff'd, 299 Fed. Appx. 19 (2d Cir. 2008).

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                    **A-35**

U.S. 433, 437, 91 S. Ct. 507, 510 (1971)).[31/]  "[S]tigmatizing allegations . . . include charges going to professional competence when the charges are sufficiently serious."  <u>Donato</u> v. <u>Plainview-Old Bethpage Cent. Sch. Dist.</u>, 96 F.3d 623, 632 (2d Cir. 1996), <u>cert. denied</u>, 519 U.S. 1150, 117 S. Ct. 1083 (1997).  However, "statement[s] that an employee poorly performed her duties or acted in an improper manner," <u>LaForgia</u> v. <u>Davis</u>, 01 Civ. 7599, 2004 WL 2884524 at *8 (S.D.N.Y. Dec. 14, 2004), or that describe behavior or actions that are "within the employee's power to correct," do not generally qualify as stigma for constitutional purposes.  <u>Russell</u> v. <u>Hodges</u>, 470 F.2d 212, 217 (2d Cir. 1972).[32/]

---

[31/]  <u>Accord</u>, <u>e.g.</u>, <u>Segal</u> v. <u>City of N.Y.</u>, 459 F.3d 207, 212 (2d Cir. 2006); <u>Patterson</u> v. <u>City of Utica</u>, 370 F.3d at 330; <u>Cates</u> v. <u>Williams</u>, 08 Civ. 1529, 2009 WL 723021 at *6 (S.D.N.Y. Mar. 19, 2009); <u>Ricioppo</u> v. <u>County of Suffolk</u>, No. 04-3630, 2009 WL 577727 at *17 (E.D.N.Y. Mar. 4, 2009).

[32/]  <u>See also</u>, <u>e.g.</u>, <u>O'Neill</u> v. <u>City of Auburn</u>, 23 F.3d at 692 ("[S]tatements reported by the newspapers about [plaintiff]-that he had 'poor relationships' with state agencies, that his work was not 'up to par,' and was 'slopp[y]'-fall clearly within the category of statements . . . [that] are not stigmatizing because they describe problems within the employee's power to correct."); <u>Schlesinger</u> v. <u>N.Y. City Transit Auth.</u>, 00 Civ. 4759, 2001 WL 62868 at *7 (S.D.N.Y. Jan. 24, 2001) ("The defamatory statements accused plaintiff only of acting in an unprofessional manner. Furthermore, the charges against plaintiff did not reflect dishonesty or immorality, which may be beyond plaintiff's power to correct. Rather, the charges primarily concerned one incident where plaintiff acted in a disrespectful manner. Because such conduct is within his power to correct, the charge is not sufficiently stigmatizing."); <u>Esposito</u> v. <u>Metro-North Commuter R.R.</u>, 856 F. Supp. 799, 804 (S.D.N.Y. 1994) ("[D]efendant's statement about plaintiff-that he had made an inexcusable error in judgment . . . -contains no accusations of dishonesty, illegality, or immorality. . . . [and] cannot fairly be read as a pervasive indictment of plaintiff's ability to do his job. It merely asserted that in one instance, he made an error in judgment, albeit a very serious one, and made no assessment of his overall competence.") (citation omitted).

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                    **A-36**

Storman's single unsatisfactory rating alone (particularly given that it did not result in termination), does not constitute stigma worthy of Due Process Clause protection. A conclusory or nondescript unsatisfactory rating or negative report, by itself, could almost never support a "stigma plus" allegation. See, e.g., Martinez v. City of N.Y., 00 Civ. 7914, 2003 WL 2006619 at *7 (S.D.N.Y. Apr. 30, 2003) ("A negative report in an employment file with generalized statements about [plaintiff]'s interpersonal skills will not bar her from pursuing her chosen profession."). However, accompanying remarks that the unsatisfactory rating was based on "substantiated corporal punishment" (see pages 7, 10-11, 13-14 above) trigger constitutional concerns, since the comment likely would limit employment or re-assignment opportunities in a profession that places its members in positions of trust and authority over childrens' physical safety and emotional well-being. See, e.g., Weintraub v. Bd. of Educ. of City of N.Y., 423 F. Supp. 2d 38, 60 (E.D.N.Y. 2006) (denying summary judgment motion on plaintiff's "stigma plus" claim where defendants "inserted statements [in]to [plaintiff's] personnel file" charging plaintiff with, among other things, "corporal punishment"); McDonald v. Bd. of Educ. of City of N.Y., 01 Civ. 1991, 2001 WL 840254 at *7 (S.D.N.Y. July 25, 2001) ("For the purposes of this motion [to dismiss], we assume, arguendo, that if plaintiff's termination for corporal punishment were published, it would subject her to 'public approbrium' that would jeopardize her liberty interest in seeking other employment.").[33/] Although the substantiated corporal punishment charge describes only one instance of improper conduct, the

---

[33/]  Cf. Koehler v. N.Y. City, 04 Civ. 6929, 2005 WL 3502042 at *3 (S.D.N.Y. Dec. 20, 2005) (Probationary employee's placement on ineligible list for future employment after being charged with corporal punishment does not constitute stigmatization where ineligible list does not publicly disclose grounds for dismissal.).

charge is ostensibly quite serious, and Storman can do little, if anything, to "correct" his conduct in order to mitigate any damage to his "good name, reputation, honor, or integrity." This is so even if the incident remains the only blemish on an otherwise sterling professional record.

Storman also must assert that the stigmatizing statements are false, see, e.g., Patterson v. City of Utica, 370 F.3d at 330 ("A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false."),[34] and prove the stigmatizing statements were publicized. See, e.g., Abramson v. Pataki, 278 F.3d 93, 101-02 (2d Cir. 2002).[35] Storman has asserted the falsity of the DOE's determination that he committed an act of corporal punishment (see Dkt. No. 1: Compl. ¶¶ 54, 67-68; see also page 20 above), and properly proved publication, at this stage, by alleging the statement's availability "for inspection by any future employer and within the school system should he be considered for reassignment" (Compl. ¶ 65; Storman Opp. Br. at 10-11). See Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk County, N.Y., 820 F.2d at 45 ("If [plaintiff] is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his future job opportunities. [Plaintiff] need not wait until he

---

[34]   Accord, e.g., Segal v. City of N.Y., 459 F.3d at 212 n.5; O'Neill v. City of Auburn, 23 F.3d at 694; Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk County, N.Y., 820 F.2d 41, 43 (2d Cir. 1987) Ricioppo v. County of Suffolk, 2009 WL 577727 at *17; Peres v. Oceanside Union Free Sch. Dist., No. 05 Civ. 1807, 2008 WL 305342 at *17 (E.D.N.Y. Jan. 31, 2008).

[35]   Accord, e.g, Segal v. City of N.Y., 459 F.3d at 212; Patterson v. City of Utica, 370 F.3d at 330; Ricioppo v. County of Suffolk, 2009 WL 577727 at *17; Peres v. Oceanside Union Free Sch. Dist., 2008 WL 305342 at *17; Kennedy v. Lehman, No. 03-CV-531, 2007 WL 2743457 at *13 (W.D.N.Y. Sept. 18, 2007).

**APPENDIX A: Report and Recommendation**                                    **A-38**

actually loses some job opportunities because the presence of the charges in his personnel file coupled with a likelihood of harmful disclosure already place him 'between the devil and the deep blue sea.'") (citation omitted).[36/]

Storman asserts that he meets second prong of his "stigma plus" claim – the "plus" component – because he maintained "firmly established" retention rights in his per session work which defendants revoked when they affirmed his "'U' rating" (see Storman Opp. Br. at 13), thereby depriving Storman of a "'tangible interest' or property right (the plus)." See, e.g., DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003), cert. denied, 541 U.S. 988, 124 S. Ct. 2018 (2004).[37/] Although "it is not entirely clear what the 'plus' [requirement] is," Neu v. Corcoran, 869 F.2d at 667, "the deleterious effects which flow directly from a sullied reputation would normally . . . be insufficient.  These would normally include the impact that defamation might have on job prospects,

---

[36/]    Accord, e.g., Segal v. City of N.Y., 459 F.3d at 213; Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d at 631-32; Weintraub v. Bd. of Educ. of City of N.Y., 423 F. Supp. 2d at 60; Peres v. Oceanside Union Free Sch. Dist., 426 F. Supp. 2d 15, 27 (E.D.N.Y. 2006); Cohane v. Greiner, No. 04-CV-943, 2006 WL 625842 at *6 & n.3 (W.D.N.Y. Mar. 10, 2006); but see Koehler v. N.Y. City, 2005 WL 3502042 at *3  ("While Plaintiff states that 'the incident and her rating for 2003-2004 was placed in her personnel file,' that her personnel file is 'subject to public disclosure on inquiry,' and that it is 'likely' or could 'reasonably be expected to be disclosed to prospective employers,' . . . she does not allege that her personnel file actually was disclosed to the public or to any prospective employer.").

[37/]    Accord, e.g., Segal v. City of N.Y., 459 F.3d at 212; Walsh v. Suffolk County Police Dep't, No. 06-CV-2237, 2008 WL 1991118 at *8 (E.D.N.Y. May 5, 2008); Kennedy v. Lehman, 2007 WL 2743457 at *13; see also, e.g., Valmonte v. Bane,18 F.3d 992, 1000 (2d Cir. 1994) ("[D]efamation is not by itself a deprivation of a liberty interest unless coupled with the termination of government employment 'or deprivation of some other legal right or status.'").

H:\OPIN\STORMAN

or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." <u>Valmonte</u> v. <u>Bane</u>, 18 F.3d at 1001.[38/]

In the Second Circuit, "deprivation of a property interest satisfies the 'plus' prong of stigma plus." <u>Greenwood</u> v. <u>New York</u>, 163 F.3d 119, 124 (2d Cir. 1998) ("[S]ince we have already concluded that [plaintiff's psychiatric] clinical staff privileges create a property interest under New York law, we hold that government defamation combined with the deprivation of [this] property interest in clinical privileges gave rise to a due process liberty interest.").[39/] This Court has already held that it cannot determine, on the current record, whether Storman has a property interest in his per session work (<u>see</u> pages 33-34 above), and is therefore similarly constrained from determining whether Storman has satisfied the "plus" prong of his "stigma plus" claim. Storman, therefore, *may* posses a "stigma plus" liberty interest in the instant case. Once again, defendants may re-address any arguments concerning Storman's stigma plus liberty interest claim in a summary judgment motion once the record is fully developed.

---

[38/]    <u>Accord</u>, <u>e.g.</u>, <u>Kennedy</u> v. <u>Lehman</u>, 2007 WL 2743457 at *13; <u>Giovanniello</u> v. <u>Goord</u>, 2004 WL 2315090 at *3.

[39/]    <u>See</u>, <u>e.g.</u>, <u>Sadallah</u> v. <u>City of Utica</u>, 383 F.3d at 38 ("Burdens that can satisfy the 'plus' prong under this doctrine include . . . the termination of a plaintiff's government employment."); <u>DiBlasio</u> v. <u>Novello</u>, 344 F.3d at 302 ("It is clear that defamation 'plus' loss of government employment satisfies the <u>Paul</u> 'plus factor.'"); <u>Walsh</u> v. <u>Suffolk County Police Dep't</u>, 2008 WL 1991118 at *9; <u>Jana-Rock Constr., Inc.</u> v. <u>City of Syracuse</u>, No. 5:05-CV-1191, 2007 WL 3274801 at *3 (N.D.N.Y. Nov. 5, 2007) ("The clearest examples of burdens that will satisfy the 'plus' prong are termination of government employment and deprivation of property."); <u>Trudeau</u> v. <u>N.Y. State Consumer Prot. Bd.</u>, 2006 WL 1229018 at *11.

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**         **A-40**

## C.   What Process is Due

The second step of any Due Process analysis "asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988) (citing Mathews v. Eldridge, 424 U.S. 319, 333-34, 96 S. Ct. 893, 902 (1976)).[40/]

Storman claims, generally, that the finding he committed a substantiated incident of corporal punishment was "not supported by either a preponderance of the evidence or substantial evidence," and that the DOE "denied [Storman] the right to confront Student A and [to] cross-examine him about his claims." (See page 20 above.)

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 656-57 (1950)).[41/] "Due process requires, as a general matter, an 'opportunity to be heard "at a meaningful time and in a meaningful

---

[40/]   Accord, e.g., Siino v. Bd. of Trs. of N.Y. City Teachers' Ret. Sys., 08 Civ. 4529, 2009 WL 166557 at *3 (S.D.N.Y. Jan. 26, 2009); Boss v. Kelly, 07 Civ. 2113, 2007 WL 2412261 at *3 (S.D.N.Y. Aug. 23, 2007) (Stein, D.J.), aff'd, No. 07-4104, 2009 WL 76501 (2d Cir. Jan. 13, 2009); Gansas v. City of N.Y., No. 05-CV-5484, 2006 WL 2166869 at *5 (E.D.N.Y. July 31, 2006), aff'd, 240 Fed. Appx. 435 (2d Cir. 2007); Chandler v. Moran, 03 Civ. 2024, 2005 WL 2249779 at *6 (S.D.N.Y. Apr. 25, 2005).

[41/]   Accord, e.g., Siino v. Bd. of Trs. of N.Y. City Teachers' Ret. Sys., 2009 WL 166557 at *3; DeMasi v. Benefico, 567 F. Supp. 2d 449, 454 (S.D.N.Y. 2008); Tavarez v. State of N.Y. Office of Parks, Recreation & Historic Pres., 04 Civ. 9541, 2007 WL 945383 at *5 (S.D.N.Y. Mar. 28, 2007); Dinsey v. Dep't of Homeland Sec.-U.S. Citizenship & Immigration Servs., 03 Civ. 10081, 2004 WL 1698630 at *4 (S.D.N.Y. July 28, 2004).

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                    **A-41**

manner.'"" <u>Calhoun</u> v. <u>N.Y. State Div. of Parole Officers</u>, 999 F.2d 647, 653 (2d Cir.1993) (quoting <u>Mathews</u> v. <u>Eldridge</u>, 424 U.S. at 333, 96 S. Ct. at 902).[42/]

        "§ 1983 allows plaintiffs with federal or constitutional [Due Process] claims to sue in federal court without first exhausting state judicial or administrative remedies. . . . [but] there <u>is no</u> constitutional violation (and no available § 1983 action) when there is an adequate state post[-]deprivation procedure to remedy a random, arbitrary deprivation of property or liberty." <u>Hellenic Am. Neighborhood Action Comm.</u> v. <u>City of N.Y.</u>, 101 F.3d 877, 881-82 (2d Cir. 1996) (<u>citing Zinermon</u> v. <u>Burch</u>, 494 U.S. 113, 132, 110 S. Ct. 975, 987 (1990); <u>Hudson</u> v. <u>Palmer</u>, 468 U.S. 517, 531, 533, 104 S. Ct. 3194, 3203-04 (1984); & <u>Parratt</u> v. <u>Taylor</u>, 451 U.S. 527, 541, 101 S. Ct. 1908, 1916 (1981)), <u>cert. denied</u>, 521 U.S. 1140, 118 S. Ct. 15 (1997).[43/]  In cases where the state actor engaged in random and unauthorized acts, an Article 78 proceeding "'constitutes a wholly adequate post-deprivation hearing for due process purposes.'" <u>Sindone</u> v. <u>Kelly</u>, 254 Fed. Appx. 58, 59 (2d Cir. 2008) (quoting <u>Locurto</u> v. <u>Safir</u>, 264 F.3d 154, 175 (2d Cir. 2001)).[44/]

---

[42/]    Accord, e.g., <u>Gansas</u> v. <u>City of N.Y.</u>, 2006 WL 2166869 at *6; <u>Bicaj</u> v. <u>Ashcroft</u>, 01 Civ. 11568, 2003 WL 21355488 at *4 (S.D.N.Y. June 11, 2003).

[43/]    Accord, e.g., <u>Rivera-Powell</u> v. <u>N.Y. City Bd. of Elections</u>, 470 F.3d 458, 465 (2d Cir. 2006); <u>DeMasi</u> v. <u>Benefico</u>, 567 F. Supp. 2d at 455; <u>Buonanotte</u> v. <u>Noonan</u>, 534 F. Supp. 2d 385, 392 (E.D.N.Y. 2008); <u>Murawski</u> v. <u>Pataki</u>, 514 F. Supp. 2d 577, 585 (S.D.N.Y. 2007); <u>Ridgeview Partners, LLC</u> v. <u>Entwistle</u>, 354 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) (Stein, D.J.).

[44/]    Accord, e.g., <u>Rivera-Powell</u> v. <u>N.Y. City Bd. of Elections</u>, 470 F.3d at 467; <u>Hellenic Am. Neighborhood Action Comm.</u> v. <u>City of N.Y.</u>, 101 F.3d at 881; <u>McCulloch</u> v. <u>Town of Milan</u>, 07 Civ. 9780, 2008 WL 2986257 at *2 (S.D.N.Y. July 17, 2008); <u>DeMasi</u> v. <u>Benefico</u>, 567 F. Supp. 2d at 454-55; <u>Intermor</u> v. <u>Incorporated Vill. of Malverne</u>, No. 03-CV-5164, 2007 WL 2288065 at *10 (E.D.N.Y. Aug. 8, 2007).  In addition, a post-
                    (continued...)

"In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. . . . Under those circumstances, 'the availability of post-deprivation procedures will not, _ipso facto_, satisfy due process.'" <u>Rivera-Powell</u> v. <u>N.Y. City Bd. of Elections</u>, 470 F.3d at 465 (citing <u>Hellenic Am. Neighborhood Action Comm.</u> v. <u>City of N.Y.</u>, 101 F.3d at 880)).[45/] "[A]ffording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays." <u>Cleveland Bd. of Educ.</u> v. <u>Loudermill</u>, 470 U.S. at 544, 105 S.Ct. at 1494. "The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. . . . The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." <u>Cleveland Bd. of Educ.</u> v. <u>Loudermill</u>, 470 U.S. at 546, 547-48, 105 S. Ct. at 1495-96 ("We conclude that all the process that is due is provided by a

---

[44/]     (...continued)
deprivation hearing will not satisfy due process when a plaintiff alleges that "statutory and administrative procedures that were properly followed are themselves unconstitutional." <u>Reyes</u> v. <u>Erickson</u>, 238 F. Supp. 2d 632, 635 (S.D.N.Y. 2003); <u>accord</u>, <u>e.g.</u>, <u>Ridgeview Partners, LLC</u> v. <u>Entwistle</u>, 354 F. Supp. 2d at 401.

[45/]     <u>Accord</u>, <u>e.g.</u>, <u>Razzno</u> v. <u>County of Nassau</u>, No. 07-CV-3983, -- F. Supp. 2d --, 2009 WL 367503 at *5 (E.D.N.Y. Feb. 14, 2009); <u>DeMasi</u> v. <u>Benefico</u>, 567 F. Supp. 2d at 455; <u>Buonanotee</u> v. <u>Noonan</u>, 534 F. Supp. 2d at 392; <u>Murawski</u> v. <u>Pataki</u>, 514 F. Supp. 2d at 585; <u>Jackson</u> v. <u>Rosalyn Bd. of Educ.</u>, 438 F. Supp. 2d 49, 54 (E.D.N.Y. 2006).

44

pretermination opportunity to respond, coupled with post-termination administrative procedures . . .").[46]

Storman claims that defendants DOE and Klein deprived him of his property and liberty interests pursuant to "an established state process," and that the availability of a post-deprivation Article 78 proceeding – which Storman initiated (see pages 4-11, 13-14 above) – does not defeat Storman's due process claim. (See Dkt. No. 13: Storman Opp. Br. at 5-6.) Although "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut," Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d at 465, defendants followed established DOE procedure and policy when they initiated an official OSI investigation into Storman's conduct that concluded with Storman's 2004-2005 "Annual Professional Performance Review" unsatisfactory rating and accompanying remarks of "substantiated corporal punishment" (see pages 4-8 above). Neither Storman nor defendants argue that defendants acted arbitrarily or without authority in deciding to give Storman an unsatisfactory rating.[47] Compare, e.g., Beechwood

---

[46]   Accord, e.g., Locurto v. Safir, 264 F.3d at 171, 173-74 ("When such a [tenured] public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards."); Chernoff v. City of N.Y., No. 06-CV-2897, 2009 WL 816474 at *3 (E.D.N.Y. Mar. 26, 2009); DeMasi v. Benefico, 567 F. Supp. 2d at 454.

[47]   Storman however, does claim that the DOE "denied [Storman] the right to confront Student A and [to] cross-examine him about his claims," and did not provide Storman with his 2004-2005 Annual Review "in a timely manner." (Compl. ¶¶ 50, 52, 54, 69; see Dkt. No. 14: Storman Opp. Ex. H: 3/6/08 Hearing Tr. at 8-9; Storman Opp. Ex. I: 5/23/06 Hearing Tr. at 4-8.) Because this Court cannot determine on this motion whether defendants provided Storman with adequate due process hearing procedures (see pages 47-49 below), evaluation of such alleged procedural deficiencies is more suitably resolved via a later summary judgment motion.

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                   **A-44**

Restorative Care Ctr. v. Leeds, 436 F.3d 147, 156 (2d Cir 2006) (Failure to provide plaintiffs with hearing guaranteed to them under established state procedure constitutes a "random unauthorized act" that may be remedied by an Article 78 proceeding.); Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d at 881 (Plaintiff "makes no claim that the due process violation was caused by an established state procedure" rather it argues "that state officials acted in flagrant violation of the City Charter and [Procurement Policy Board] Rules," which constitutes a "random and arbitrary act.").   Storman argues that defendants violated his Due Process rights through established procedures that resulted in an "arbitrary and capricious" finding that Storman committed a "substantiated incident of corporal punishment" that was "not supported by either a preponderance of the evidence or substantial evidence," and that was "devoid of any supporting evidence."  (See page 20 above.)  Storman's Article 78 proceeding, therefore, does not "ipso facto" cure his Due Process concerns.[48/]  See, e.g., Jackson v. Rosalyn Bd. of Educ., 438 F. Supp. 2d at 54-55 ("[A]t this point the Court cannot say with any degree of certainty whether the defendants' act of merely refusing to entertain the plaintiff's [disability retirement benefits] application occurred within the context of established state procedures or if it was a random and unauthorized act," and therefore

---

[48/]   Storman also argues that an Article 78 proceeding does not provide adequate due process because Article 78 provides limited recovery, i.e., damages are not available, compared to a § 1983 action.  (Storman Opp. Br. at 7-8.)  An Article 78 proceeding, however, would be "adequate for due process purposes even though [Storman]  may not be able to recover the same relief that he could in a § 1983 suit."  Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d at 881 (citing  Hudson v. Palmer, 468 U.S. at 535, 104 S. Ct. at 3204-05); accord, e.g., Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d at 157; Lawrence v. Antonucci, 144 Fed. Appx. 193, 193-94 (2d Cir. 2005), cert. denied, 547 U.S. 1070, 126 S. Ct. 1773 (2006); Peterson v. Tomaselli, 469 F. Supp. 2d 146, 166 (S.D.N.Y. 2007); Koehler v. N.Y. City, 04 Civ. 6929, 2005 WL 1123758 at *8 (S.D.N.Y. May 11, 2005); Davis v. United States, 01 Civ. 6356, 2002 WL 31133030 at *6 (S.D.N.Y. Sept. 25, 2002).

denies defendants' motion to dismiss.). <u>Compare</u>, <u>e.g.</u>, <u>Chernoff</u> v. <u>City of N.Y.</u>, 2009 WL 816474 at *2-3 (New York City Administrative Code disciplinary measures taken against plaintiff that rendered him "ineligible for service-related accidental disability retirement benefits" qualify as established state procedure and may, therefore, require more process than a post-deprivation Article 78 proceeding); <u>with</u>, <u>e.g.</u>, <u>Peterson</u> v. <u>Tomaselli</u>, 469 F. Supp. 2d at 165-66 ("Plaintiff's allegations against [defendant] clearly involve his 'random and unauthorized acts,' and not a flawed state procedure. Therefore, plaintiff has the burden of demonstrating that no meaningful remedy was available subsequent to his liberty deprivation. This he cannot do. Plaintiff could have initiated . . . an Article 78 proceeding . . .").[49]

"The Supreme Court instructs that if a property interest is extinguished pursuant to 'established state procedure' that requires a pre-deprivation constitutional safeguard, that a post-deprivation remedy such as a state Article 78 proceeding does not satisfy due process." <u>Behrend</u> v. <u>Klein</u>, No. 04 CV, 5413-14, 2006 WL 2729257 at *7 (E.D.N.Y. Sept. 25, 2006) (<u>quoting</u> <u>Logan</u> v. <u>Zimmerman Brush Co.</u>, 455 U.S. 422, 435-36, 102 S. Ct. 1148, 1158 (1982)).[50] The Due Process

---

[49]   But cf. <u>Rivera</u> v. <u>Cmty. Sch. Dist. Nine</u>, 145 F. Supp. 2d 302, 308 (S.D.N.Y. 2001) (Stein, D.J.) ("Although [plaintiff probationary school teacher] contends that the violation of her liberty interest stemmed from established state procedures, she cites no particular rule, provision or statute that violates due process." In addition, "the particular finding that gives rise to the protected interest-that [plaintiff] cheated and attempted to assault a fellow teacher-could not possibly be anticipated before it occurred by lawmakers and administrators who formulate procedures. The claim, therefore, is based on a random, unauthorized act, and not a state established procedure.). The Court respectfully disagrees with the analysis in <u>Rivera</u>. The cases cited above hold that the "random act" question is the act of the defendant, not the action of the plaintiff.

[50]   See also, <u>e.g.</u>, <u>DiBlasio</u> v. <u>Novello</u>, 344 F.3d 292, 302 (2d Cir. 2003) ("Generally, due (continued...)

Clause does not, however, "<u>always</u> requires the State to provide a hearing prior to the initial deprivation of property.  This rejection is based in part on the impracticability in some cases of providing any pre[deprivation] hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available."  <u>Parratt</u> v. <u>Taylor</u>, 451 U.S. at 540, 101 S. Ct. at 1915-16 (fn. omitted).<u>51/</u>

          In this case, any analysis regarding whether and when defendants owed Storman a hearing prior to depriving him of his alleged property interest in per session work (<u>see</u> pages 28-34 above) turns on facts not before this Court on this motion.  For example, this Court cannot determine from the complaint when Storman lost his right to engage in per session work, and whether he lost this right the instant he received an unsatisfactory rating in June 2005, or later, perhaps even after the May 2006 hearing before the DOE Office of Review and Appeals.  Storman's claim that he was "denied appointment as a summer school teacher in 2007 because of his loss of retention rights"

---

<u>50/</u>    (...continued)
process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest.") (quoting <u>Hodel</u> v. <u>Va. Surface Mining & Reclamation Ass'n, Inc.</u>, 452 U.S. 264, 299, 101 S. Ct. 2352, 2372 (1981)); <u>Locurto</u> v. <u>Safir</u>, 264 F.3d at 171 ("Ordinarily, the due process clause of the Fourteenth Amendment requires that a state or local government afford persons 'some kind of a hearing' prior to depriving them of a significant liberty or property interest."); <u>McDonald</u> v. <u>Bd. of Educ. of City of N.Y.</u>, 01 Civ. 1991, 2001 WL 840254 at *3 (S.D.N.Y. July 25, 2001) ("As a general rule, when someone is deprived of a protected property interest through 'established state procedures,' they are entitled to pre-deprivation notice and a hearing.").

<u>51/</u>    <u>Accord, e.g.</u>, <u>Gilbert</u> v. <u>Homar</u>, 520 U.S. 924, 930, 117 S. Ct. 1807, 1812 (1997) ("This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."); <u>McDonald</u> v. <u>Bd. of Educ. of City of N.Y.</u>, 2001 WL 840254 at *4.

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**          **A-47**

(Compl. ¶ 62) suggests that the unsatisfactory rating did not cause a loss of per session summer work until after the May 2006 hearing, which would constitute an adequate pre-deprivation hearing. Storman also claims, however, that the unsatisfactory rating resulted in a loss of income as a "Per Session Home Instructor" (Compl. ¶ 59), but does not specify when he lost his right to engage in such work. If defendants DOE and Klein deprived Storman of a property interest in per session work in June 2005, when he received the unsatisfactory rating, then Storman was entitled to a pre-"termination" hearing before that time. See Romano v. Harrington, 664 F. Supp. 675, 682 (E.D.N.Y. 1987) ("[I]f plaintiff's job as faculty advisor constitutes a property interest protected by the due process clause, plaintiff may have been entitled to a pre-termination proceeding . . . prior to his discharge."). Without more information regarding the timing of any deprivation, the regulations under which defendants issued Storman's unsatisfactory rating, and the timing of any loss of property rights as a result thereof, any determination would be premature.[52/] Again, defendants can re-address

---

[52/]     It is also possible that Storman was given sufficient notice and an opportunity to present his side of the story: He was interviewed by OSI Investigator Boyles (see page 5 above); Storman met with Principal Marsella to discuss the investigation results (although it is not clear if Storman received the OSI report before that meeting) and Storman again told his side of the story (see page 7 above); Principal Marsella advised Storman that his conduct "may" lead to further discipline including an unsatisfactory rating (see pages 7-8 above); and thereafter Storman received an unsatisfactory rating (see pages 7-8 above). It is unclear as a matter of law and fact whether what occurred before the unsatisfactory rating can satisfy the due process requirements for the unsatisfactory rating (which was not certain to follow from the OSI investigation). Compare Koehler v. New York City, 2005 WL 1123758 at *2-3 (Probationary teacher received process due when principal reported incident to OSI, and after OSI investigation and report principal met with plaintiff teacher and her union representative; in contrast to Storman's case, teacher in Koehler was given hearing at DOE Office of Appeals and Review before her termination and had Article 78 proceeding available thereafter). In any event, neither Storman nor defendants has argued that the meetings with OSI and Principal Marsella constituted sufficient notice and an opportunity to be heard.

any arguments concerning Storman's due process claim in a summary judgment motion after the close of discovery.

Defendants motion to dismiss Storman's due process claims should be DENIED.

**D.    On this Motion to Dismiss Storman's Due Process Claim is Not Barred by the Statute of Limitations**

The statute of limitations for a § 1983 action is three years.  See, e.g., Palmer v. Stuart, 274 Fed. Appx. 58, 58 (2d Cir. 2008); McKithen v. Brown, 481 F.3d 89, 100 n.12 (2d Cir. 2007), cert. denied, 128 S. Ct. 1218 (2008); Cioce v. County of Westchester, 211 Fed. Appx. 18, 19 (2d Cir. 2006); Walker v. Jastremski, 430 F.3d 560, 561 (2d Cir. 2005), cert. denied, 547 U.S. 1101, 127 S. Ct. 1887 (2006); Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2005); Warren v. Altieri, 59 Fed. Appx. 426, 427 (2d Cir. 2003) (Plaintiff's "§ 1983 action is governed by New York's three-year statute of limitations as set out in N.Y. C.P.L.R. § 214, the provision applicable to actions for personal injury."); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002), cert. denied, 538 U.S. 922, 123 S. Ct. 1574 (2003); Paige v. Police Dep't, 264 F.3d 197, 199 n. 2 (2d Cir. 2001); Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001).[53]

---

[53]    See also, e.g., Newton v. City of N.Y., 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008); Dunn v. DuBois, 08 Civ. 1846, 2008 WL 1816427 at *1 (S.D.N.Y. Apr. 21, 2008); Espada v. Schneider, 522 F. Supp. 2d 544, 550 n.7 (S.D.N.Y. 2007); Hill v. Melvin, 05 Civ. 6645, 2006 WL 1749520 at *5 (S.D.N.Y. June 27, 2006) (Peck, M.J.); Denis v. N.Y.S. Dep't of Corr. Servs., 05 Civ. 4495, 2006 WL 217926 at *11 (S.D.N.Y. Jan 30, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 406313 (S.D.N.Y. Feb. 22, 2006); Diallo v. Williams, 04 Civ. 4556, 2006 WL 156158 at *2 (S.D.N.Y. Jan. 20, 2006); Allan v. City of N.Y., 386 F. Supp. 2d 542, 548 (S.D.N.Y. 2005); Mitchell v. Home, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); Dawkins v. Jones, 03 Civ. 0068, 2005 WL 196537 at *8 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.).

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                    **A-49**

"Federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997); accord, e.g., Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710-11 (2d Cir. 2002); Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994), cert. denied, 516 U.S. 808, 116 S. Ct. 53 (1995). In general under federal law, "the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." Covington v. City of N.Y., 171 F.3d 117, 121 (2d Cir.) (quotations omitted), cert. denied, 528 U.S. 946, 120 S. Ct. 363 (1999).[54]

Storman filed the instant action on January 13, 2009. (See Dkt. No. 1: Compl.) The statute of limitations, therefore, began to run three years before January 13, 2009, plus an additional 145 days due to Judge Stein's January 17, 2008 Order in Storman's first federal lawsuit which tolled the statute of limitations "until a final determination is made by the New York City Department of Education following the remand by Justice Marcie Friedman of the proceedings in Supreme County, New York, New York County, dated October 26, 2007." (07 Civ. 5797, Dkt. No. 14: 1/17/08 Order.)[55] Storman's accrual date, therefore, must be on or after August 21, 2005, or the instant action is time-barred.

---

[54] See also, e.g., Assegai v. Bloomfield Bd. of Educ., 165 Fed. Appx. 932, 934 (2d Cir. 2006); Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004); Ormiston v. Nelson, 117 F.3d at 71; Eagleston v. Guido, 41 F.3d at 871; Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S. Ct. 1368 (1981).

[55] On June 10, 2008, defendants denied Storman's post-remand appeal. (Compl. ¶ 56 & Ex. C: 6/10/08 Lyles Letter; see also Dkt. No. 7: Defs. Br. at 6, confirming that the toll was for 145 days.)

Defendants argue that the statute of limitations began to run on March 11, 2005, when Principal Marsella concluded that Storman had engaged in corporal punishment (see page 7 above), or at the latest in June 2005, when Storman was given an unsatisfactory rating (see page 8 above). (See Defs. Br. at 6-7; Dkt. No. 16: Defs. Reply Br. at 2-3). On the instant motion, however, this Court can not determine when Storman first had reason to know of the injury – the loss of per session work – that serves as the basis for this action. If the June 2005 unsatisfactory rating automatically and immediately terminated Storman's retention rights, and Storman was unable to work during summer 2005 as a result, then the statute of limitations began to run in June 2005, and the instant action is time-barred. If, however, there is lag-time between the June 2005 unsatisfactory rating and the loss of per session work, then the statute of limitations may not have begun to run until sometime after June 2005. Indeed, in response to Storman's allegation that defendants did not provide the June 2005 "rate sheet" to Storman in "a timely manner," which Storman claims he first received on September 7, 2005 (see Compl. ¶ 50 & Ex. G: Storman 2004-05 Annual Review), the other principal who supervised Storman, Principal Santamaria, stated that "Storman was told about the rating on June 29th" and received "the actual rating[] on July 6th," the second day of summer school (Dkt. No. 14: Storman Opp. Ex. I: 5/23/06 Hearing Tr. at 5-8). This implies that Storman did not lose his right to engage in per session work until sometime after summer 2005, suggesting that Storman's accrual date, i.e., when he had reason to know that the unsatisfactory rating would preclude him from per session work, occurred sometime after August 21, 2005.[56]

---

[56] It is possible that Storman immediately knew that the unsatisfactory rating meant the loss of per session work, but that the rating was received too late in the school year to preclude (continued...)

**APPENDIX A: Report and Recommendation**                    **A-51**

In any event, this Court cannot make a proper determination on the record of this motion to dismiss. Defendants can re-address any arguments concerning the statute of limitations on summary judgment. Defendants' motion to dismiss Storman's due process claims on statute of limitations grounds should be DENIED.

## III. STORMAN'S FIRST AMENDMENT RETALIATION CLAIM SHOULD BE DISMISSED

Storman alleges that defendants DOE, Marsella and Boyles violated his First Amendment free speech rights by retaliating against him for appealing his June 2005 unsatisfactory rating and for filing his Article 78 proceeding and his June 2007 federal lawsuit against defendants. (Dkt. No. 1: Compl. ¶¶ 72, 93, 107-10.) Defendants allegedly retaliated by giving Storman an additional unsatisfactory rating in a 2008 "Annual Professional Performance Review And Report" in response to a November 2007 incident involving a student. (Compl. ¶ 72-94, 109.) Storman describes the 2008 unsatisfactory ratings and accompanying report as a "bogus charge" meant to stifle his appeals and lawsuits and to make an example of Storman to other employees. (Compl. ¶¶ 109-10.)

### A. Legal Principles Regarding Public Employees' First Amendment Rights

It is well-settled that "[p]ublic employees do not surrender their First Amendment rights to comment on matters of public interest by virtue of their acceptance of government employment." Cobb v. Pozzi, 363 F.3d 89, 101 (2d Cir. 2004) (citing Pickering v. Bd. of Educ., 391

---

56/     (...continued)
Storman from working during the summer of 2005. On the instant record, however, the Court cannot make such a determination.

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                      **A-52**

U.S. 563, 568, 88 S. Ct. 1731, 1734 (1968)).[57/] As employers, however, states and municipalities possess "'greater leeway to control employees' speech that threatens to undermine its ability to perform its legitimate functions.'" Cobb v. Pozzi, 363 F.3d at 101 (quoting Lewis v. Cowen, 165 F.3d 154, 161 (2d Cir.), cert. denied, 528 U.S. 823, 120 S. Ct. 70 (1999)).[58/] "Courts determine the extent to which the government may permissibly regulate the speech of its employees by balancing the interest of the employee, 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Cobb v. Pozzi, 363 F.3d at 101-02 (quoting Pickering v. Bd. of Educ., 391 U.S. at 568, 88 S. Ct. at 1734).[59/]

---

[57/]   See, e.g., Connick v. Myers, 461 U.S. 138, 140, 103 S. Ct. 1684, 1686 (1983); Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003); Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003); Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999); Blum v. Schlegel, 18 F.3d 1005, 1010-11 (2d Cir. 1994); Ricioppo v. County of Suffolk, No. 04-3630, 2009 WL 577727 at *9 (E.D.N.Y. Mar. 4, 2009); DeVittorio v. Hall, 589 F. Supp. 2d 247, 258 (S.D.N.Y. 2008); Barry v. N.Y. City Police Dep't, 01 Civ. 10627, 2004 WL 758299 at *5 (S.D.N.Y. Apr. 7, 2004).

[58/]   Accord, e.g., Ricioppo v. County of Suffolk, 2009 WL 577727 at *9; Morey v. Somers Cent. Sch. Dist., 06 Civ. 1877, 2007 WL 867203 at *9 (S.D.N.Y. Mar. 21, 2007); Anemone v. Metro. Transp. Auth., 410 F. Supp. 2d 255, 264 (S.D.N.Y. 2006); Barry v. N.Y. City Police Dep't, 2004 WL 758299 at *5.

[59/]   See also, e.g., Melzer v. Board of Educ., 336 F.3d 185, 192-93 (2d Cir. 2003), cert. denied, 540 U.S. 1183, 124 S. Ct. 1424 (2004); Catletti v. Rampe, 334 F.3d 225, 230 (2d Cir. 2003); Mandell v. County of Suffolk, 316 F.3d at 382; Pappas v. Giuliani, 290 F.3d 143, 146 (2d Cir. 2002), cert. denied, 539 U.S. 958, 123 S. Ct. 2642 (2003); Morris v. Lindau, 196 F.3d at 109-10; Blum v. Schlegel, 18 F.3d at 1011; Olson v. State of N.Y., No. 2:04-cv-00419, 2007 WL 1029021 at *9 n.5 (E.D.N.Y. Mar. 30, 2007); Nonnenmann v. City of N.Y., 02 Civ. 10131, 2004 WL 1119648 at *14 (S.D.N.Y. May 20, 2004) (Peck, M.J.); Barry v. N.Y. City Police Dep't, 2004 WL 758299 at *5.

"Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" <u>Johnson</u> v. <u>Ganim</u>, 342 F.3d at 112 (quoting <u>Connick</u> v. <u>Myers</u>, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983)).[60/] Thus, "[t]he first part of the inquiry, commonly referred to as the public concern test, serves a gatekeeping function for employee speech claims in federal court. The First Amendment protects an employee only when he is speaking 'as a citizen upon matters of public concern' as opposed to when he speaks only on matters of personal concern." <u>Melzer</u> v. <u>Bd. of Educ.</u>, 336 F.3d at 193. If the speech "is focused on matters personal to the employee, it cannot be classified as being on a matter of public concern and the government, acting as an employer, 'has greater latitude to discipline' the employee." <u>Johnson</u> v. <u>Ganim</u>, 342 F.3d at 111.[61/] "In general, an employee's protests about the conditions of his or her own employment situation do not rise to the level of public concern necessary for First Amendment protections to attach." <u>Munafo</u> v. <u>Metro. Transp. Auth.</u>, Nos. 98-CV-4572, 00-CV-0134, 2003 WL

---

[60/]     Accord, <u>e.g.</u>, <u>Singh</u> v. <u>City of N.Y.</u>, 524 F.3d 361, 372 (2d Cir. 2008); <u>Reuland</u> v. <u>Hynes</u>, 460 F.3d 409, 416 (2d Cir. 2006), <u>cert. denied</u>, 128 S. Ct. 119 (2007); <u>Catletti</u> v. <u>Rampe</u>, 334 F.3d at 229; <u>Mandell</u> v. <u>County of Suffolk</u>, 316 F.3d at 383; <u>Morris</u> v. <u>Lindau</u>, 196 F.3d at 110.

[61/]     Accord, <u>e.g.</u>, <u>Melzer</u> v. <u>Bd. of Educ.</u>, 336 F.3d at 193; <u>Tucker v. N.Y. City</u>, 05 Civ. 2804, 2008 WL 4450271 at *10 (S.D.N.Y. Sept. 30, 2008); <u>Peres</u> v. <u>Oceanside Union Free Sch. Dist.</u>, No. 05 Civ. 1807, 2008 WL 305342 at *13 (E.D.N.Y. Jan. 31, 2008); <u>Cahill</u> v. <u>O'Donnell</u>, 75 F. Supp. 2d 264, 272 (S.D.N.Y. 1999) (Parker, D.J.).

H:\OPIN\STORMAN

21799913 at *8 (E.D.N.Y. Jan. 22, 2003);[62/] accord, e.g., Cahill v. O'Donnell, 75 F. Supp. 2d at 272.[63/]

   "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" Johnson v. Ganim, 342 F.3d at 112. (quoting Connick v. Myers, 461 U.S. at 147-48, 103 S. Ct. at 1690).[64/] "While this determination may be somewhat fact-intensive, it presents a question of law for the court to resolve." Johnson v. Ganim, 342 F.3d at 112.[65/] In making this determination, "'the

---

[62/] "[M]aking a strictly employment-related complaint on behalf of another does not transform the matter into one of public concern." Munafo v. Metro. Transp. Auth., 2003 WL 21799913 at *8 (citing Nonnenmann v. City of N.Y., 174 F. Supp. 2d 121, 136 (S.D.N.Y. 2001)).

[63/] See also, e.g., Tilitti v. Weise, 155 F.3d 596, 602-03 (2d Cir. 1998) (allegations related to the nature of the work assigned to plaintiffs and their pay were matters of personal interest, not public concern.); Brennan v. Straub, 246 F. Supp. 2d 360, 365-66 (S.D.N.Y. 2003) ("Speech pertaining to internal personnel disputes and working conditions is generally held not to involve matters of public concern."). Moreover, "'[e]ven as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight.'" Cahill v. O'Donnell, 75 F. Supp. 2d at 273 (quoting White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058 (2d Cir.), cert. denied, 510 U.S. 865, 114 S. Ct. 185 (1993)); see also Blum v. Schlegel, 18 F.3d at 1012 ("It is true that the fact that an employee's speech touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal."). "'A communication by an employee to an employer in the course of the employee's normal duties, in routine form, and containing standard contents, is not likely to address a matter of public concern.'" Cahill v. O'Donnell, 75 F. Supp. 2d at 273.

[64/] Accord, e.g., Singh v. City of N.Y., 524 F.3d at 372; Ruotolo v. City of N.Y., 514 F.3d 184, 189 (2d Cir. 2008); Reuland v. Hynes, 460 F.3d at 418; Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 124 (2d Cir. 2005); Melzer v. Bd. of Educ., 336 F.3d at 196; Catletti v. Rampe, 334 F.3d at 229; Pappas v. Guiliani, 290 F.3d at 146.

[65/] See also, e.g., Singh v. City of N.Y., 524 F.3d at 372; Ruotolo v. City of N.Y., 514 F.3d at
(continued...)

court should focus on the motive of the speaker, attempting to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.'" Brennan v. Straub, 246 F. Supp. 2d at 366.[66/]

To establish a prima facie case of First Amendment retaliation, a public employee "must demonstrate that '(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination.'" Cobb v. Pozzi, 363 F.3d at 102.[67/]   If a plaintiff satisfies these factors, the government can still prevail if it either "(1) demonstrate[s] by a preponderance of the evidence that

---

[65/]   (...continued)
189; Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d at 124; Melzer v. Bd. of Educ., 336 F.3d at 196; Morris v. Lindau, 196 F.3d at 110; McGuire v. Warren, 490 F. Supp. 2d 331, 338 (S.D.N.Y. 2007); Munafo v. Metro. Transp. Auth., 2003 WL 21799913 at *7 ("'Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.'"); Walker v. N.Y. City Trans. Auth., 99 Civ. 3337, 2001 WL 1098022 at *11 (S.D.N.Y. Sept. 19, 2001).

[66/]   Accord, e.g., Harris v. S. Huntington Sch. Dist., No. 06-CV-3879, 2009 WL 875538 at *12 (E.D.N.Y. Mar. 30, 2009); McGuire v. Warren, 490 F. Supp. 2d at 338.

[67/]   Accord, e.g., Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d at 124; Casucci v. Faughnan, 109 Fed. Appx. 450, 451 (2d Cir. 2004); Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003); Nicholas v. Davis, No. 03-0011, 74 Fed. Appx. 131, 134, 2003 WL 22056224 at *2 (2d Cir. Sept. 4, 2003); Johnson v. Ganim, 342 F.3d at 112; Mandell v. County of Suffolk, 316 F.3d at 382; Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2003); Conlon v. Austin, No. 01-9280, 48 Fed. Appx. 816, 817, 2002 WL 31262078 at *1 (2d Cir. Oct. 10, 2002); Morris v. Lindau, 196 F.3d at 110; Blum v. Schlegel, 18 F.3d at 1010; Brescia v. Sia, 07 Civ. 8054, 2008 WL 1944010 at *3 (S.D.N.Y. Apr. 30, 2008); Deans v. Spano, 05 Civ. 7634, 2007 WL 102987 at *3 (S.D.N.Y. Jan. 12, 2007); Barry v. N.Y. City Police Dep't, 2004 WL 758299 at *5.

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                                                **A-56**

it would have taken the same adverse action regardless of the protected speech, or (2) show that the plaintiff's expression was likely to disrupt the government's activities, and that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression." <u>Cobb</u> v. <u>Pozzi</u>, 363 F.3d at 102.[68/]  The second of these options is known as the  "<u>Pickering</u> balancing test."  <u>Cobb</u> v. <u>Pozzi</u>, 363 F.3d at 102.  If the government relies on the <u>Pickering</u> balancing test "and the balance of interests indeed weighs in the government's favor, plaintiff may still succeed by proving that the adverse action was in fact motivated by retaliation rather than by fear of disruption."  <u>Mandell</u> v. <u>County of Suffolk</u>, 316 F.3d at 383; <u>accord</u> <u>Nonnenmann</u> v. <u>City of N.Y.</u>, 2004 WL 1119648 at *15.

**B.      Storman's "Speech" Did Not Address a Matter of Public Concern and is Not Protected by the First Amendment**

Defendants argue that Storman's lawsuit and accompanying allegations "did not address a matter of public concern" and "was commenced for the vindication of rights entirely personal to" Storman.  (Dkt. No. 7: Defs. Br. at 12.)  This Court agrees, and finds that Storman's appeal of his unsatisfactory rating and his subsequent Article 78 proceeding and his first federal lawsuit "did not seek to advance a public purpose" and "did not constitute speech on a matter of public concern."  <u>Ruotolo</u> v. <u>City of N.Y.</u>, 514 F.3d 184, 189-90 (2d Cir. 2008) ("The acts of alleged retaliation against [plaintiff] bear upon the circumstances and perquisites of [plaintiff's] employment, such as reassignment, transfer, time off, and discipline," and not upon a matter of public concern).

---

[68/]      <u>See also</u>, <u>e.g.</u>, <u>Johnson</u> v. <u>Ganim</u>, 342 F.3d at 114; <u>Melzer</u> v. <u>Bd. of Educ.</u>, 336 F.3d at 193; <u>Mandell</u> v. <u>County of Suffolk</u>, 316 F.3d at 382-83; <u>Abato</u> v. <u>N.Y. City Off-Track Betting Corp.</u>, 03 Civ. 5849, 2007 WL 1659197 at *6 (S.D.N.Y. June 7, 2007); <u>Forras</u> v. <u>Andros</u>, 470 F. Supp. 2d 283, 289-90 (S.D.N.Y. 2005); <u>Barry</u> v. <u>N.Y. City Police Dep't</u>, 2004 WL 758299 at *5.

H:\OPIN\STORMAN

Storman's DOE appeal, Article 78 proceeding and first federal lawsuit related entirely to Storman's unsatisfactory rating (including the accompanying remark of substantiated corporal punishment) and loss of per session work, and primarily sought to vacate the unsatisfactory rating and to direct defendants to consider Storman "for all extra assignments including summer school on the basis of his seniority and experience excluding any consideration of the alleged incident of corporal punishment." (07 Civ. 5797, Dkt. No. 1: Compl. ¶ 60.) Storman's appeal and state and federal lawsuits, therefore, only addressed the personal financial, emotional and professional consequences of defendants' actions, and sought relief entirely personal in nature. E.g., Herbil Holding Co. v. Brook, 84 F. Supp. 2d 369, 373 (E.D.N.Y. 2000) (Plaintiff's "complaints involved matters of his own particular interest, not matters of public concern. For example, in the affidavit submitted by [plaintiff] as part of the Article 78 proceeding, he claims 'when your petitioner made requests for increases in pay pursuant to the contract with the respondent for out of title work, it was at that point that harassment, duress and threats were placed against the petitioner.' Clearly, in the Article 78 proceeding, [plaintiff] was seeking to remedy grievances relating to his individual employment situation, not to draw attention to issues of interest to the community. Even if [plaintiff] was correct and [defendant] had been unlawfully requiring employees to work outside their Civil Service classifications without additional compensation, the fact that his complaint was focused solely on his personal employment situation renders his speech unprotected."); see, e.g., Ruotolo v. City of N.Y., 514 F.3d at 190 ("The section of [plaintiff's] Complaint titled 'Consequences of the Retaliation' enumerates adverse career, financial and emotional effects that [plaintiff] suffered personally. The relief sought is also almost entirely personal to [plaintiff], including compensatory damages and an

**APPENDIX A: Report and Recommendation**                    **A-58**

injunction relating to [plaintiff]'s employment records.").[69]  Moreover, Storman's claim, in the instant

litigation, that defendants have "made [Storman] an example to other teachers and counselors of

what will happen to them if they exercise their First Amendment rights" (see Compl. ¶ 110) does not

change the personal nature of Storman's original appeal and Article 78 proceeding and original

federal lawsuit.  See Ezekwo v. N.Y. City Health & Hosps. Corp., 940 F.2d at 782 ("The district

court correctly reasoned that the mere fact that one or two of [plaintiff]'s comments could be

construed broadly to implicate matters of public concern does not alter the general nature of her

statements.").

       Storman's First Amendment retaliation claim, therefore, should be DISMISSED.

---

[69]  See also, e.g., Ezekwo v. N.Y. City Health & Hosps. Corp., 940 F.2d 775, 782 (2d Cir.1991) ("Viewed objectively and as a whole, [plaintiff]'s statements did not address matters of public concern. Her complaints were personal in nature and generally related to her own situation within the [defendant's] residency program. Our review of her prolific writings convinces us that [plaintiff] was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation and individual development as a doctor."); Sassone v. Quartararo, 07 Civ. 4142, 2009 WL 415691 at *5 (S.D.N.Y. Feb. 18, 2009) ("Plaintiffs . . . adequately allege that they spoke as citizens on a matter of public concern when they filed their initial Complaint in this action" because "the relief sought by Plaintiffs in that Complaint included 'a judgment . . . permanently enjoining Defendants' institution/maintenance of'" conditions intended to prevent plaintiffs from speaking on a matter of public concern.  "By seeking an injunction that would remove the barriers to Plaintiffs' speech as citizens on a matter of public concern, Plaintiff's original Complaint thus involved something more than 'the airing of generally personal grievances.'  Rather, Plaintiffs' original Complaint plausibly raised the possibility that prospective injunctive relief could directly benefit the larger public.") (citation omitted); Guerrieri v. Town of Geneva, No. 06-CV-6581, 2009 WL 349287 at *9 (W.D.N.Y. Feb. 9, 2009) (Plaintiff's First Amendment retaliation claim dismissed because original Title VII sexual harassment lawsuit that plaintiff claims precipitated the retaliation constituted speech "'sought to redress [her] personal grievances.  It did not seek to advance a public purpose.").

H:\OPIN\STORMAN

**APPENDIX A: Report and Recommendation**                                    **A-59**

60

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Dkt. No. 6) should be DENIED as to Storman's Due Process claims against defendants DOE and Klein, and GRANTED as to Storman's First Amendment retaliation claim against defendants Marsella and Boyles.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1040, and to my chambers, 500 Pearl Street, Room 1010. Any requests for an extension of time for filing objections must be directed to Judge Stein (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy

61

v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a),

6(d).

Dated:      New York, New York
             April 20, 2009

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies to:    John C. Klotz, Esq.
            Daniel Chiu, Esq.
            Judge Sidney H. Stein

H:\OPIN\STORMAN

Index No. 09 CV 00338 (SHS)(AJP)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

GLENN STORMAN,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
JOSEPHINE MARSELLA and DENNIS BOYLES

Defendant,

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

JOHN C. KLOTZ (JK4172)
Attorney for the Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600
johnklotz@johnklotz.com

# TABLE OF CONTENTS

A.   Statement of Case .................................................................................. 1

    (1)    The case at bar ........................................................................ 1

    (2)    Concurrent Article 78 proceeding ........................................... 3

    (3)    Appendix of Exhibits and Appendix of Exhibits appended to this
Memorandum ........................................................................................ 3

B.   Argument .............................................................................................. 3


POINT ONE ......................................................................................................... 4

Because Of Plaintiff's Important Liberty Interests At Stake, Plaintiff Was Entitled To
The Due Process Of Law Which Included A Hearing, Confrontation With His Accuser
And A Determination Upon The Merits Supported By At Least A Preponderance Of The
Evidence. .............................................................................................................. 4

   Stigma Plus .......................................................................................... 4

       The existence of a post deprivation remedy ........................................ 5


POINT TWO ........................................................................................................ 7

The Weight Of Authority Is That Section 1983 Damages Are Not Recoverable In An
Article 78 Proceeding And May Be Pursued In A Collateral Action In Federal Court. ...... 7


POINT THREE ..................................................................................................... 8

By Whatever Standard Is Applied, There Is No Evidence That Plaintiff Was Guilty Of
An Act Corporal Punishment, ............................................................................. 8


POINT FOUR ...................................................................................................... 9

The actions of the Defendant Chancellor inflicted a "stigma plus" deprivation of liberty
on Plaintiff ........................................................................................................... 9

   A.   The provisions of the UFT contract ............................................... 9

     (1)    The stigma ...................................................................... 10

     (2)    Publication ..................................................................... 10

     (3)    The immediate impact .................................................... 12


POINT FIVE ....................................................................................................... 14

As alleged, Plaintiff's cause of action pursuant to Section 1983 did not arise until the
action of the Chancellor sustaining his unsatisfactory rating on the ground of a
substantiated incident of corporal punishment. It is not barred by the statue of limitations.
........................................................................................................................... 14


POINT SIX .......................................................................................................... 14

The Complaint Fairly Alleges Actionable Retaliation By Defendants Boyles And
Marsella ............................................................................................................. 14

i

POINT SEVEN...................................................................................................16
In The Event That Court Finds That The Complaint Fails To State A Cause Of Action,
Leave Ought To Be Granted To File An Amended Complaint. .....................................16

CONCLUSION...................................................................................................17
The Unsatisfactory Rating Has Damaged The Plaintiff Permanently And Was The Result
Of A Procedure That Denied The Plaintiff Due Process . The Complaint States Valid
Causes Of Action. In The Alternative, The Court Ought Grant Leave To File An
Amended Complaint........................................................................................17

**APPENDIX B: Planitiff's Memorandum in Opposition**                    **B-3**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
                                       :

GLENN STORMAN                         :    Index No. 09 CV 00338
                                        :          (SHS)(AJP)
                                        :
                      Plaintiff,  :

              -against-         :

JOEL I. KLEIN, in his capacity as Chancellor of the New  :
York City Department of Education; NEW YORK CITY     :
DEPARTMENT OF EDUCATION; JOSEPHINE            :
MARSELLA; and DENNIS BOYLES,               :

                       Defendants.  :

-----------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

**A.**    **Statement of Case**

*(1)*    *The case at bar*

    Plaintiff is a tenured guidance counselor employed by the defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYC DOE"). Defendant JOEL KLEIN (the Chancellor") is Chancellor of the defendant NYC DOE. In 2004, plaintiff was wrongly accused of corporal punishment and, although all of the participants acknowledged that he was not guilty of acts constituting corporal punishment, he was nonetheless found guilty of a substantiated incident of corporal punishment. That resulted in his receiving an unsatisfactory "U" rating. After an appeal of that rating was denied by the Chancellor, he commenced an Article 78 proceeding in N.Y. State Supreme court and an action pursuant to 42 USC § 1983 in this Court. (Complaint, ¶ 1.[1]

---

[1] The Complaint in his action will be cited as "Complaint." Exhibits to the Complaint will be cited as "Cmp. Ex.")

The result of that rating cost him his contractual retention rights to "per session" assignments including assignment as a Summer School Teacher and as a Home Instructor pursuant to the Defendant's Home Instruction Program.[2] (Cmp. ¶ 21)

The State Supreme Court, Hon. Justice Marcy Friedman entered an order setting aside the determination of the Chancellor and remanded the matter back to NYC DOE for specific findings of fact justifying the finding of substantiated corporal punishment. See decision of Justice Friedman, Cmp. Ex. A.

The United States District Court, the Hon. Sidney Stein, U.S.D.J. on consent of the parties dismissed the Civil Rights Action without prejudice as moot and tolled the running of the statute of limitations pending the determination of the remand. See Cmp. Ex. B, proceedings before Judge Stein.

However, on remand, the Chancellor, merely reissued the same determination without making any of the factual findings required by Justice Friedman. See Cmp. Ex. C, Chancellor's decision on remand.

Concurrently, defendants JOSEPHINE MARSELLA (MARSELLA") a supervising principal, and DENNIS BOYLES ("BOYLES"), both of whose professionalism was called into question by the first determination, instigated bogus charges against the plaintiff and that resulted in a second "U" rating. (Complaint, ¶¶ 70-97).[3]. The Second Count of this Complaint states a claim for retaliation in further violation of plaintiff's constitutional rights (Complaint, ¶¶ 105-119).

As a result of the defendants actions, plaintiff has already suffered more than $100,000 in damages and reasonably anticipates many hundreds of thousands of dollars more. (Complaint, ¶¶103-194, 114-115)

---

[2] The Complaint does use the contractual words of art - "per session" but that is the part of the UFT contract that governs those assignments.

[3] An appeal by plaintiff of the rating to the Chancellor has been filed but has yet to be heard.

**APPENDIX B: Planitiff's Memorandum in Opposition**                    **B-5**

*(2)     Concurrent Article 78 proceeding*

Annexed to the DOE's moving papers is a copy (sans exhibits) of plaintiff's Article 78 proceeding in the NYS Supreme Court for a review of the Chancellor's second determination. That petition was answered by the defendant DOE and was orally argued before Hon. Justice Shirley W. Konreich on Thursday, March 12, 2009. It is now *sub judice.*[4]

*(3)     Appendix of Exhibits and Appendix of Exhibits appended to this Memorandum*

Appended to this Memorandum are extracts of relevant portions of the contract between the United Teachers Union ("UFT") and the DOE. The contract is referred to in the petition and the plaintiff's rights arise form the provisions of the contract.

In addition, an Appendix of the Exhibits attached to the NYS proceeding that were omitted from the copy of the petitioner submitted by defendants as their Exhibit B is submitted herewith.

All of these documents clearly come within the ambit of those that can be considered by the Court without conversion of the motion to dismiss to a motion for summary judgment.

**B.     <u>Argument</u>**

The actions of the defendant DOE have stigmatized plaintiff as an unfit teacher who was guilty of a substantiated incident of corporal punishment. The Chancellor in his review of the rating had the power to expunge said rating and restore plaintiff to his status quo including awarding of lost income. Instead he substantiated the "U" rating on the basis of a totally unfounded, and in fact unsubstantiated, incident of corporal punishment.

The defendants Boyles and Marsella whose competency has been called into question by their actions in this affair have contrived to retaliate against the plaintiff by instigating yet another "U" rating. An accumulation of three such ratings could lead to plaintiff's dismissal and will endanger plaintiff's pension rights altogether.

---

[4] Plaintiff anticipates a decision from the Justice Konreich in the fairly near future and will supply the same to the Court when it is available.

**APPENDIX B: Planitiff's Memorandum in Opposition**                                          **B-6**

The actions of the defendants that have created a "stigma plus" for the plaintiff provides a sound basis for this action pursuant to 42 U.S.C. § 1983 ("Section 1983")

**POINT ONE**
**BECAUSE OF PLAINTIFF'S IMPORTANT**
**LIBERTY INTERESTS AT STAKE, PLAINTIFF**
**WAS ENTITLED TO THE DUE PROCESS OF LAW**
**WHICH INCLUDED A HEARING,**
**CONFRONTATION WITH HIS ACCUSER AND A**
**DETERMINATION UPON THE MERITS**
**SUPPORTED BY AT LEAST A PREPONDERANCE**
**OF THE EVIDENCE.**

There are four standards of evidentiary review of administrative:

(1) Abuse of discretion where no hearing is required NY CPLR 7803(3) *Scherbyn v. Wayne-Finger Lakes BOCES,* 77 N.Y.2d 753 (1991);

(2) Where a hearing is required, substantial evidence is necessary to support the challenged determination. NY CPLR 7803(4) *Pell v. Board of Education,* 34 N.Y.2d 222 (1974);

(3) A preponderance of the evidence where an action results in a "Stigma plus" denial of a liberty interest (*Valmonte v Bane*, 18 F. 3d 992, 1000-1001 [2d Cir. 1994])

(4) Clear and convincing evidence where the liberty interest threatened is of the highest importance (*Santosky v. Kramer*, 455 U.S. 745, 766, 71 L. Ed. 2d 599, 102 S. Ct. 1388 [1982] permanent loss of parental rights)

**Stigma Plus**

Where a state imposes on an employee a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities, then, because deprivation not only of present government employment, but also of future opportunity for government employment, is no small injury, the state is required by procedural due process to accord to the teacher notice and an opportunity to refute the charges before state officials. *Valmonte v Bane*, 18 F. 3d 992, 1000-1001 (2d Cir. 1994). The issue in

this case is whether the bundle of injuries to Plaintiff caused by his "U" rating are such as to constitute a denial to him of his protected liberty interests without due process or law which would include requiring findings of fact supported by a "preponderance of the evidence." Plaintiff's status has victim of a "stigma plus will be discussed in more detail in POINT FOUR.

*The existence of a post deprivation remedy*

Defendant contends that the existence of a "post deprivation" remedy" defeats plaintiffs claim to a denial of due process. However, where the denial of due process is in the context of an established state process – as it is in this case – then the existence of a post deprivation remedy is not relevant and does not defeat a due process claim. *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)(collecting cases), cert. denied, 521 U.S. 1140, 118 S. Ct. 15, 138 L. Ed. 2d 1048 (1997).

In *Hellenic,* The Court of Appeals stated:

> "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. *See Hudson v. Palmer, 468 U.S. 517, 532, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984)*; *Parratt v. Taylor, 451 U.S. 527, 541, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986)*. In the latter case, the *Due Process Clause of the Fourteenth Amendment* is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post deprivation remedy. *Hudson v. Palmer, 468 U.S. at 531, 533*. When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post deprivation procedures will not, ipso facto, satisfy due process. *Id. at 532*; *Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982).*" *Hellenic American Neighborhood Action Comm. v. City of New York,* supra, 101 F.3d at 880

Where, the claim is based on the "random, unauthorized act" of state employees and there is a viable post-deprivation remedy, the proper result is to dismiss the Section 1983 claim, but the federal courts are available where the actions were not random, unauthorized acts:

**APPENDIX B: Plaintiff's Memorandum in Opposition**                    **B-8**

> "[I]f there *is* a constitutional violation, federal courts are available to hear
> *§ 1983* suits despite the availability of adequate state procedures. *Monroe
> v. Pape, 365 U.S. at 183*. *Parratt*, *Hudson* and their progeny, however,
> emphasize that there *is no* constitutional violation (and no available *§
> 1983* action) when there is an adequate state post deprivation procedure to
> remedy **a random, arbitrary deprivation of property or liberty.**
> *Zinermon v. Burch, 494 U.S. at 132*; *Parratt v. Taylor, 451 U.S. at 541*;
> *Hudson v. Palmer, 468 U.S. at 531, 533*" (Emphasis added) *Hellenic
> American Neighborhood Action Comm. v. City of New York,* supra, 101
> F.3d at 882

In *Reyes v. Erickson*, 238 F.Supp.2d 632, 636 (S.D.N.Y. 2003) the court applied the reasoning of the *Hellenic* case to dismiss a Section 1983 claim which the Court found to meet the "random and unauthorized" logic of *Hellenic*. It also noted the discussion of *Hellenic in John Gil Constr., Inc. v. Riverso*, 72 F. Supp.2d 242, 251 n.13 (S.D.N.Y. 1999).

The issue to be decided then is whether this case is more like *Reyes* or more like *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). In essence, this distinction among acts pursuant to a state sanctioned process and "random, unauthorized acts" is a variant of the state action element of a Section 1983 claim. Where, as it in this case, the deprivation is the result of a state process, it is state action. However, where, as is **not** the case here, where it is a random, unauthorized act and the state provides a remedy, the random unauthorized act is not state action.

6

**POINT TWO**
**THE WEIGHT OF AUTHORITY IS THAT SECTION**
**1983 DAMAGES ARE NOT RECOVERABLE IN AN**
**ARTICLE 78 PROCEEDING AND MAY BE**
**PURSUED IN A COLLATERAL ACTION IN**
**FEDERAL COURT.**

The Complaint alleges damages as follows:

99, By reason of the premises aforesaid, Defendant NYC DOE and the Chancellor, acting under color of law have deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983.

100. By reason of the premises aforesaid, Plaintiff has been damaged in his property by reason of lost income and reasonably anticipated retirement benefits in the some of $1,000,000.

101. Defendant's actions has caused Plaintiff severe emotional distress and anxiety, caused him to lose sleep and suffer pain and anguish because of the threat to his continued employment and the destruction of his career and reputation.

102. The actions of the defendant damaged Plaintiff's otherwise harmonious relationship with his wife, creating domestic friction, further causing and enhancing his emotional distress.

103. By reason of his emotional distress and damage to his marital relationship, plaintiff has been damaged in sum to be determined but not less than $1,000,000.

104. By reason of the premises aforesaid the Plaintiff is entitled to judgment in the sum of $2,000,000 together with the costs and disbursements of this action including reasonable attorney fees pursuant to 42 U.S.C. §1988.

Both N.Y. State courts and federal courts, presented with issues arising in federal actions brought subsequently to, or concurrently with, an Article 78 proceeding involving the same operative facts, have recognized the limited scope of damages recoverable in an Article 78 proceeding, as contrasted with an action pursuant to Section 1983.

In *Schwab v. Bowen*, 41 N.Y.2d 907, 394 N.Y.S.2d 616, 363 N.E.2d 341 (1977), the New York State Court of Appeals held that "Damages may not be awarded in this proceeding because damages, if any, would not be incidental to primary relief ( *CPLR 7806*). This determination is without prejudice, of course, to any other action petitioners

7

may be advised to take." In *Finklestein v. Capuano*, 792 F.2d 275, 278-82 (2d Cir. 1986)[5] the Second Circuit Court of Appeals determined that damages for civil rights violations are not recoverable in Article 78 proceedings, In *Resource N.E. Of Long Island, Inc. v. Town Of Babylon*, 28 F. Supp. 2d 786, 792 (E.D.N.Y. 1998), the District Court held that Article 78 is not adequate remedy for Section 1983 claims because it does not offer the full range of relief of Section 1983, See also *Reape v. Adduci*, 151 A.D.2d 290, 293, 542 N.Y.S.2d 562, 564 (1st Dep't 1989) where the First Department of the N.Y.S. Appellate Division held that civil rights actions for damages are not incidental to Article 78 reviews of administrative determinations.

**POINT THREE**
**BY WHATEVER STANDARD IS APPLIED, THERE**
**IS NO EVIDENCE THAT PLAINTIFF WAS GUILTY**
**OF AN ACT CORPORAL PUNISHMENT,**

According to Chancellor's Regulation A-420:

> ***"Regulations of the Commissioner §100.2(I)(3)(i) define corporal punishment as any act of physical force upon a pupil *for the purpose of punishing* that pupil. Such term shall not mean the use of reasonable physical force for any of the following purposes:
>
> "1. to protect oneself from physical injury;
>
> "2. to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using excessive force);
>
> "3. to protect the property of the school or of others; or
>
> "4. to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above." (Emphasis supplied)

The issue, therefore, is whether, Mr. Storman committed an act of physical force on Student A **for the purpose of punishing him**. It is an offense of intent. There are no

---

[5] For some reason, not apparent to counsel, this case is cited as *Davidson v. Capuano* in *Resource N.E. Of Long Island, Inc. v. Town Of Babylon* . supra.

8

facts in this record to indicate that Mr. Storman exerted "physical force" upon Student A for the purpose of punishment – or any other purpose at all. Plaintiff submits that whatever test is applied, the result is the same, the determination must be set aside and the "U" rating based upon a substantiated incident of corporal punishment expunged from Plaintiff's record.

In the case at bar, both the investigating officer and the supervising principal conceded that the facts did not amount to corporal punishment. (Complaint Exhibit I, TR 38-40). Given those admissions and the total absence from this record of any evidence that Mr. Storman inflicted physical force on Student A for the purpose of punishing him, the "U" rating is patently in error.

Yet, the Chancellor, after the hearing in which these admissions were made, sustained the rating on the grounds of a "substantiated incident of corporal punishment".

## POINT FOUR
### The actions of the Defendant Chancellor inflicted a "stigma plus" deprivation of liberty on Plaintiff

**A.      <u>The provisions of the UFT contract.</u>**

The provisions of the UFT Contract are properly before the Court. See *International Audiotext Network v. A.T. & T.*, 62 F.3d 69, 72 (2d Cir. 1995) where the court stated:

> "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment. *Id.* at 47-48." *International Audiotext Network v. A.T. & T.*, SUPRA, 62 F.3d a6 72

Plaintiff has set forth in paragraphs "19' to "22" of the Complaint, his liberty interest and the damage to that interest by the Chancellor's determination. "U" rating is precisely

the type of stigma that will follow him and foreclose employment opportunities for him.
In terms of his liberty rights, the Complaint specifically alleges:

> "19. For over 28 years Plaintiff has been employed by the New York City Board of Education and for the last 19 years he has been employed as a guidance counselor. During this time, Plaintiff has enjoyed an excellent reputation having earned the high regard of parents, students, his teaching colleagues and supervisors.

> "20. Plaintiff's tenure rights are vested in him by reason of the provisions of the New York Sate Education Law, the contract between Defendant and the his union, the United Federation of Teachers ("UFT") and rules, regulations and procedures promulgated by the defendant pursuant to its governmental power.

> "21. Among the rights and privileges afforded Plaintiff by the UFT Contract are "retention rights" which allows him to obtain and retain extra-assignments including assignment as a summer school teacher and as a Home Instructor pursuant to the Defendant's Home Instruction Program.

> "22. Plaintiff's vested rights of retention and his ability to pursue professional opportunities afforded him by his experience and previously unblemished reputation are all integral parts of his liberty that is protected by the United States Constitution."

Appended to this Memorandum are extracts from the UFT Contract including the provisions for retention rights. (App. p. 2-3). Those rights include a specific right to appeal from an unsatisfactory rating to protect those rights. The issue is whether, the these allegations of the complaint, sufficiently allege a "stigma plus" deprivation of plaintiff's liberty.

*(1)    The stigma*

There can be no doubt, or serious argument, that imposition of a "U" (Unsatisfactory) rating upon plaintiff and its affirmance by the Chancellor on the grounds of a substantiated incident of corporal punishment is a stigma that will prevent plaintiff from getting any teaching job should he seek employment in his chosen career.

*(2)    Publication*

It is not necessary that the stigma be widely circulated. In *Brandt v. Board of Cooperative Educational Services*, 820 F.2d 41 (2nd Cir. 1987), the Court of Appeals

found the creation of a permanent file containing the allegations which could be accessed was sufficient publication. The court said:

> "In this case, we consider the effect on Brandt's future job opportunities since that is the harm he contends will result **\*45** from dissemination of the reasons for his discharge. If Brandt is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his future job opportunities. See *Velger v. Cawley,* 525 F.2d 334, 336-37 (2d Cir.1975), rev'd on other grounds sub nom. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Brandt need not wait until he actually loses some job opportunities because the presence of the charges in his personnel file coupled with a likelihood of harmful disclosure already place him "between the devil and the deep blue sea." *Velger v. Cawley,* 525 F.2d at 336. In applying for jobs, if Brandt authorizes the release of his personnel file, the potential employer would find out about the allegations of sexual misconduct and probably not hire him. If he refuses to grant authorization, that, too, would hurt his chances for employment. Id. Thus, Brandt, unlike the employee in *Bishop,* would not be "as free as before to seek another" job.
>
> Courts of appeals for other circuits have similarly concluded that the public disclosure requirement has been satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers. See *Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1113 n. 24 (D.C.Cir.1985); *Burris v. Willis Indep. School Dist., Inc.,* 713 F.2d 1087, 1092 (5th Cir.1983); *Hogue v. Clinton,* 791 F.2d 1318, 1322 n. 7 (8th Cir.), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 95 L.Ed.2d 704 (1986); *Bailey v. Kirk,* 777 F.2d 567, 580 n. 18 (10th Cir.1985); see also *Larry v. Lawler,* 605 F.2d 954, 958 (7th Cir.1978). We hold, therefore, that it was error for the district court to grant summary judgment to appellees, and to deny Brandt the chance to substantiate his claim that future employers are likely to gain access to his personnel file and refuse to hire him." *Brandt v. Board of Cooperative Educational Services*, *Brandt v. Board of Cooperative Educational Services*, supra, 840 F,2d at 44-45

There is an added factor in this case that was not present in the *Brandt* case. That is the provision for reporting violations to the State Department of Education. See Complaint, ¶¶ 24 & 63)

Given the authority of the *Brandt* case which denied summary judgment in a similar situation, it is submitted that the Complaint adequately alleges publication.

*(3)      The immediate impact*

The defendants cite a plethora of District Court cases for the proposition that the loss of "overtime pay" does not amount to a "stigma plus." Only one of them, involve even tangentially the issue of "per session assignments." *Grunberg v. Board of Education*, 2006 U.S. Dist. Lexis 22424 *23-4 (E.D.N.Y. Mar. 30, 2006) cited on page 9 of Defendants' Memorandum.

Plaintiff submits that the "per session" employment of plaintiff was not simply overtime. It was independent work assignments that he was compensated for on a different basis. Typically, overtime work is the same work as regular time work but compensated for at a higher level of pay. That is not the case with per session work. More importantly, per session employment as its own "bill of rights" including its own right to appeal in case of a "U" rating. See Appendix A, annexed to this Memorandum.

In *Valmonte,* supra, the Court of Appeals noted that it was not necessary to wait until a plaintiff was actually refused work, for an action to inure.

> "The appellees contend that Valmonte's claim is not ripe, because Valmonte has not actually been deprived of employment or suffered any other injury. They argue that Valmonte has not made a showing that she has even looked for a job in the field **\*999** of child care, and that she has only alleged that she had been a "paraprofessional in the school system" in the past.
>
> "As Valmonte responds, however, it is not necessary that she wait until she is actually injured to file this suit. Valmonte does not need to "await the consummation of threatened injury to obtain preventative relief." *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 664, 67 L.Ed. 1117 (1923); *see Berger v. Heckler,* 771 F.2d 1556, 1563 (2d Cir.1985) (plaintiff need not wait until "consummation" of threatened injury in order to sustain suit). Her claim is ripe if the perceived threat due to the putatively illegal conduct of the appellees is sufficiently real and immediate to constitute an existing controversy. *See Blum v. Yaretsky,* 457 U.S. 991, 1000, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982)". *Valmonte v Bane*, supra, 18 F. 3d at 998-999

The Supreme Court in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), set forth the criteria for measuring when the deprivation of a right or status under state law because a constitutionally protected right or status:

**APPENDIX B: Planitiff's Memorandum in Opposition          B-15**

It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status. In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), for example, the State by issuing drivers' licenses recognized in its citizens a right to operate a vehicle on the highways of the State. The Court held that the State could not withdraw this right without giving petitioner due process. In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the State afforded parolees the right to remain at liberty as long as the conditions of their parole were not violated. Before the State could alter the status of a parolee because of alleged violations of these conditions, we held that the Fourteenth Amendment's guarantee of due process of law required certain procedural safeguards.

In each of these cases, as a result of the state action complained of, *a right or status previously recognized by state law was distinctly altered or extinguished*. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions…." (Emphasis supplied) *Paul v. Davis,* supra, 424 U.S. at 710-711

The important language of the *Paul* decision is that the inquiry is whether the right or status is "distinctly altered or extinguished." In the instant case the right of retention of plaintiff's per session work is firmly established and it is submitted that it's revocation by the affirmed "U" rating is denial of a right or status under the language in Paul.

13

**POINT FIVE**

**As alleged, Plaintiff's cause of action pursuant to Section 1983 did not arise until the action of the Chancellor sustaining his unsatisfactory rating on the ground of a substantiated incident of corporal punishment. It is not barred by the statue of limitations.**

The issue of the statute of limitations is entwined with the issue of the administrative hearing provided the plaintiff. Because the Chancellor had the obligation to make the plaintiff whole had he found in his favor, than the statute of limitations can not begin to run until his refusal to do so completed the action of the DOE.

In *Segal v. City of New York*, , 459 F.3d 207 (2d Cir. 2006), the plaintiff failed to pursue post-deprivation remedy. Had he pursued the remedy and then timely appealed any adverse determination, he would not have been barred.

In this case,  given the powers of the Chancellor both through the UFT Contract and the regulations, any resort to federal court must follow the post-deprivation hearing and the issue is the constitutional standard to be applied to that hearing.

**POINT SIX**

**THE COMPLAINT FAIRLY ALLEGES ACTIONABLE RETALIATION BY DEFENDANTS BOYLES AND MARSELLA**

The First Amendment of the United States Constitution provides:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The principal cases relied upon by the defendants in seeking dismissal of retaliation set forth in the Second Count of the Complaint are *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1957 (2006) and *Ruotolo v. City of New York*, 514 F.3d 184, 188-90 (2nd Cir. 2008). *Garcetti* is a pure speech case in that it held that speech by a public employee in his governmental capacity is not protected speech by the First Amendment. The decision did not concern the redress of grievances. The retaliation was for speech by a public employee that was not protected by the First Amendment.

**APPENDIX B: Planitiff's Memorandum in Opposition**          **B-17**

*Routolo* is more problematical because it appears to pour the First Amendment right to petition for grievances into the public interest limitation of right to free speech.

However, there is one important distinction that ought to be addressed. In this case, the first action in this court alleged a "stigma plus" denial of plaintiff's constitutionally protected liberty interests. That does not seem to be the allegation or fact of *Ruotolo*. If in fact the constitutional rights to liberty are implicated in the first action filed, then it would be truly extraordinary to hold there is no constitutional "right to petition for redress of grievances" for a citizen seeking vindication of his Constitutional rights.

In *Cate v. Oldham*, 707 F.2D 1176, 1190 (11th Cir. 1983), the Seventh Circuit Court of Appeals found a strong public interest in protecting the right to petition for grievances pursuant to the First Amendment.

> The strong public interest in protecting First Amendment values combined
> with the interest in giving the state an opportunity to rule on this issue
> outweighs any countervailing interest in an uninterrupted malicious
> prosecution proceeding: hence the public interest favors injunctive relief.
> 1190

In *Milhouse v. Carlson*, 652 F.2D 371, 373 (3rd Cir. 1981), the Third Circuit Court of Appeals said:

> "We read appellant's complaint as alleging that he was subjected to a
> conspiratorially planned series of disciplinary **[\*\*8]** actions as retaliation
> for initiating a civil rights suit against prison officials. Such allegations, if
> proven at trial, would establish an infringement of Milhouse's first
> amendment right of access to the courts."

In *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), the Sixth Circuit Court of Appeals analyzed the right to petition for grievances in a prison context and found that an retaliation against an individual seeking redress could be the basis of retaliation claim..

Plaintiff submits that the fact that he has alleged a "stigma plus" deprivation of his liberty in both his original Article 78 proceeding and his original complaint in federal court, distinguish his case from *Routolo*. However, even if his distinction is disregarded, he has the right to advance it for argument to the Second Circuit Court of Appeals and because it has not yet been clearly resolved by the Supreme Court, to the Supreme Court.

**POINT SEVEN**
**IN THE EVENT THAT COURT FINDS THAT THE**
**COMPLAINT FAILS TO STATE A CAUSE OF**
**ACTION, LEAVE OUGHT TO BE GRANTED TO**
**FILE AN AMENDED COMPLAINT.**

In the event that the Court should find for any reason that the Complaint fails to state a cause of action, leave is requested to file a second amended complaint.

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When a complaint is dismissed, leave to amend should be freely granted. In *Foman v. Davis,* 371 U.S. 178; 83 S. Ct. 227; 9 L. Ed. 2d 222 (1962) the Supreme Court held:

> "Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the moving, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* supra, 371 U.S. at 182

**CONCLUSION**

**THE UNSATISFACTORY RATING HAS DAMAGED THE PLAINTIFF PERMANENTLY AND WAS THE RESULT OF A PROCEDURE THAT DENIED THE PLAINTIFF DUE PROCESS . THE COMPLAINT STATES VALID CAUSES OF ACTION. IN THE ALTERNATIVE, THE COURT OUGHT GRANT LEAVE TO FILE AN AMENDED COMPLAINT.**

Dated: New York, New York
        March 13, 2009

                                    *s/John C. Klotz*
                        _____
                            JOHN C. KLOTZ (JK 4162)
                            Attorney for the Plaintiff
                            350 Fifth Avenue, Suite 4810
                            New York, New York 10118-4810
                                (212) 630-2600

**APPENDIX B: Planitiff's Memorandum in Opposition                    B-20**

**AGREEMENT**

between

**THE BOARD OF EDUCATION**

of the

**City School District**

· of the ·

**City of New York** ·

and

**UNITED FEDERATION OF TEACHERS**

**Local 2, American Federation
of Teachers, AFL-CIO**

covering

**TEACHERS**

**June 1, 2003 – October 12, 2007**

 3-5

*Art. 15C2a*

## 2. Retention

Prior service shall govern in the retention of per session teachers employed on a regular basis in per session activities as follows:

a. Teachers with at least two years of continuous satisfactory service in a particular activity shall have priority for retention in the same activity for the following school year. Teachers with retention rights in an activity will not lose those rights if their service is interrupted for a period of not more than one year because of sick leave without pay or involuntary change of day school session, or sabbatical leave. Such teachers must return to service in the same activity at the first reorganization of the activity following the interruption of their service for the reasons stated above.

b. Teachers who have been granted priority for retention in one per session activity shall not be granted such priority for any other per session activity.

c. Teachers will be permitted to serve in more than one per session activity only if no other qualified applicants are available. The Union shall be given a list of per session positions which are held by teachers who have no retention rights in those positions and who are serving in more than one per session activity. Per session activities of 25 hours or less and certain other activities as mutually agreed between the Board and the Union are not counted when determining the number of per session activities served in.

d. No teacher who had retention rights in a per session activity on September 1, 1969, shall be displaced by reason of the Chancellor's determining that thereafter the position need not be held by a teacher. During the period he/she remains employed in that per session position, the incumbent having retention rights as of September 1, 1969, shall be paid at the teacher compensation rate prescribed in this Agreement.

e. If a per session position occupied by a teacher is terminated and is subse-

93

quently restored within the period of six months, the restored position shall be offered to its last teacher incumbent before any other person is employed to fill it.

f. A teacher with retention rights who is promoted to teacher in charge shall not lose his/her retention rights as a teacher in the activity in the event that he/she receives an unsatisfactory rating as teacher in charge.

g. So long as they continue to exercise their retention rights, no per session teachers who had retention rights in an adult education activity on September 8, 1987 shall be displaced by reason of the provisions of Article Fourteen (Rates of Pay and Working Conditions of Adult Education Teachers) of this Agreement unless a layoff or reduction in hours of a primary adult education employee would result. The rights of a per session teacher who acquires retention rights in an adult education activity after September 9, 1987 shall be subordinate to the rights of primary adult education teachers as set forth in Article Fourteen, A, E (Hours), F (Excessing) and G (Layoff and Recall). In addition, the Board agrees to follow a policy of attrition with respect to those per session teachers who had retention rights in an adult education activity on September 8, 1978 so long as they continue to exercise their retention rights in the adult education activity.

**3. Appeals from Unsatisfactory Ratings**

Per session teachers who receive unsatisfactory ratings shall be entitled to the review procedures before the Chancellor as prescribed in Section 5.3.4 of the by-laws of the Board of Education.

**ARTICLE 21D, p. 115-116**

**D. Discontinuance of Probationary Service and Appeals of Unsatisfactory Ratings**

1. Regular substitutes and teachers on probation, except as provided in subparagraph 2 below, shall be entitled to the review procedures before the Chancellor as prescribed in Section 4.3.2 of the by-laws of the Board of Education.

P. 116

By-law 4.3.2 procedures for the review of a recommendation by a superintendent for discontinuance of probationary service of a teacher shall be modified to provide for the following:

a. The 4.3.2 committee shall be a tripartite committee of professional educators, one selected by the teacher, one by the Board and a third selected by the other two from a list agreed upon by the Board and the Union.

b. The committee will make an advisory recommendation to the community school board or the Chancellor for central programs within 20 days after the hearing.

c. The costs of the teacher's representative shall be paid by the teacher. The costs of the Board's representative shall be paid by the Board. The costs of the mutually selected member of the committee shall be shared by the Board and the teacher.

2. Teachers on probation who have completed at least three years of service on regular appointment in the school shall be entitled, with respect to the discontinuance of their probationary service, to the same review procedures as are established for tenured teachers under Section 3020-a of the Education Law.

3. Teachers who receive doubtful or unsatisfactory ratings may appeal under Section 4.3.1 of the by-laws of the Board of Education.

**ARTICLE 21D, p. 115-116**

**ARTICLE 21H p. 122**

### H. False Accusations

Knowingly false accusations of misconduct against employees will not be tolerated.

If an accusation of sexual misconduct or physical abuse against an employee is found by the Board or Special Commissioner of Investigation to have been knowingly false when made, the Board will take the following actions to restore the falsely accused employee's reputation: removing all references to the charges from the employee's personnel file(s) and adding evidence of the unfounded nature of the charge to departmental files that may have to be maintained to satisfy other legal requirements, if any; and restoring any back pay owed with interest and, at the employee's request, confirming to any regulatory agency the finding that the employee was falsely accused. In addition, where the knowingly false accusation was made by a student of the employee, absent compelling and extraordinary circumstances the student will be permanently reassigned from the employee's class.

**ARTICLE 21H p. 122**

**ARTICLE 21D, p. 115-116**

**D. Discontinuance of Probationary Service and Appeals of Unsatisfactory Ratings**

1. Regular substitutes and teachers on probation, except as provided in subparagraph 2 below, shall be entitled to the review procedures before the Chancellor as prescribed in Section 4.3.2 of the by-laws of the Board of Education.

P. 116

By-law 4.3.2 procedures for the review of a recommendation by a superintendent for discontinuance of probationary service of a teacher shall be modified to provide for the following:

a. The 4.3.2 committee shall be a tripartite committee of professional educators, one selected by the teacher, one by the Board and a third selected by the other two from a list agreed upon by the Board and the Union.

b. The committee will make an advisory recommendation to the community school board or the Chancellor for central programs within 20 days after the hearing.

c. The costs of the teacher's representative shall be paid by the teacher. The costs of the Board's representative shall be paid by the Board. The costs of the mutually selected member of the committee shall be shared by the Board and the teacher.

2. Teachers on probation who have completed at least three years of service on regular appointment in the school shall be entitled, with respect to the discontinuance of their probationary service, to the same review procedures as are established for tenured teachers under Section 3020-a of the Education Law.

3. Teachers who receive doubtful or unsatisfactory ratings may appeal under Section 4.3.1 of the by-laws of the Board of Education.

**ARTICLE 21D, p. 115-116**

**ARTICLE 21H p. 122**

## H. False Accusations

Knowingly false accusations of misconduct against employees will not be tolerated.

If an accusation of sexual misconduct or physical abuse against an employee is found by the Board or Special Commissioner of Investigation to have been knowingly false when made, the Board will take the following actions to restore the falsely accused employee's reputation: removing all references to the charges from the employee's personnel file(s) and adding evidence of the unfounded nature of the charge to departmental files that may have to be maintained to satisfy other legal requirements, if any; and restoring any back pay owed with interest and, at the employee's request, confirming to any regulatory agency the finding that the employee was falsely accused. In addition, where the knowingly false accusation was made by a student of the employee, absent compelling and extraordinary circumstances the student will be permanently reassigned from the employee's class.

**ARTICLE 21H p. 122**

**APPENDIX B: Planitiff's Memorandum in Opposition**                    **B-25**

JOHN C. KLOTZ (JK 4162)
The Empire State Building
350 Fifth Avenue, Suite 4810
New York, New York 10118-4810
(212) 630-2600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
GLENN STORMAN

                                        Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                Defendant.
--------------------------------------------------------------------X

Index No. 07-CV-5797 (SHS)

**AMENDED COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

      Plaintiff GLENN STORMAN, for his Amended Complaint, alleges:

### 1. *Jurisdiction and venue*

      1.     This is an action pursuant to Title 42 of the United States Code, Section 1983 to redress the denial to Plaintiff by Defendant of protected liberty interests and rights without due process of law.

      2.     Jurisdiction is based upon the provisions 42 U.S.C. § 1983

      3.     Venue is based upon the location of defendant's principal office in the City, County and State of New York, within the Southern District.

### 2. *Parties*

      4.     Plaintiff is a resident of the City of New York, County of Richmond and State of New York.

      5.     Defendant New York City Department of Education (NYC DOE) is an agency of

# APPENDIX C

the New York City government having its principal office at 52 Chambers Street in the City, County and State of New York.

### 3.  *Color of State Law*

6.     The Chief Executive of the NYC DOE is the Chancellor who executes the policies of the NYS DOE pursuant to the provisions of the N.Y.S. Education Law, the City Charter and the Rules and Regulations of the NYC DOE.

7.     At all pertinent times, the Chancellor and the various other employees of the NYC DOE whose actions are described herein were acting in accordance with the scope of their employment by the NYC DOE under color of law by reason of grants authority from New York State and New York City.

### 4.  *Protected liberty interests at risk*

8.     For over 25 years Plaintiff has been employed by the New York City Board of Education and for the last 16 years he has been employed as a guidance counselor. During this time, Plaintiff has enjoyed an excellent reputation having earned the high regard of parents, students, his teaching colleagues and supervisors.

9.     Plaintiff's tenure rights are vested in him by reason of the provisions of the New York Sate Education Law, the contract between Defendant and the his union, the United Federation of Teachers ("UFT") and rules, regulations and procedures promulgated by the defendant pursuant to its governmental power.

10.     Among the rights and privileges afforded Plaintiff by the UFT Contract are "retention rights" which allows him to obtain and retain extra-assignments including assignment as a summer school teacher and as a Home Instructor pursuant to the Defendant's Home Instruction Program.

11.     Plaintiff's vested rights of retention and his ability to pursue professional opportunities afforded him by his experience and previously unblemished reputation are all integral parts of his liberty that is protected by the United States Constitution.

12.     Annexed hereto as Exhibit A is the Annual Professional Performance Review ("Annual Review") that rated Plaintiff "U" for Unsatisfactory. and Exhibit B, the decision of the

Chancellor's designee denied the appeal and sustained the rating "as a consequence of a substantiated incident of corporal punishment."

13.    As a matter of fact and law, said finding of a "substantiated incident of corporal punishment" was not substantiated for there was no evidence at any point in the process that an incident of corporal punishment occurred.

***Applicable Regulation***

14.    Annexed to this Complaint as Exhibit C is a copy of Regulation A-420 of the Chancellor. In pertinent part it defines Corporal Punishment as:

> "2. Definitions:
>
> "Regulations of the Commissioner §100.2(I)(3)(i) define corporal punishment as <u>any act of physical force upon a pupil for the purpose of punishing that pupil</u>. Such term shall not mean the use of reasonable physical force for any of the following purposes:
>
> "1. to protect oneself from physical injury;
>
> "2. to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using excessive force);
>
> "3. to protect the property of the school or of others; or
>
> "4. to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above." (Emphasis supplied) Exhibit C: Regulation of the Chancellor, A-420, p. 1

15.    The evidence before both the Principal who executed Exhibit A and the Chancellor's representative who signed Exhibit B does not support a determination of Corporal Punishment in that there was no evidence of any kind that Plaintiff committed an act of physical force for the purpose of punishing any pupil.

16.    The actions Plaintiff took, which did not involve the use of physical force, were, in fact, intended to calm a situation where a teacher and her class were being disrupted by the acts of a student.

# APPENDIX C

17.     October 26, 2004, Plaintiff entered a classroom to obtain information about a student's attendance (Student X). In his hand, he had a rolled-up piece of paper concerning the attendance of Student X..

18.     As he entered the classroom, Plaintiff became aware of a tumult in the classroom. A student ("Student A") was kneeling on a chair, cursing out a female substitute teacher and disrupting the class. He approached the Student A, and gesturing with the hand in which he had the piece of paper, told Student A to "Zip it."

19.     Whereupon Student A, sat down and ceased his disruptive behavior.

20.     Plaintiff did not touch Student A. In the alternative, if the paper in his hand touched Student A, it was entirely accidental and unintentional. No one in the room observed Student A touched by the paper and Plaintiff does not believe it happened. Such accidental touching, if it occurred, was slight and caused absolutely no harm or damage or injury of any kind to Student A.

21.     Plaintiff regarded the incident as closed as he had accomplished his objective which was to help the substitute teacher restore order.

22.     A few days later, the father of Student A was contacted by the principal of the school because of Student A's truancy. The father then claimed that Student A had been sexually assaulted by Plaintiff because he had inserted a piece of paper in Student A's mouth for the purpose of obtaining sexual pleasure.

23.     That charge of inappropriate touching for sexual gratification was preposterous then and remains preposterous to this day.

24.     On November 16, 2004, the father of the child met with the principal of the school and repeated the charge.

25.     Likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Student A's father vigorously lobbied Plaintiff's supervisors to take strong action against Plaintiff and implicitly threatened legal action.

26.     Thereafter an investigation was initiated by the Chancellor's Office of Special Investigations ("OSI") which reported a substantiated incident of corporal punishment. A copy of that report is annexed hereto as Exhibit D.

# APPENDIX C

27.     The investigating officer for OSI interviewed 9 students who witnessed the incident, including Student A. None of the student witnesses, except Student A, saw any touching of Student A by Plaintiff. They did confirm Student A's disruptive behavior. Student A dropped any claim that there was a sexual connotation to the incident. He was not in fact physically harmed, but stated he was "embarrassed."

28.     Student H stated to the OSI investigator that Student A had told him that he would "get Mr. Storman." (Exhibit D, p. D-3)

29.     No where in the report, does it state the cause of the embarrassment claimed by Student A and as a matter of fact, Plaintiff believes if there was any embarrassment, it was caused by Plaintiff telling Student A to stop his disruptive behavior rather than any alleged, accidental physical conduct.

30.     Likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, the investigating officer did not interview the substitute teacher who was in the classroom.

31.     According the Report, Ms. Marcella stated that Plaintiff prepared a written statement that in which he made an admission that he had touched Student A's mouth with a piece of paper in an effort to quiet him. Plaintiff denies ever making such an admission and no such written statement is a part of this record.

32.     The investigating officer later interviewed Plaintiff. No recording or transcript of the of the interview was made. A representative of the United Federation of Teachers (UFT), Plaintiff's union was present.

33.     According to the OSI report:

> "Mr. Storman stated that he went to Student A's class to pick up a student that he services. The class had a substitute teacher. Student A was talking in a disrespectful manner to the teacher and was cursing. He approached Student A and he was holding a rolled up piece of paper in his hand. He **might** have brushed the piece of paper against Student A's lips and told him to be quiet. Mr. Storman denied that his actions were sexual in any way. Mr. Storman further stated that in retrospect he should not have touched Student A with the piece of paper." (Emphasis added)

# APPENDIX C

34.    Plaintiff denies stating to the investigating officer that he might have brushed the piece of paper against Student A's lips.

35.    At no time, was Mr. Storman afforded any opportunity during the investigatory process to confront Student A and question him in regards to his accusations.

36.    The report concluded that:

> "The allegation that Mr. Glen Storman placed a rolled up piece of paper into the mouth of Student A in a sexual manner is unsubstantiated. However, that Mr. Storman should not have made physical contact with Student A when he was reprimanding him."

37.    The Report of the investigation was forwarded to Plaintiff's supervising principal, Ms. Josephine Marcella with the following notation:

> "The Chancellor's Office of Special Investigations has completed its investigation into the allegations of corporal punishment against Mr. Glen Storman [sic], [Social Security Number deleted] Based on information and facts gained during the investigation, it has been determined that this matter is:

> "SUBSTANTIATED:          **X**
> "UNSUBSTANTIATED:"    ☐

(Exhibit D, p. D-1)

38.    The contents of said Report did not substantiate allegations of corporal punishment against Plaintiff. (See Report, Exhibit D, pp. D-2 to D-4)

39.    On being advised the findings of the Report, Mr. Solomon, the UFT representative who was present, issued the following statement:

> "The last statement, paraphrasing Mr. Storman regretting touching Student A, was taken out of context. He said that he may have moved towards him, and if he touched him with the paper in his hand, it was accidental." (See Ex. E, Transcript of Hearing, pp. 49-50)

40.    Thereafter, in June, 2005, Exhibit A was issued rating Mr. Storman "U" [unsatisfactory] on account of "Substantiated Corporal punishment at P.S. 212" (Exhibit A)

41.    In violation of DOE policy, the Review was not provided Plaintiff in a timely

# APPENDIX C

manner. Thereafter, Plaintiff appealed his rating.

42.      A hearing was held on his appeal on May 23, 2006. At that hearing both the investigating officer and the Supervising Principal admitted that Mr. Storman's conduct did not constitute corporal punishment. Exhibit E, p. 38-40.

43.      IN addition, Mr. Storman's union representative argued that the "U" rating based on the investigatory report was improper because at no time was Mr. Storman afforded the opportunity of confronting his accuser. Transcript, Exhibit E, p. 52-53

44.      A determination issued on August 14, 2006 denying Plaintiff's Appeal and sustaining his "U" rating on "as a consequence of a substantiated incident of corporal punishment." (See Exhibit B)

45.      A timely Notice of Claim was served upon the Department of Education, the New York City Comptroller and the New York City Corporation Counsel on November 8, 2006. Said matter has not been resolved and no hearing held.

46.      The determination that there was a "substantiated incidence of corporal punishment" is devoid of any legal or factual basis, and was based upon a procedure that denied Plaintiff fundamental constitutional rights including the right of confrontation and proof of wrongdoing by substantial evidence.

### 5.  *Injustice and damage to the Plaintiff*

47.      The finding that Plaintiff has been guilty of an incidence of corporal punishment is gravely damaging to Plaintiff both financially and professionally.

48.      Until the finding of substantiated corporal punishment, Plaintiff had enjoyed an unblemished reputation as an able capable professional. Now, he will be forever marked by this finding and it will be a hindrance to him both as an employee of the DOE and in seeking employment in any other place.

49.      In addition, Plaintiff has lost his vested retention right to earn income from the DOE both as a Summer School teacher and Per Session Home Instructor.

50.      The reduction of income from his loss of Summer School teaching and Per Session Home Instructor will be compounded for decades because it will reduce his income

# APPENDIX C

against which his pension will be calculated.

51.     That by reason of the foregoing, Plaintiff has lost financial benefits for the year 2005 in the sum of $23,000 and will lose financial benefits in excess of $1,000,000 in future years, including a reduction of reasonably anticipated pension benefits.

52.     Plaintiff performed no Home Schooling instruction and was denied appointment as a summer school teacher in 2007 because of his loss of retention rights.

## 6. *Denial of Due process*

53.     The stigma of being found guilty of a "substantiated incident of corporal punishment" damages beyond repair Plaintiff's ability to pursue his chosen profession, in addition to denying him rights vested by the UFT Contract.

54.     Said unsatisfactory rating and the reasons for it will be available for inspection by any future employer and within the school system should he be considered for reassignment at anytime.

55.     The Fourteenth Amendment of the United States Constitution requires that in cases in which important liberty rights are implicated, that any deprivation of those liberty rights can only occur after notice and hearing and any adverse determination must be supported by a preponderance of the evidence.

56.     The determination of the Defendant that the Plaintiff was guilty of a substantiated incident of corporal punishment is arbitrary and capricious.

57.     Said determination is not supported by either a preponderance of the evidence or substantial evidence and is, in fact, devoid of any supporting evidence.

58.     In addition, Plaintiff was denied the right to confront Student A and cross-examine him about his claims.

## 7. *Claim For Relief*

59.     By reason of the premises aforesaid, Defendant acting under color of law has deprived the Plaintiff of his liberty rights and property without due process of law in violation of 42 U.S.C. § 1983.

# APPENDIX C

60.     By reason of the premises aforesaid, Plaintiff has been damaged in his property by reason of lost income and reasonably anticipated retirement benefits in the some of $1,000,000.

61.     Defendant's actions has caused Plaintiff severe emotional distress and anxiety, caused him to lose sleep and suffer pain and anguish because of the threat to his continued employment and the destruction of his career and reputation.

62.     The actions of the defendant damaged Plaintiff's otherwise harmonious relationship with his wife, creating domestic friction, further causing and enhancing his emotional distress.

63.     By reason of his emotional distress and damage to his marital relationship, plaintiff has been damaged in sum to be determined but not less than $1,000,000.

64.     By reason of the premises aforesaid the Plaintiff is entitled to judgment in the sum of $2,000,000 together with the costs and disbursements of this action including reasonable attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiff prays that Court enter Judgment in the sum of $2,000,000 together with the costs and disbursements of this action including reasonable attorney fees.

Dated: New York, New York
        September 20, 2007

**JOHN C. KLOTZ**
Attorney for Plaintiff
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 630-2600

TO:     MICHAEL A. CARDOZO
        Corporation Counsel of the
        City of New York
        100 Church St., Room 2-170
        New York, NY 10007

**APPENDIX C**