Docket No. 09 Civ. 338 (SHS)(AJP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLENN STORMAN,

Plaintiff,

-against-

JOEL I. KLEIN, in his capacity as Chancellor of the New York City Department of Education; NEW YORK CITY DEPARTMENT OF EDUCATION; JOEPHINE MARSELLA; and DENNIS BOYLES,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ANDREW J. PECK**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants New York City*
*Department of Education and Joel I. Klein*
*100 Church Street, Room 2-115*
*New York, New York 10007*

*Of Counsel:*
*Daniel Chiu*

*Tel: 212-788-1158*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------------ x
GLENN STORMAN,

                                        Plaintiff,      Docket No. 09 Civ. 338
                                                        (SHS)(AJP)

                      -against-

JOEL I. KLEIN, in his capacity as Chancellor of the New
York City Department of Education; NEW YORK CITY
DEPARTMENT OF EDUCATION; JOSEPHINE
MARSELLA; and DENNIS BOYLES,

                                        Defendants.

------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

Defendants New York City Department of Education ("DOE") and Chancellor Joel I. Klein respectfully submit this memorandum of law in response to plaintiff Glen Storman's objections to the Report and Recommendation of Magistrate Judge Andrew J. Peck (hereinafter the "Magistrate"), dated April 30, 2009, and in further support of Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the complaint on the grounds that plaintiff's claims brought pursuant to 42 U.S.C. § 1983, and the First and Fourteenth Amendments of the United States Constitution fail as a matter of law.

Specifically, plaintiff objects to the Report and Recommendation on the grounds that the Magistrate incorrectly determined that: (1) the act that triggers the accrual date for his 42 U.S.C. § 1983 claim, alleging deprivation of liberty and property without due process of law, occurred when plaintiff knew or had reason to know of the injury that formed the basis of his action; (2) plaintiff's prior lawsuit touched upon a matter of public concern because it alleged a constitutional violation and therefore plaintiff's First Amendment claim should not have been

1

dismissed; and (3) plaintiff should have been granted leave to replead should any of his claims be dismissed.

As set forth herein, each of Plaintiff's specific objections lacks factual and legal support, and Plaintiff offers this Court nothing more than conclusory allegations premised on the misapplication of the law.

## STATEMENT OF FACTS

The Court is respectfully referred to Defendant's Statement of Facts in their Memorandum of Law, dated February 17, 2009, for a complete statement of the relevant facts.

## STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   D'Amico v. Conway, 2009 U.S. Dist. Lexis 30008 *1 (S.D.N.Y. Apr. 8, 2009) *quoting* 28 U.S.C. § 636(b)(1)(C)(*internal quotations omitted*).   Objections to the report and recommendation may be made by either party, but they must be "specific" and "written." Id., 2009 U.S. Dist. Lexis 30008 at 1 *quoting* Fed. R. Civ. P. 72(b)(2)(*internal quotations omitted*).

Where timely objections to the report and recommendation are made, any portion of the report and recommendation to which the objections are made is reviewed *de novo*. Witzenburg v. Jurgens, 2009 U.S. Dist. Lexis 32126 *2 (E.D.N.Y. Apr. 14, 2009).   The Court, however, is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed.   Id., 2009 U.S. Dist. Lexis 32126 at 2. Irrespective of whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations.   Id., 2009 U.S. Dist. Lexis 32126 at 2-3.

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIM THAT HE WAS DEPRIVED OF LIBERTY AND PROPERTY WITHOUT DUE PROCESS OF LAW IS BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiff objects to the report and recommendation on the grounds that it purportedly contains the incorrect accrual date for 42 U.S.C. § 1983 claims. The Report and Recommendation identifies as the accrual date the "point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." See Report and Recommendation, dated April 20, 2009 (the "Report"), at 50. The Report determined that any adverse act that occurred prior to August 21, 2005 would be barred by the statute of limitations. See Report at 50.

Plaintiff, however, disputes this. Plaintiff contends that the accrual date is when plaintiff's appeal of his unsatisfactory rating was denied by DOE. See Plaintiff's Objection to Report and Recommendations, dated April 30, 2009 ("Pl.'s Obj."), at 6 and 8. Plaintiff offers no authority to support this contention. In contrast, the fundamental rule in the Second Circuit is that claims brought pursuant to 42 U.S.C. § 1983 begin to accrue "at the time that plaintiff knows, or has reason to know, of the injury that is the basis of her action." Brevot v. New York City Department of Education, 2007 U.S. Dist. Lexis 16109 *15 (S.D.N.Y. Mar. 6, 2007); *see also* Wormer v. City of Rensselaer, 293 Fed. Appx. 783 (2nd Cir. 2008) (court affirmed dismissal of § 1983 claim as time barred where claim accrued with filing of disciplinary charges and not conclusion of arbitration adjudicating disciplinary charges). In addition, a plaintiff may not extend the statute of limitations through an adverse act that occurred after the original injury.

Id., 2007 U.S. Dist. Lexis 16109 at 20-22 (deprivation occurs at time of defamatory act and damages that are consequences of defamatory act do not constitute deprivation of liberty).[1]

Here, the Magistrate correctly concluded that "[i]f the June 2005 unsatisfactory rating automatically and immediately terminated Storman's retention rights, and Storman was unable to work during summer 2005 as a result, then the statute of limitations began to run in June 2005 and the instant action is time-barred." See Report at 51. However, the Magistrate determined that the Court could not make a proper determination on the record of the motion to dismiss and stated that defendants could re-address any arguments concerning statute of limitations on summary judgment. Id. at 52. It is now undisputed, however, that plaintiff suffered an adverse act prior to August 21, 2005. During the April 23, 2009 Court Conference before Magistrate Judge Peck, plaintiff acknowledged that he was told in June 2005 that he had received an unsatisfactory rating and was therefore unable to perform per session work that summer. See Transcript of Court Conference, April 23, 2009 ("Tr."), at 2:11-22, 3:11- 4: 25, and 5:11-23; for the Court's Convenience, a copy of the transcript is annexed hereto as Appendix "A." Plaintiff also conceded that if the accrual date set forth in the Report was adopted, plaintiff's liberty and due process claims would be barred on statute of limitations grounds. See Tr. at 2:11-4:13.

Plaintiff has presented no authority for the proposition that the accrual date is any date other than when plaintiff knows, or has reason to know of the injury. Brevot v. New York City Department of Education, 2007 U.S. Dist. Lexis 16109 *15 (S.D.N.Y. Mar. 6, 2007). As

---

[1] Plaintiff's newfound claim that the statute of limitations commences after DOE makes a final determination with respect to the appeal of his unsatisfactory rating is further suspect given that the plaintiff in Storman v. New York City Department of Education, S.D.N.Y. Docket No. 07 Civ. 5797 (SHS) ("Storman I") sought a tolling of the statute of limitations pending DOE's issuance of a determination on plaintiff's appeal of his unsatisfactory rating. If the statute of limitations did not begin to run until after a final determination was issued, a tolling of the statute of limitations in Storman I would be superfluous. See Order, dated January 17, 2008, Storman I, Docket Entry No. 14.

such, plaintiff has now acknowledged that the injury occurred in June 2005 and the Court should *sua sponte* dismiss plaintiff's claim that he was deprived of property and liberty without due process.

## POINT II

### PLAINTIFF'S PRIOR LAWSUIT WAS NOT A MATTER OF PUBLIC CONCERN AND HIS FIRST AMENDMENT CLAIM SHOULD THEREFORE BE DISMISSED.

The Report correctly concluded that *Storman I* did not address a matter of public concern and was commenced for the vindication of rights entirely personal to plaintiff.  See Report at 57-59.  Plaintiff objects to the Report and contends that he properly stated a claim for First Amendment Retaliation because *Storman I* alleges a constitutional claim.  See Pl.s Obj. at 9-11.  It is irrelevant, however, whether plaintiff asserted a constitutional claim.  To qualify as protected speech, plaintiff is required to demonstrate that *Storman I* addressed a matter of public concern and that the relief sought was not entirely personal to the plaintiff.  Kempkes v. Marvin, 2008 U.S. Dist. Lexis 103210 *22-3 (S.D.N.Y. Dec. 19, 2008) *quoting* Ruotolo v. City of New York, 514 F.3d 184, 188-90 (2nd Cir. 2008).  The plaintiff in *Storman I* did not seek any relief other than that which was entirely personal to him.  Indeed, plaintiff's objections do not dispute this point.

Plaintiff attempts to salvage his claim by arguing that Ruotolo does not apply because the plaintiff in Ruotolo did not asserts claims that were rooted in the Constitution.  See Pl.'s Obj. at 9.  Plaintiff, however, argues a distinction without a difference.  As previously stated, whether a constitutional claim is asserted or not is immaterial.  At issue is whether the lawsuit was "calculated to redress personal grievances or whether it had a broader public

purpose." Ruotolo, 514 F.3d at 189 *quoting* Lewis v. Cowen, 165 F.3d 154, 163-4 (2nd Cir. 1999). Ruotolo's lawsuit was brought to redress matters relating to his employment, such as his reassignment, transfer, time off, and discipline; acts that did not seemingly meet with Ruotolo's approval. Similarly, *Storman I* also sought to redress employment matters that were entirely personal to plaintiff; the receipt of an unsatisfactory rating that was not to his liking.

In further support of plaintiff's contention that he engaged in protected speech, plaintiff cites several decisions from the Court of Appeals but excludes any cases in the Second Circuit. Nevertheless, even if the cases plaintiff cited were controlling, each case is inapplicable. The first case plaintiff cites, Cate v. Oldham, 707 F.2d 1176 (11th Cir. 1983), was an action to enjoin the State of Florida from continuing a malicious prosecution action against the petitioner after petitioner brought a wrongful death action against the State of Florida. Id., 707 F.2d at 1180. The wrongful death action was dismissed on summary judgment and the State of Florida then filed a common law action in state court against petitioner for malicious prosecution. Id., 707 F.2d at 1180. The Eleventh Circuit then enjoined the State of Florida from continuing the action because it was "a direct response to appellant's attempt to petition the government; it seeks both to penalize that activity and to deter it in the future." Id., 707 F.2d at 1189.

In the instant matter, no direct action was taken against plaintiff for instituting a lawsuit. Plaintiff contends he was subject to adverse acts following the filing of his prior lawsuit, but plaintiff cites no actions on the part of defendants that was in direct response, vis-à-vis Cate, that penalized plaintiff for the filing of a lawsuit.

Plaintiff also cites Milhouse v. Carlson, 652 F.2d 371 (3rd Cir. 1981) and Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999). Both cases, however, involve prisoners who alleged prison officials took actions against them for their litigious activities. The cases are

thus inapplicable as the issues raised occurred in the prison context whereas plaintiff was not a prisoner, he was an employee of DOE.  As a result, plaintiff has not demonstrate that his lawsuit addressed a public matter and his First Amendment retaliation claim should be dismissed.

Since plaintiff has not demonstrated that the relief sought in *Storman I* was to advance a public purpose, *Storman I* did not qualify as protected speech and the Report dismissing plaintiff's First Amendment retaliation claim was proper and should be adopted by this Court.

## POINT III

### THE REPORT AND RECOMMENDATION WAS CORRECT IN NOT GRANTING PLAINTIFF LEAVE TO REPLEAD.

Plaintiff argues that the Report should have granted him leave to replead.  See Pl.'s Obj. at 3.  The Report, however, was correct in not granting plaintiff leave to replead. Leave to replead is ordinarily granted except when the amendment would be futile.  Tocker v. Philip Morris Cos., Inc., 470 F.3d 481, 491 (2nd Cir. 2006).  Here, any amendment would be futile.

Should the Court adopt the Report and determine that any adverse acts that occurred before August 21, 2005 are barred by the statute of limitations, plaintiff's due process claim would be dismissed on statute of limitations grounds.  An amended pleading would not be able to cure such a defect no matter how creative plaintiff's amendment may be and would be contrary to the plaintiff's recent acknowledgement that he was unable to work in the Summer of 2005 because of the unsatisfactory rating.  Schuh v. Druckman & Sinel, L.L.P., 2008 U.S. Dist. Lexis 15079 *41 (S.D.N.Y. Feb. 29, 2008) (leave to replead denied where defect cannot be cured by more artful pleading).

Plaintiff's First Amendment claim also suffers from the same flaw. *Storman I* was brought to vindicate rights entirely personal to plaintiff and did not touch upon a matter of public concern. An amended complaint cannot change the relief sought by plaintiff in *Storman I* and therefore any attempt to amend the complaint would be futile. The Magistrate's decision in the Report, which denied plaintiff leave to replead, was therefore correct.

## CONCLUSION

For the foregoing reasons, defendants New York City Department of Education and Joel I. Klein respectfully request that the Court issue an order adopting the Report and Recommendation in its entirety and dismiss the Complaint with prejudice together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      May 14, 2009

> MICHAEL A. CARDOZO
> Corporation Counsel of the City of New York
> Attorney for Defendants New York City
> Department of Education and Joel I. Klein
> 100 Church Street, Room 2-115
> New York, New York 10007
> 212-788-1158
>
>
> By:_____
>       Daniel Chiu
>       Assistant Corporation Counsel

Diana Goell Voigt
Daniel Chiu,
      Of Counsel

# Exhibit A

1

```
94nWstoC
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   GLENN STORMAN,
3
4                   Plaintiff,
4
5           v.                          09 CV 338 (SHS)(AJP)
5
6   JOEL I. KLEIN, et al,
6
7                   Defendants.
7
8   ------------------------------x
8                                       New York, N.Y.
9                                       April 23, 2009
9                                       9:30 a.m.
10
10  Before:
11
11                      HON. ANDREW J. PECK,
12
12                                      Magistrate Judge
13
13                      APPEARANCES
14
14  JOHN C. KLOTZ
15       Attorney for Plaintiff
15
16  MICHAEL A. CARDOZO
16       New York City Law Department
17       Office of the Corporation Counsel
17  DANIEL CHIU
18       Assistant Corporation Counsel
18
19
20
21
22
23
24
25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

2

94nWstoC

1          (Case called)

2          THE COURT:  Good morning.  Be seated.

3          All right.  The purpose of this conference, from my

4     point of view, is to set a schedule for whatever we need to do

5     to continue with the rest of this case.  I assume you have both

6     had a chance to read my report and recommendation on the motion

7     to dismiss.

8          Mr. Klotz, my clerk tells me there was something you

9     wanted to say before we go into other scheduling matters.

10         MR. KLOTZ:  Yes.

11         Your Honor, the Court clearly stated in its

12    recommendation, report and recommendation that it believes the

13    statute of limitations would bar the 1983 claim if Mr. Storman

14    suffered an adverse impact before August of 2005.  Unobjected

15    to, I assume that would be the law of the case.  But I want to

16    make a concession on the record that he did suffer an adverse

17    impact before August of 2005, and since the Court has indicated

18    that that would bar the whole action, the whole first count,

19    then I think it would be not an efficient expenditure of not

20    only judicial resources but my client's resources to have

21    extensive discovery until that question of law was resolved,

22    which I think I have to resolve by filing an objection.

23         There may be other objections I have.  I would

24    compliment the Court on its lengthy and scholarly opinion, but

25    I respectfully demure or defer or dissent from some of the

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

94nWstoC

1    Court's conclusions which I have to bring to Judge Stein

2    anyway.  But this particular point is so important, and I

3    discussed it with my client, and it would be almost disastrous

4    to go through an entire discovery procedure when one fact, I

5    mean, if I had alleged in the complaint that in August of 2005

6    or July 2005, he had been denied that, then I think the Court

7    would have probably decided this on that basis, given what the

8    Court has said.  Therefore, for us to spend a great deal of

9    time on discovery and money and resources at this point, until

10   Judge Stein speaks --

11            THE COURT:  Let me then ask the follow-up question

12   that's logical on that, which is:  Are you agreeing that if

13   Judge Stein upholds my report and recommendation in all

14   respects, particularly including the issue on the statute of

15   limitations, that the case is over, subject to, of course, the

16   Second Circuit?

17            MR. KLOTZ:  If what the magistrate judge reported is

18   the correct applicable law to the facts of this case as

19   pleaded, then I don't see how I can argue -- I mean, I can

20   argue that I don't think it's right.  I mean, I think we

21   pleaded a case involving the chancellor and discrimination with

22   the chancellor, and I'll explain that in my objections.

23   Hopefully, I'll have them filed on time.  But I do believe

24   that, you mentioned a question about that.  It's moot in this

25   case without a filing by next Friday and I'm leaving for a

4

94nWstoC

1    wedding in Oregon.  If I don't do it by next Friday, I'm in big

2    trouble.

3            But, I mean, the point is I honestly, as an advocate

4    and taking in mind the rule of evidence as a matter of fact, I

5    have no problem advocating on behalf of my client that I

6    disagree with the Court's recommendation.  I would have no

7    problem if Judge Stein may agree with the Court, which he may

8    very well, taking it up to the Second Circuit, if my client so

9    advised to do that.  But I just don't see the use of the

10   Court's resources and my client's resources and my energy,

11   which is of rationing value lately, to argue this point as a

12   matter of fact.  As a matter of law, I want to argue it.  But

13   as a matter of fact, yes.

14           THE COURT:  I understand what you're saying.  So

15   factually, are you saying that he did not work the summer of

16   2005?

17           MR. KLOTZ:  Yes.  When he reported for summer school

18   in June, July, and they told him you can't work because you got

19   a bad rating, and I discussed this with my client and I

20   discussed the implications of that, and that is what he

21   reported to me.  And it happened before he got the formal

22   notification later, but, I mean, he did not get formal

23   notification until after the date involved, but he was told he

24   couldn't work before the date the Court set.  That's the

25   factual pattern.

94nWstoC

1           I discussed this with one of my colleagues before I

2    even talked to my client, and even if there was an issue of

3    fact about that, the Court's recommendation may very well

4    become the law of the case, and obviously, I've got to, on

5    behalf of my client, litigate that issue.

6           THE COURT:  All right.

7           MR. KLOTZ:  And given everything else, I think it

8    would be, again, just a waste of everybody's resources to go

9    plowing through this, and my client might have to hire an

10   expert witness.  He might have to spend thousands of dollars.

11          THE COURT:  I get your point.  I just want to be

12   clear, and then I'll hear from Mr. Chiu, that you are

13   stipulating that if my decision on the statute of limitations

14   is upheld, that you are stipulating that your client lost the

15   summer school position summer of '05 and that there isn't going

16   to then be some creative or otherwise change of his position

17   that he sort of lost it, he didn't want to work summer school

18   then.

19          MR. KLOTZ:  No.

20          THE COURT:  Okay.

21          MR. KLOTZ:  I respect the process too much, I respect

22   the case too much, and I can't think of a good rule of getting

23   around what the Court said.

24          THE COURT:  All right.  Mr. Chiu, what are your views?

25          MR. KLOTZ:  I have other issues too, your Honor.

94nWstoC

1          THE COURT:  Let me just hear what Mr. Chiu's position

2     is on this one before I get lost.

3          MR. CHIU:  I'm hearing this for the first time right

4     now, so naturally I can't opine on what the defendant's

5     position would be on this.  But it sounds reasonable to me, but

6     I would need to speak with my supervisor before I do anything.

7          THE COURT:  I can't imagine you would particularly

8     want to go out and do discovery if he doesn't, and I'm willing

9     to go along with that.

10          MR. CHIU:  No, I don't.  I thought, I guess, as far as

11     if he's asking me to stipulate to a specific fact, that I

12     cannot do.

13          THE COURT:  No.  You're not stipulating to it.  He is

14     stipulating to it unilaterally, which is to say he is making a

15     representation to the Court as an officer of the Court that

16     that is the fact which, if my legal analysis is upheld, is the

17     death knell of his case.

18          MR. CHIU:  That's fine.  If what he's asking the Court

19     to do is basically to hold off on discovery until this one

20     issue is resolved, I certainly don't have a problem with that.

21          THE COURT:  All right.  What else, Mr. Klotz, before I

22     make a definitive decision?

23          MR. KLOTZ:  Your Honor, there's two other issues.

24     First of all, when we filed this case, I sent out notices to

25     accept service by mail to both Mr. Marcella and Ms. Boyles,

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

7

94nWstoC

1   which were received.

2           THE COURT:  Sorry.  Received by them or received back

3   by you?

4           MR. KLOTZ:  No.  Received by them.

5           THE COURT:  Okay.

6           MR. KLOTZ:  As a matter of fact, I don't think Mr.

7   Chiu will disagree with that.

8           Mr. Chiu, and I'm not trying to be pejorative in any

9   of this, has said after the 30 days, should I go ahead and

10  serve these people because if I serve them, I have a right to

11  get, I guess, an immediate judgment for the cost of service.

12          THE COURT:  I don't know if it's immediate or not, but

13  at some point you get the cost of service back.

14          MR. KLOTZ:  Irrespective of the merits, basically.

15          THE COURT:  Okay.

16          MR. KLOTZ:  Mr. Chiu asked me to hold up.  He said he

17  had to do an interview.  At some point for about two days,

18  before we had argument in front of Judge Kornreich in Civil

19  Court, I said I want to talk to you about the Boyles, Marcella

20  thing, I want to evaluate that.  But after we had the argument

21  in front of Judge Kornreich, I did get back to him and say,

22  Look, I really have to finish up the jurisdictional relief for

23  Boyles and Marcella, and I would suggest that the motion that

24  was made, Boyles and Marcella are only involved in the second

25  cause of action or second count, whether that's a de facto

94nWstoC

1    appearance or not, I don't know.  I may have to come back to

2    the Court.  I don't know how rapid Judge Stein is.

3            THE COURT:  He's pretty fast.

4            MR. KLOTZ:  I don't know if he's faster than Judge

5    Kaplan on these things.

6            THE COURT:  Nobody is faster than Judge Kaplan, not

7    even me, and I pride myself on being fast.

8            MR. KLOTZ:  I must say, Judge, you surprise me.  Your

9    decision came down before Judge Kornreich's.  She has already

10   indicated what she wants to do, with Mr. Chiu and I in oral

11   argument.  She's going to vacate it.  She hasn't done it yet.

12   I don't even want to want to talk about the Rooker-Feldman

13   issue.

14           But, in any event, I may have to come back and ask

15   somebody to extend the time to serve, unless he wants to make

16   it between now and Monday that he does, that he is either de

17   facto or de jure the attorneys for Boyles and Marcella, I have

18   to serve them.  I don't know if I have any choice.

19           THE COURT:  Mr. Chiu.

20           MR. CHIU:  Well, as I informed Mr. Klotz, basically, I

21   had scheduled representation interviews for both individuals.

22   However, right before I was told by Mr. Klotz to hold up on

23   doing anything, your Honor's decision was pending and so based

24   on that, it was my understanding that he may not be proceeding

25   with the individual defendants, so therefore the representation

94nWstoC

1    interviews were cancelled.  Then I found out that apparently

2    either he or his client changed their mind and they wanted to

3    proceed against the individuals.

4         What I'm doing right now is I'm trying to schedule

5    representation interviews for both of them.  As I also told

6    Mr. Klotz, if I represent them, I'm not going to raise any

7    issues about service.  And certainly if it turns out, I doubt

8    it, but if it turns out that I don't represent them, I'm not

9    going to object to an extension of time in which to obtain

10   proper service of them, so I don't see what the issue is.

11        THE COURT:  In light of the fact that your 120 days

12   are close to being over, is that what you mean?

13        MR. KLOTZ:  I think it's May 4, your Honor.

14        THE COURT:  All right.  In light of the fact that if

15   my R & R is accepted by Judge Stein it would be a waste of

16   money to serve them because they're only involved in the second

17   count, which I recommended dismissal of, I will extend your

18   time to serve them until 30 days after Judge Stein rules on the

19   objections.

20        MR. KLOTZ:  Your Honor, I thank you very much for your

21   ruling.  I think that's quite fair and practical.  I'm going to

22   need a copy of this.  That's for sure.

23        THE COURT:  All right.  Anything else?

24        MR. KLOTZ:  Yes, Judge.  On one factual basis with the

25   R & R, the Court held that this was not a matter of public

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

94nWstoC

1    interest, with the second count.

2            THE COURT:  Yes.

3            MR. KLOTZ:  The complaint clearly alleges that it is.

4            THE COURT:  There's a difference between saying the

5    buzz words and having any factual support in the pleading for

6    it.

7            MR. KLOTZ:  And the Court also denied or did not grant

8    leave to file an amended --

9            THE COURT:  Do you have any facts that would make this

10   a matter of public interest?

11           MR. KLOTZ:  As a matter of fact, your Honor, there are

12   two or three newspaper articles dealing with the administration

13   of discipline against teachers.

14           THE COURT:  Believe me, I'm well familiar with that

15   since I've got two lawsuits involving that issue.  That's not

16   what the second claim was about.  He wasn't complaining about

17   the discipline process.  He was complaining about the result in

18   his case.  Otherwise, everything in the employment context

19   which could have a bigger context, if it were part of a policy

20   or something else, becomes First Amendment protected.  So if

21   you wish at some point to seek leave to amend, you're free to

22   do so, but you're losing 14-nothing with nobody on base, two

23   outs, and a two-strike count on you in the bottom of the ninth.

24           Does that about tell you where I think you can take

25   that?

94nWstoC

1     MR. KLOTZ:  The only thing is I want to be fair to the

2    magistrate.  I don't mean to be pompous when I say that.  If I

3    were to attach a couple of these articles to my objections, I

4    mean, do I have an obligation to go to you first with them?

5     THE COURT:  Yes, you probably do under the rules.

6     MR. KLOTZ:  Can I do it by letter?  Ask for

7    reconsideration by letter, just attach them?

8     THE COURT:  I don't see why not because the rubber

9    stamp is going to come down on it with the word "denied."

10     MR. KLOTZ:  Okay.

11     THE COURT:  After-the-fact newspaper articles about

12    Mr. Storman's case or contemporaneous or even prior articles

13    that say the teacher discipline system doesn't work the way it

14    should means nothing unless you are going to tell me that

15    Mr. Storman ever made any statements to Ms. Marcella or anyone

16    else in the Board of Ed. hierarchy that said I don't care what

17    happens to me, but your discipline system is a disaster, and

18    that's why I'm doing what I'm doing.  And that's nowhere in

19    your complaint or the hearings that were held before the

20    chancellor, the transcripts of which were before the Court on

21    the motion, etc.  So I think you've got no prayer, but do what

22    you've got to do to make your record.

23     MR. KLOTZ:  The other fact I respectfully dissent, I

24    guess, from the record, or demure, and this is something which

25    I appreciate may have to go, and if there had been any comments

94nWstoC

1    been in general, I might appreciate it, I find myself in that

2    situation where it may very well be that there's a great deal

3    of authority in this circuit, and I'm not going to talk about

4    the case the Court cited yet.  I don't have to deal with that,

5    that it has to be free speech.  Okay?  But I believe there is

6    authority, and it may be actually in the Supreme Court and

7    other circuits, that the right to petition for grievances is a

8    separate right from the right of free speech.  And in this

9    particular case, and although as I sit here I may sound like

10   I'm harping and criticizing, I don't mean to do that, because

11   in this particular case, the magistrate has found, the judge

12   has found, your Honor's found that the first count of action

13   may very well be well pleaded for denial of civil rights.  So

14   now we're talking about the right to petition for grievance on

15   retaliation against you from grieving the denial of your civil

16   rights.  I think that's a different issue.  Now, it may not be

17   a different issue.

18            THE COURT:  It wasn't pled and it wasn't briefed by

19   you as such.

20            MR. KLOTZ:  I think I did, your Honor.

21            THE COURT:  No.  To the extent you did, there were

22   some cases well off point in other circuits.

23            MR. KLOTZ:  I appreciate it, but the legal questions

24   and citations and stuff, I'm not arguing the point.

25            THE COURT:  Okay.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

94nWstoC

 1          MR. KLOTZ:  I'm only saying I believe, and I said this

 2     in the brief, that where someone is petitioning to redress the

 3     constitutional rights that that person should be protected.

 4     That's all I'm saying.  And I would agree that there's a

 5     plethora of lower court decisions, apparently one or two, at

 6     least one in the Second Circuit which seems to hold contrary to

 7     that.  I will have to do an analysis for Judge Stein and

 8     probably the Second Circuit, and I must say, I've been

 9     practicing law for a lot of time, this is a juicy issue, what I

10     call a judgey issue.

11          THE COURT:  All right.  Well, you'll take that to our

12     friends in the circuit downstairs on the ninth floor, or to our

13     friends with the nine black robes in Washington, and they'll do

14     what they will do.

15          In the meantime, I will stay discovery based on your

16     application and the lack of opposition from the city to allow

17     Judge Stein to do whatever he's going to do with whatever you

18     file.  Do make sure you file on time because if you're late,

19     without getting an extension on it, which you can only get from

20     Judge Stein, not from me, then you're out of luck.

21          MR. KLOTZ:  Judge, as a practical matter, I'm leaving

22     New York City to go to a family wedding in Oregon, which is a

23     week, I measured it, a week from Monday.  I would like to ask

24     the Court, and this is probably dicta.  I am confused, and I

25     think I've seen a case where there was disastrous consequences

94nWstoC

1   for a party.  The clerk puts the date in, and it says

2   objections must be filed by May 7.  I only count anywhere close

3   to that by adding in three days for mailing.

4          THE COURT:  That's what the clerk does.

5          MR. KLOTZ:  But the Court is filing a report and

6   recommendation, it's mailing it to me.  Is the clerk's judgment

7   on May 7 binding?  I don't think it is, is it?

8          THE COURT:  No.  If the clerk messes up, it messes up.

9   But if I were you, I would just figure out what it is or what

10   you think it is.

11          MR. KLOTZ:  I figured because --

12          THE COURT:  Get it in before the wedding, and if not

13   ask Judge Stein for more time if that's what you think you

14   need.  I'm not going to sit here with a calculator, or fingers

15   and toes.

16          MR. KLOTZ:  It's my job to count.  I appreciate that.

17   I was just curious about the effect of the clerk putting a date

18   on the docket which seems to be erroneous.

19          THE COURT:  This one is not per se jurisdictional,

20   unlike appeals to the circuit, or something like that.

21          MR. KLOTZ:  Yes, I appreciate that.

22          THE COURT:  Believe me, there are lots of errors in

23   the docketing system.  This is probably based on a calculation,

24   including the adding of three days for mailing which may or may

25   not be appropriate in light of the fact that you got it

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

15

94nWstoC

1    instantaneously on ECF.  But it is what it is.  You'll deal

2    with it.

3            In the meantime, you said you're going to buy the

4    transcript, so I don't have to order you to buy it.  Is that

5    correct?

6            MR. KLOTZ:  Yes.  Do you have my information?

7            THE COURT:  The reporter and you will work with that

8    so you don't have to pay for another page for that purpose.

9    Since you did most of the talking, why don't you make a free

10   copy available for Mr. Chiu.

11           MR. KLOTZ:  Is the city in that much trouble?

12           THE COURT:  Yes.

13           We're adjourned.  Good luck.

14           (Proceedings adjourned)

15

16

17

18

19

20

21

22

23

24

25