UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
GLENN STORMAN                                                           :   Index No. 09 CV 00338
                                                                        :              (SHS)(AJP)
                                                                        :
                                                    Plaintiff,          :
                                                                        :
           -against-                                                    :
                                                                        :
JOEL I. KLEIN, in his capacity as Chancellor of the New                 :
York City Department of Education; NEW YORK CITY                        :
DEPARTMENT OF EDUCATION; JOSEPHINE                                      :
MARSELLA; and DENNIS BOYLES,                                            :
                                                                        :
                                                    Defendants.         :
                                                                        :
------------------------------------------------------------------------X

PLAINTIFF'S OBJECTION TO
REPORT AND RECOMMENDATIONS

A.   Introduction

   This objection to the Report and Recommendations of the Hon. Andrew J. Peck, U.S.M.J., filed October 9, 2009 ("Second R&R") is submitted to clarify the plaintiff's position and complete the record. Plaintiff can not oppose entry of summary judgment so long as it is without prejudice to his right to appeal that judgment.

B.   Conclusive Determination in this Court of the law of the case

   Given the prior determinations of questions of law concerning the application of the statute of limitations to this matter, and the acknowledged facts, it would be futile, and a waste of both my client's and judicial resources, to conduct discovery upon the merits of the case such as damages when the dismissal of the case was rendered inevitable by the Court's determination of the law of this case in its order filed August 17, 2009 (the 'Court's decision").

That decision confirmed the recommendations of Magistrate Judge Peck in his Report and Recommendation filed April 20, 2009. The Court's decision could not be appealed because it was not a final judgment (FRCP Rule 54[b]).

Had the complaint alleged clearly the fact stipulated to by the parties that plaintiff was denied a summer school appointment by reason of the "U" unsatisfactory rating on July 5, 2005 and been informed of the rating in writing not later than July 12, 2005, then, applying the Court's holding of the law, it would have been subject to dismissal pursuant to Rule 12(b)(6) and Rule 12(c) without any further proceedings. The Court's decision specifically rejected the plaintiff's contention that the cut-off date was the denial by the Chancellor of plaintiff's administrative appeal, but was rather his first adverse impact.

The stipulation annexed to the Second R&R is a recognition of that determination by the plaintiff. However, plaintiff has consistently argued that the cut-off date ought to have been the decision by the Chancellor in 2006. Until the entry of final judgment plaintiff will not be able to appeal the Court's contrary determination. Similarly, the Court's order dismissing Count Two may not be appealed until entry of final judgment.

C.    <u>The NYS Supreme Court determination.</u>

On May 15, 2009, I forwarded to the Court by overnight delivery service, the decision of Justice Shirley Werner Kornreich, JSC in the collateral Article 78 that was brought by plaintiff in the New York Supreme Court which held, inter alia, the actions of defendant Joel Klein in denying plaintiff's appeal of the his "U" writing "shocked the conscience." In the letter forwarding the same to the Court, I suggested that oral argument of plaintiff's objections to the first R&R was appropriate. The Court did not ask for argument. A copy of that letter and its exhibit is annexed to this objection.

D.  Conclusion

    The Court's determination of the cut-off date for the statute of limitations was the first adverse impact and its rejection of plaintiff's argument that it ought to have been measured from the Chancellor's determination rendered further litigation of this matter, absent a successful appeal, futile. That appeal (or any appeal) can not take place until entry of final judgment. However, that final judgment can not be prejudicial to the plaintiff's right to appeal. That was the purpose and the plain language of the stipulation annexed to the Second R&R.

Dated: New York, New York
       October 22, 2009

s/John C. Klotz<br>
JOHN C. KLOTZ (JK 4162)<br>
Attorney for the Plaintiff<br>
350 Fifth Avenue, Suite 4810<br>
New York, New York 10118-4810<br>
(212) 630-2600

# JOHN C. KLOTZ

ATTORNEY AND COUNSELOR AT LAW

EMPIRE STATE BUILDING, 350 FIFTH AVENUE, SUITE 4810, NEW YORK, NY 10118

BY OVERNIGHT DELIVERY

May 15, 2009

Hon. SIDNEY H. STEIN, U.S.D.J.
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    Storman v. Klein et al
       Index No. 09 CV 00338 (SHS) (AJP)
       Decision in collateral Article 78 Proceeding

Dear Judge Stein:

I m enclosing a copy of a Short Form Order and Decision date May 11, 2009 rendered in the collateral Article 78 proceeding which was referenced by both plaintiff and defendants in their respective papers submitted in the motion to dismiss which is now sub judice.

I will refrain from any comment upon the implications of the decision in respect to issue preclusion at this time. Perhaps oral argument may be appropriate.

                                                Respectfully yours,

                                                *John C. Klotz*

                                                JOHN C. KLOTZ
                                                Attorney for the Plaintiff

CC    VIA FAX
      HON. ANDREW J. PECK, USMJ
      Daniel Patrick Moynihan
      United States Courthouse
      500 Pearl St.
      New York, NY 10007-1312

      VIA FAX and E-MAIL ATTACHMENT
      MICHAEL A. CARDOZO
      Corporation Counsel of the City of New York
      100 Church Street, Room 2-170
      New York, New York 10007

      Attn: Daniel Chiu, Esq.

TELECOMMUNICATIONS:    TELEPHONE: (212) 630-2600        E-MAIL: johnklotz@johnklotz.com
                       FAX:  (718) 543-8244              HTTP: //www.johnklotz.com
                       (not for service)

SCANNED ON 5/13/2009

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **JUSTICE SHIRLEY WERNER KORNREICH** PART 54

| | |
|---|---|
| Index Number : 113652/2008<br>**STORMAN, GLENN**<br>VS.<br>**DEPARTMENT OF EDUCATION**<br>SEQUENCE NUMBER : 001<br>ARTICLE 78 | INDEX NO. _____<br>MOTION DATE 3/12/09<br>MOTION SEQ. NO. _____<br>MOTION CAL. NO. _____ |

this motion to/for _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...    1
Answering Affidavits — Exhibits _____    2-3
Replying Affidavits _____    4-5

Cross-Motion:  ☐ Yes   ☑ No

Upon the foregoing papers, it is ordered that this motion

...TION IS DECIDED IN ACCORDANCE
...H ACCOMPANYING MEMORANDUM
...CISION AND ORDER.

*UNFILED JUDGMENT - This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).*

Dated: 5/11/09                    _____ J.S.C.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____ FOR THE FOLLOWING REASON(S):

Check one:  ☒ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate:    ☐ DO NOT POST    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
------------------------------------------------------------X
In the Matter of the Application of
GLENN STORMAN,

                         Petitioner,                    Index No.: 113652/08

For Judgment Pursuant to Article 78                DECISION
of the Civil Practice Law and Rules,                 and ORDER

    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                        Respondent.
------------------------------------------------------------
KORNREICH, SHIRLEY WERNER, J.:

**UNFILED JUDGMENT**
This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

    Petitioner Glenn Storman, a tenured guidance counselor at P.S. 153 and P.S. 212 in Brooklyn, New York, brings this Article 78 proceeding and seeks a judgment: (1) reversing respondent's June 10, 2008, dismissal of his appeal challenging an "unsatisfactory" rating he received on his 2005 Annual Review arising from allegations that he was guilty of substantiated corporal punishment; (2) vacating and expunging his 2005 Annual Review; (3) directing that he receive a "satisfactory" rating on his 2005 Annual Review; (4) awarding petitioner $100,000 in lost wages and adjusting his retirement benefits to reflect such wages; and (5) restoring his lost retention rights so that he may be considered for any and all extra school assignments which may arise. Respondent the New York City Department of Education ("respondent" or "DOE") opposes.

I.    *Background*

    Petitioner has been teaching at the DOE for approximately 27 years. On October 26,

1

2004, Mr. Storman entered a classroom full of Special Education students at P.S. 212 to pick up one of the children. At the time, he was carrying a rolled-up piece of paper. Upon entry, petitioner noticed that a student (Student A) was kneeling on a chair swearing and uttering obscenities at the female substitute teacher in-charge of the class. Mr. Storman approached Student A, pointed the rolled-up piece of paper toward Student A's face and told him to "zip it." Student A stopped harassing the substitute teacher.

Following this incident, Student A's father (Father A) claimed that Mr. Storman inserted the piece of paper into his son's mouth in an effort to obtain some form of sexual gratification. On November 16, 2004, Father A contacted P.S. 212's Principal Josephine Marsella and said he would no longer send his child to school due to Mr. Storman's attemp to act out a "sexual fantasy" on his son. Principal Marsella contacted the DOE's Office of Special Investigation ("OSI") and requested an investigation into these allegations.

The OSI investigation was conducted by Confidential Investigator Dennis Boyles. On February 9, 2005, Investigator Boyles issued the following findings. Investigator Boyles interviewed eight students in the presence of Principal Marsella, who were in the classroom at the time of the incident. Five of these students had no recollection of the incident. Three (Students B, H and I) stated that Student A acted in a disrespectful manner by cursing at the substitute teacher and that they saw Mr. Storman come into the classroom and tell Student A to be quiet. All three students said that they did not see Mr. Storman make any contact with Student A. In addition, Student H said he had a conversation with Student A in which Student A indicated that "he was going to get Mr. Storman in trouble" for disciplining him.

On December 14, 2004, Investigator Boyles interviewed Principal Marsella. She stated

2

Supreme Court Records OnLine Library - page 3 of 9

that on November 16, 2004, Father A contacted her to say he was no longer sending his child to school due to Mr. Storman's attempt to act out a sexual fantasy by "getting off" on his son. Principal Marsella also said that Student A told her that he was acting in a disrespectful manner when petitioner entered the classroom. She related that Mr. Storman prepared a written statement regarding the incident in which he admitted making contact with Student A's mouth. However, in this written statement, Mr. Storman wrote that he "may have touched the child's mouth with the piece of paper."

On December 15, 2004, Investigator Boyles interviewed Student A in the presence of his father and Assistant Principal Deborah Dellcomo. During the interview, Student A admitted that he acted disrespectfully to the substitute teacher; that Mr. Storman approached him, brushed a piece of paper against his lips and told him to be quiet; that Mr. Storman's actions were not sexual in nature; and that he was not physically hurt as a result of the incident, but that he was "embarrassed."

Mr. Storman was interviewed the following day in the presence of United Federation of Teachers Representative Arthur Solomon. According to the report, Mr. Storman stated he entered the classroom to pick up a student. Upon entry, he saw Student A cursing at the substitute teacher. As he approached Student A, the report states that "[Mr. Storman] might have brushed the piece of paper against Student A's lips" while telling him to keep quiet. Mr. Storman denied acting in a sexual manner. The report finally states that, "in retrospect, [Mr. Storman felt] he should not have touched Student A with the piece of paper."

Based upon this information, Investigator Boyles concluded that the allegation of sexual conduct was unsubstantiated. However, he also determined that Mr. Storman should not have

3

made any physical contact with Student A while disciplining him. Therefore, the report indicated that the charges of corporal punishment were "substantiated." A copy of the report was then sent to Principal Marsella to administer any further disciplinary action she deemed necessary. As a result of this "substantiated" charge of corporal punishment, in a report filed by P.S. 153 Principal and Rating Officer Carl Santamaria, Mr. Storman received an unsatisfactory rating on his 2005 Annual Review.

> DOE Regulation A-420 defines corporal punishment as follows:
>
> 2. Definitions
>
> Regulations of the Commissioner § 100.2(I)(3)(i) define corporal punishment as any act of physical force upon a pupil for the purpose of punishing that pupil. Such term shall not mean the use of reasonable physical force for any of the following purposes:
>
>> 1. to protect oneself from physical injury;
>>
>> 2. to protect another pupil or teacher or any other person from physical injury (e.g. breaking up a physical altercation without using physical force)
>>
>> 3. to protect the property of the school or of others; or
>>
>> 4. to restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers or duties, if that pupil has refused to comply with a request to refrain from further disruptive acts, provided that alternative procedures and methods not involving the use of physical force cannot be reasonably employed to achieve the purposes set forth in 1 through 3 above.

Mr. Storman appealed the unsatisfactory rating he received on his 2005 Annual Review. His first hearing was held on May 23, 2006. Following the hearing, the DOE issued a letter on August 14, 2006, denying his appeal and sustaining his unsatisfactory rating. Mr. Storman subsequently brought an Article 78 proceeding challenging the DOE's August 14, 2006 determination. On October 26, 2007, Hon. Marcy Friedman issued a decision, which stated,

4

*inter alia*, that:

> On this record, the court is unable to determine whether the Chancellor's determination was arbitrary, capricious or had a rational basis. The August 14, 2006, determination upheld petitioner's unsatisfactory rating based on the conclusion that there was a substantiated incident of corporal punishment. The determination does not set forth any facts in support of this conclusion. Notably, it appears to be inconsistent with the July 27, 2006 committee report to the Chancellor after the hearing. This report noted that petitioner's principal had rated petitioner unsatisfactory based on a substantiated incident of corporal punishment. However, the finding made by the committee was not of a unsubstantiated incident of corporal punishment but of an "inappropriate incident." Moreover, in the transcript of the hearing, DOE's own investigator testified that he did not believe that the incident "rose to the level of corporal punishment," but constituted "inappropriate physical contact."

Judge Friedman granted the petition to the extent of ordering a remand for further findings of fact. In her order, she indicated that since the committee did not find that the incident amounted to corporal punishment, the remand should address whether the punishment was proportional to the offense. She also ordered that petitioner may bring a subsequent Article 78 proceeding if he wanted a review of the DOE's subsequent determination.

On March 6, 2008, a second hearing (March 6 Hearing) was held in accordance with Judge Friedman's decision. At the hearing, Principal Marsella, Principal Santamaria and Investigator Boyles testified on behalf of respondent. Mr. Storman, who was represented at the hearing by UFT Advisor Michael Grossman, appeared and testified on his own behalf. The hearing commenced with the testimony of Principal Santamaria. When asked as to how he made his determination rating petitioner's performance unsatisfactory, he simply stated that "Ms. Marsella informed me that we needed to give him a U rating. I was the rating officer, and that's what I did." Principal Marsella added that she based her decision to give petitioner a "U" rating upon Investigator Boyles' report. She stated that she spoke with Principal Santamaria and the

5

two agreed that based on the "substantiated" charge of corporal punishment, they had to rate Mr. Storman's 2005 performance as unsatisfactory.

Investigator Boyles testified that he found the charges of sexual misconduct against petitioner to be unsubstantiated. He also corroborated the statement he made at the original hearing in 2006 that he did not feel Mr. Storman's conduct amounted to corporal punishment. However, he stated that Mr. Storman "might have made physical contact with [Student A] while reprimanding him," and that Mr. Storman "inappropriately" touched Student A with the rolled up piece of paper.

Mr. Storman testified that on the day in question, as he was walking into the classroom, he overheard Student A using inappropriate language. His exact words were that Student A "cursed the teacher out" through the use of certain four letter words. He consequently determined that the substitute teacher was having trouble controlling the class due to Student A's conduct. He further testified that he felt Student A's conduct represented a threat to the entire class. Therefore, it was his intention to intervene in order to stabilize the situation. Mr. Storman then described his actions as follows:

> I went over to the child that was cursing the teacher out, and I gave him a look like he should cease what he's doing immediately, and I went in the immediate area. I went, zip it, with the rolled up piece of paper.
>
> As I said, zip it, he kind of - he was on his - he was standing on his knees. He was on his knees, and he lurks forwards, not necessarily purposefully, but he lurked forward in my direction, and I kind faltered backwards, moved back with a little - you know, because I was so surprised, and he stopped immediately.

Mr. Storman stated he had no intention of touching Student A with the paper. When asked why he did not instead choose to remove Student A from the classroom, Mr. Storman responded:

6

I [saw] no reason [to] - I knew him. I felt that in this particular case - I try to do the least that does the job, okay. If I felt that I needed - if he didn't respond to me then, I would ask to take him out. I wouldn't have asked to take him to my room because I don't do that. I don't believe that it's my right and within my responsibility, but I did make that maneuver, you know, and he responded, that was it.

Following this hearing, in a letter dated June 10, 2008, the DOE upheld petitioner's unsatisfactory rating due to the "substantiated charge of corporal punishment." Mr. Storman filed the instant petition to challenge this determination.

*II. Conclusions of Law*

A court reviewing an Article 78 proceeding must judge the propriety of an administrative action solely on the reasons cited by the administration. *Scherbyn v. Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 N.Y.2d 753, 758 (1991). Such an action must be upheld unless it "shocks the judicial conscience and, therefore, constitutes an abuse of discretion as a matter of law." *Featherstone v. Franco*, 95 N.Y.2d 550, 554 (2000). CPLR section 7803 states that the following questions may be raised in an Article 78 proceeding: "Whether a determination was made in violation of lawful procedure, was effected by error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed."

Here, the DOE's determination shocks the conscience, was arbitrary, capricious and an abuse of discretion. Nothing in the record supports the DOE's conclusion that Mr. Storman committed a substantiated act of corporal punishment. The OSI Report reveals that none of the students interviewed saw Mr. Storman make contact with Student A. In fact, Student H stated that Student A told him he intended to get petitioner in trouble for disciplining him. The false allegations of sexual conduct made against petitioner support this contention. The court also finds it puzzling that Investigator Boyles chose not to interview the substitute teacher who was standing right next to Student A when the incident occurred.

7

In his report, Investigator Boyles noted that Principal Marsella told him that Mr. Storman provided a written statement where he admitted to making inappropriate contact with Student A. In his written statement, however, Mr. Storman clearly stated he "may have" touched Student A with the paper. Principal Marsella testified that she based her determination on Investigator Boyles report. There is nothing in Investigator Boyles report to support a finding of corporal punishment. At the March 6 Hearing, Investigator Boyles reiterated his testimony that he believed Mr. Storman's conduct did not rise to the level of corporal punishment. In addition, there is no evidence in the record demonstrating corporal punishment. Student A's testimony, at most, demonstrates brushing of paper against his lips. Therefore, it was irrational for the DOE to conclude that the alleged contact amounted to corporal punishment. *Weinstein v. Dep't of Educ.*, 19 A.D.3d 165 (1st Dept 2005) (no rational basis in record to support finding that petitioner committed corporal punishment in violation of DOE regulations). Consequently, the penalty imposed was excessive and shocking to the conscience. *Id.* Accordingly, it is

ORDERED and ADJUDGED that the petition of Glenn Storman is granted to the extent that the determination of respondent the New York City Department of Education dated June 10, 2008, determining that petitioner's unsatisfactory rating for the period ending in June 2005 to be sustained as a result of a substantiated allegation of corporal punishment is annulled, without costs, and this matter is remitted to the New York City Department of Education for further proceedings not inconsistent with this court's decision.

ENTER

_____
J.S.C.

DATE: May 11, 2009
New York, NY